## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

W.R. GRACE & CO., <u>et al.</u>

| | |
|---|---|
| PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Appellant,<br><br>v.<br><br>W.R. GRACE & CO., <u>et al.</u>,<br><br>Appellee. | Civil Action No. 06-745 RLB<br><br><br>Bankruptcy Case No. 01-01139<br><br>Appeal No. 06-70 |

## <u>BRIEF OF APPELLANT</u>

Laurie S. Polleck (#4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

- and -

RIKER, DANZIG, SCHERER, HYLAND
    & PERRETTI LLP
Joseph L. Schwartz, Esq.
Curtis M. Plaza, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 538-0800

Attorneys for Appellant,
The Prudential Insurance Company of America

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

STATEMENT OF THE CASE ............................................................................................ 1

STATEMENT OF APPELLATE JURISDICTION ............................................................. 6

STATEMENT OF ISSUES PRESENTED ON APPEAL .................................................... 6

APPLICABLE STANDARD OF APPELLATE REVIEW.................................................. 7

STATEMENT OF FACTS.................................................................................................. 7

    A.      The New Jersey District Court Litigation.................................................. 7

          1.      The New Jersey District Court's Ruling on the Statute of Limitations Issue................................................................................. 8

          2.      W.R. Grace's Attempts to Overturn the New Jersey District Court Decision......................................................................... 10

    B.      W.R. Grace's Bankruptcy Filing..................................................... 10

    C.      The New Jersey District Court's RICO Opinion. ..................................... 11

    D.      The Property Damage Bar Date Order. .................................................... 12

    E.      Prudential's Proofs of Claim..................................................................... 12

    F.      W.R. Grace's Objections to Prudential's Proofs of Claim. ....................... 12

    G.      The Bankruptcy Court's Order Expunging Prudential's Century Center Claims........................................................................................... 13

LEGAL ARGUMENT ..................................................................................................... 14

I.      THE DOCTRINE OF ISSUE PRECLUSION BARRED W.R. GRACE FROM RELITIGATING THE STATUTE OF LIMITATIONS CHOICE OF LAW ISSUES................................................................................................................. 14

    A.      The Doctrine Of Issue Preclusion. .......................................................... 14

    B.      The Doctrine of Issue Preclusion Should Have Barred W.R. Grace from Relitigating Issues Previously Decided by the New Jersey District Court. ................................................................................. 15

# TABLE OF CONTENTS
## (CONTINUED)

1. The Issue Before the Bankruptcy Court Was the Same Issue Ruled Upon by the New Jersey District Court. ........................................... 16

2. The Issue Was Actually Litigated in the New Jersey District Court. ................... 17

3. The New Jersey District Court Order Was Final. ................................. 17

4. The Statute of Limitations Choice of Law Determination Was an Essential Element of the New Jersey District Court Decision. ........................... 22

C. Conclusion: The Bankruptcy Court Should Have Applied the Doctrine of Issue Preclusion to Bar W.R. Grace from Relitigating the Statute of Limitation Choice of Law Issue. ..................................... 23

II. THE BANKRUPTCY COURT IMPROPERLY ACTED AS AN APPELLATE COURT IN ALLOWING W.R. GRACE TO COLLATERALLY ATTACK THE VALID, BINDING NEW JERSEY DISTRICT COURT DECISION ........................... 23

A. The New Jersey District Court was Particularly Well Suited to Rule as to the Statute of Limitations Issues Governing Prudential's Century Center Claims. ........................................... 25

B. W.R. Grace's Arguments Seeking to Overrule the New Jersey District Court Decision Violated the Erie Line of Cases. ........................... 26

III. THE BANKRUPTCY COURT IMPROPERLY MADE STATUTE OF LIMITATIONS DETERMINATIONS WITHOUT DEVELOPMENT OF AN APPROPRIATE FACTUAL RECORD. ........................................... 28

IV. THE BANKRUPTCY COURT IMPROPERLY ALTERED THE PRE-BANKRUPTCY STATE LAW RIGHTS UNDERLYING PRUDENTIAL'S CLAIMS. ........................................................................... 31

V. THE BANKRUPTCY COURT ERRED IN ITS APPLICATION OF DELAWARE CHOICE OF LAW STANDARDS. ........................................ 33

A. The Delaware Borrowing Statute and the Saudi Basic Doctrine. ............... 34

B. Prudential's Cause of Action Arose in New Jersey. .................................. 36

CONCLUSION ................................................................................................ 40

## <u>TABLE OF AUTHORITIES</u>

## CASES

<u>In re 2435 Plainfield Ave.</u>,
  223 B.R. 440 (Bankr. D.N.J. 1998) ............................................... 19

<u>Allen v. McCurry</u>,
  449 U.S. 90 (1980).......................................................................... 15

<u>B. Lewis Prods., Inc. v. Bean</u>,
  No. 02-93-KAJ, 2005 WL 273298 (D. Del. Jan. 28, 2005) .......................... 35

<u>Bell v. Eastman Kodak Co.</u>,
  214 F.3d 798 (7th Cir. 2000)........................................................... 24

<u>In re Brown</u>,
  244 B.R. 62 (Bankr. D.N.J. 2000) ................................................... 25

<u>In re Brown</u>,
  951 F.2d 564 (3d Cir. 1991) .................................................... passim

<u>In re Bugna</u>,
  33 F.3d 1054 (9th Cir. 1994) .......................................................... 15

<u>Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.</u>,
  63 F.3d 1227 (3d Cir. 1995) ...........................................14, 16, 18, 19

<u>Butner v. United States</u>,
  440 U.S. 48 (1979).......................................................................... 33

<u>In re Combustion Eng'g, Inc.</u>,
  391 F.3d 190 (3d Cir. 2005) ........................................................... 33

<u>In re Cornelison</u>,
  901 F.2d 1073 (11th Cir. 1990) ...................................................... 28

<u>Davis v. Norris</u>,
  34 Fed. Appx. 658 (10th Cir. 2002)................................................. 27

<u>In re Docteroff</u>,
  133 F.3d 210 (3d Cir. 1997) .................................................... passim

<u>Draper v. Airco, Inc.</u>,
  580 F.2d 91 (3d Cir. 1978) ............................................................. 26

Dyundul v. Dyundul,
        620 F.2d 409 3d Cir. 1980) ............................................................................ 18

Erie R.R. Co. v. Tompkins,
        304 U.S. 64 (1938) ................................................................................. 27, 28

Ferens v. John Deere Co.,
        494 U.S. 516 (1990) ..................................................................................... 27

In re G-I Holdings,
        No. 02-CV-3082(WGB), 2003 WL. 22273256 (D.N.J.
        Aug. 8, 2003) ...................................................................... 19, 20, 21, 22

In re Gaston & Snow,
        243 F.3d 599 (2d Cir. 2001) ......................................................................... 27

Gregory v. Chehi,
        843 F.2d 111 (3d Cir. 1988) ......................................................................... 14

Grogan v. Garner,
        498 U.S. 279 (1991) ........................................................................ 14, 15, 17

Henry v. Richardson-Merrell, Inc.,
        508  F.2d 28 (3d Cir. 1975) ......................................................................... 25

Klaxon Co. v. Stentor Electric Mfg. Co.,
        313 U.S. 487 (1941) ......................................................................... 25, 26, 27

Kremer v. Chem. Constr. Corp.,
        456 U.S. 461 (1982) ..................................................................................... 15

Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,
        453 F.2d 1177 (3d Cir. 1972) ................................................................. 15, 21

In re Merritt Drudging Co.,
        839 F.2d 203 (4th Cir. 1988) ....................................................................... 27

Montana v. United States,
        440 U.S. 147 (1979) ..................................................................................... 14

Official Committee of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP),
        237 B.R. 275 (Bank. E.D. Pa. 1999) ........................................................... 24

In re Ovetsky,
        100 B.R. 115 (Bankr. N.D. Ga. 1989) ......................................................... 32

Parklane Hosiery Co., Inc. v. Shore,
     439 U.S. 322 (1979)..................................................................... 15

In re Pennsylvania Truck Lines, Inc.,
     Bankr. No. 92-12370DAS, 1994 WL. 247348 (Bankr. E.D. Pa.
     June 1, 1994)........................................................................ 18

In re Professional Investors Ins. Group, Inc.,
     232 B.R. 870 (Bankr. N.D. Texas 1999).................................... 27, 32

Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al.,
     Case No. 04-5690 (3d Cir. Dec. 28, 1994)..................................... 10

Prudential Ins. Co. of America v. U.S. Gypsum Co.,
     359 F.3d 226 (3d Cir. 2004) ......................................................... 11

Raleigh v. Ill. Dep't of Revenue,
     530 U.S. 15 (2000)................................................................ 32, 33

In re Reach, McClinton & Co., Inc.,
     102 B.R. 392 (D.N.J. 1989)........................................................ 26

In re SMEC, Inc.,
     161 B.R. 953 (M.D. Tenn. 1993).............................................. 27, 32

Safety Nat'l Casualty Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum
     Corp.),
     303 B.R. 299 (D. Del. 2003) ......................................................... 7

Saldana v. Kmart Corp.,
     260 F.3d 228 (3d Cir. 2001) ......................................................... 31

Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc.,
     866 A.2d 1 (Del. 2005) ......................................................... passim

In re Segre's Iron Works, Inc.,
     258 B.R. 547 (Bankr. D. Conn. 2001) ...................................... 27, 32

In re Sharon Steel Corp.,
     871 F.2d 1217 (3d Cir. 1989) ....................................................... 7

State v. Garford Trucking,
     72 A.2d 851 (N.J. 1950)............................................................. 26

The Prudential Insurance Company of America, et al. v. United States Gypsum, et al.,
     Civil Action Nos. 87-4227, 87- 4238.......................................... 7, 9, 10, 16

In re Thompson,
        262 B.R. 407 (B.A.P. 6th Cir. 2001)............................................................ 28

In re Top Grade Sausage, Inc.,
        227 F.3d 123 (3d Cir. 2000) ........................................................................7

Travelers Indem. Co. v. Lake,
        594 A.2d 38 (Del. 1991)....................................................................... 37, 39

In re Turner,
        326 B.R. 563 (Bankr. W.D. Pa. 2005) ...................................................... 25

Van Dusen v. Barrack,
        376 U.S. 612 (1964)................................................................................... 27

Warner v. Auberge Gray Rocks, Inn,
        827 F.2d 938 (3d Cir. 1987) ...................................................................... 26

In re Wilson,
        116 F.3d 87 (3d Cir. 1997) ........................................................................ 24

## STATUTES

10 Del. C. § 8121  ................................................................................................ 7, 34

11 U.S.C. § 362(a) ............................................................................................... 2, 10

28 U.S.C. § 157(b)(2) ...............................................................................................6

28 U.S.C. § 158(a)(1)................................................................................................6

28 U.S.C. § 1334  ......................................................................................................6

## MISCELLANEOUS

Fed. R. Bankr. P. 7056............................................................................................ 31

Fed. R. Civ. P. 56  .................................................................................................. 31

18 Fed. Prac. & Proc. Juris. 2d § 4418 .................................................................. 19

Restatement (Second) of Conflict of Laws § 145 .............................................. 37, 38

Restatement (Second) of Judgments §13 (1982)................................................. 18, 19

## STATEMENT OF THE CASE

In October 1987, the Appellant, Prudential Insurance Company of America ("Prudential"), instituted a lawsuit against the Appellee, debtor W.R. Grace & Co.–Conn. ("W.R. Grace"), and other nondebtor defendants in the United States District Court for the District of New Jersey (the "New Jersey District Court"), asserting various state law causes of action resulting from asbestos contamination caused by W.R. Grace's asbestos-containing products to various buildings owned by Prudential in several states in the United States. In that lawsuit before the New Jersey District Court (the "New Jersey District Court Litigation"), Prudential also asserted a federal law claim based upon W.R. Grace's alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO").

During the New Jersey District Court Litigation, which was both complex and lengthy, W.R. Grace filed a series of motions for summary judgment seeking to dismiss Prudential's state law claims on the basis that those claims were allegedly time-barred under applicable state statute of limitations, arguing, among other things, that the law of the state where each building was located should control. In June 1994, the New Jersey District Court ruled in favor of Prudential and against W.R. Grace, denying W.R. Grace's summary judgment motions. In so doing, the New Jersey District Court issued a comprehensive fifty-three (53) page opinion, along with an accompanying order. In that comprehensive opinion, the New Jersey District Court determined, *inter alia*, that regardless of the location of each Prudential building, the applicable statute of limitations with respect to Prudential's state law claims was the statute of limitations of the state of New Jersey.

W.R. Grace sought to appeal the New Jersey District Court's June 1994 ruling by filing a motion for leave to appeal, which was denied.  W.R. Grace thereafter sought a writ of mandamus from the Third Circuit, which was likewise denied.

After the New Jersey District Court's ruling denying W.R. Grace's summary judgment motions, the New Jersey District Court Litigation continued.  In 2001, as the trial in the New Jersey District Court Litigation approached, W.R. Grace, along with many affiliates and subsidiaries, (collectively, the "Debtors") filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), citing as the reason for its bankruptcy filing a surge in adverse litigation resulting from W.R. Grace's asbestos-containing products.  W.R. Grace's bankruptcy filing caused the New Jersey District Court Litigation, as between Prudential and W.R. Grace, to be automatically stayed pursuant to 11 U.S.C. § 362(a).[1]  Despite W.R. Grace's bankruptcy, pursuant to well-recognized bankruptcy law, Prudential's damage claims against W.R. Grace that existed under state law were in no way altered by W.R. Grace's bankruptcy filing.

During W.R. Grace's bankruptcy case, upon motion by the Debtors, the Bankruptcy Court entered an order requiring all property damage asbestos claimants to file a proof of claim in the Debtors' bankruptcy cases by March 31, 2003.  In compliance with this deadline, on March 24, 2003, Prudential timely filed eight (8) separate proofs of claim in W.R. Grace's bankruptcy case, which represented the claims that Prudential asserted against W.R. Grace in the New Jersey District Court Litigation.  Two (2) of Prudential's eight (8) proofs of claim related to asbestos contamination claims for damages to Prudential-owned buildings

---

[1] Notwithstanding W.R. Grace's bankruptcy filing, the New Jersey District Court Litigation, as between Prudential and the other nondebtor defendants, was not automatically stayed and continued on after W.R. Grace's bankruptcy filing.

located in the state of Georgia, which buildings were commonly know as Century Center I and Century Center IV. (Prudential's claims related to these buildings are referred to herein as the "Century Center Claims".)

On September 1, 2005, the Debtors filed in their bankruptcy cases a Fifteenth Omnibus Motion (Substantive) to Asbestos Property Damage Claims (the "Omnibus Objection"), wherein the Debtors sought to expunge on various grounds most, if not all, of the property damage claims that had been filed against the Debtors' estates.[2] Included among the claims objected to by the Debtors in the Omnibus Objection were all eight (8) of Prudential's proofs of claim, which the Debtors objected to on a number of bases, including that the claims were allegedly time-barred by the applicable statute of limitations. This objection to Prudential's claims on statute of limitations grounds was the *very same objection that W.R. Grace had asserted in its summary judgment motions in the New Jersey District Court Litigation,* which the New Jersey District Court considered in June 1994.

On October 24, 2005, Prudential filed a response to the Omnibus Objection.[3] On December 22, 2005, the Debtors filed a brief in support of the Omnibus Objection ("Debtors' Initial Brief"), in which the Debtors argued that the Century Center Claims were allegedly time-barred based upon the statute of limitations of the state of Georgia.[4] On January 20, 2006 Prudential filed a sur-reply brief in response to the Debtors' Initial Brief.[5]

---

[2] A copy of the Omnibus Objection is available in the record on appeal (the "Record") at R-1. References to the Record are hereinafter referred to as "R-" and correspond to the item number listed on the Appellant's Designation of Items to be Included in the Record on Appeal ("Statement of Issues") [Docket No. 2]. References to the Appellees' counter-designations are hereinafter referred to as "CD-."

[3] R-2 through R-11.

[4] R-12.

[5] R-13.

On January 24, 2006, the Bankruptcy Court conducted a hearing on the Debtors' Omnibus Objection, which included the Debtors' objections to the Century Center Claims on statute of limitations grounds.[6]  At the hearing, the Bankruptcy Court made various statements and/or preliminary determinations, including that it believed the New Jersey District Court to have been "wrong."[7] At that time, the Bankruptcy Court did not issue a final ruling, but instead directed the parties to provide further briefing on the following two issues: (i) the choice of law analysis that the Bankruptcy Court should perform in connection with the Debtors' statute of limitations defense to the Century Center Claims, and (ii) the preclusive effect of the New Jersey District Court's prior determination on the statute of limitations issue.[8]

On February 6, 2006, in accordance with the Bankruptcy Court's directive, the Debtors filed a supplemental brief[9] in support of the Omnibus Objection.[10]  On September 1, 2006, in accordance with the Bankruptcy Court's directive, Prudential timely filed its responsive brief.[11] On September 15, 2006, the Debtors filed a reply brief.[12]

On September 25, 2006, the Bankruptcy Court conducted a further hearing to consider the Debtors' statute of limitations objections to the Century Center Claims.[13]  At this September 25, 2006 hearing, the Debtors' counsel made various oral representations to the Bankruptcy

---

[6] R-14 (Transcript of January 24, 2006 hearing before United States Bankruptcy Judge Judith K. Fitzgerald).

[7] See id. at 39-40.

[8] See id. at 45.

[9] R-15.

[10] Thereafter, the Bankruptcy Court stayed all litigation in the Debtors' bankruptcy case to allow the Debtors and various other creditor constituencies to engage in mediation in an effort to reach a consensual resolution in connection with the Debtors' bankruptcy case.  The mediation effort ultimately failed and litigation was renewed.

[11] R-16.

[12] R-17.  The Debtors' reply brief was twenty (20) pages long, which violated the Bankruptcy Court's five-page brief limitation.

[13] R-18 (Transcript of September 25, 2006 hearing before Judge Fitzgerald).

Court concerning the alleged facts of this matter that were not in the record before the Bankruptcy Court without having previously filed a certification with the Bankruptcy Court and without having first engaged in any discovery with Prudential in the bankruptcy case. The Debtors' counsel argued that based upon these "facts," the Century Center Claims were time-barred under the statutes of limitation of states other than New Jersey, despite the June 1994 Order of the New Jersey District Court.

At the conclusion of the September 25, 2006 hearing, without any development of a supported factual record, the Bankruptcy Court determined that the Century Center Claims were time-barred on statute of limitations grounds and should be expunged, citing, among other things, certain of the "facts" that had been orally represented to the Bankruptcy Court by the Debtors' counsel but which were not otherwise in the record before the Bankruptcy Court.[14] In so holding, the Bankruptcy Court essentially acted as an appeals court for the New Jersey District Court, having previously improperly declared that the New Jersey District Court was "wrong."[15] Thereafter, on October 24, 2006, the Bankruptcy Court entered its order memorializing its ruling of September 25, 2006 expunging Prudential's Century Center Claims (the "Order").[16] Prudential timely filed its Notice of Appeal from the Order on November 1, 2006.[17]

Prudential appeals the Bankruptcy Court's Order expunging the Century Center Claims as time-barred because: (i) the doctrine of issue preclusion barred the W.R. Grace's arguments before the Bankruptcy Court, (ii) W.R. Grace's collateral attack and/or appeal of a

---

[14] See id. at 47-48.
[15] See R-14 at 39-40.
[16] R-19.
[17] R-20.

valid, binding New Jersey District Court decision was legally improper, (iii) the Bankruptcy Court improperly made determinations without consideration or development of a proper factual record, (iv) the Bankruptcy Court misapplied the Delaware choice of law principles, and (v) the Bankruptcy Court inappropriately altered Prudential's state law rights as they existed on the eve of W.R. Grace's bankruptcy filing.

For these reasons, Prudential respectfully requests that this Court reverse the Bankruptcy Court's Order expunging Prudential's Century Center Claims as time-barred.

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal from a final Order dated October 24, 2006 entered by the Bankruptcy Court in the Debtors' bankruptcy proceedings, which Order granted the Debtors' Omnibus Objection as such objection related to the Century Center Claims. The Bankruptcy Court had jurisdiction over the Debtors' objection to the Century Center Claims pursuant to 28 U.S.C. § 1334 and the issues raised therein were core proceedings pursuant to 28 U.S.C. § 157(b)(2). Prudential appeals from the Order, which is a final order over which this Court has appellate jurisdiction, pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES PRESENTED ON APPEAL

(1)    Did the Bankruptcy Court err in disregarding a June 9, 1994 opinion and order entered by the New Jersey District Court, which opinion and order required that the statute of limitations of New Jersey be applied to Prudential's claims?

(2)    Did the Bankruptcy Court err by failing to apply the doctrine of issue preclusion to bar W.R. Grace from relitigating an issue that was extensively litigated and decided by the June 9, 1994 opinion and order entered by the New Jersey District Court?

(3)    Did the Bankruptcy Court err by refusing to find that the June 9, 1994 opinion and order of the New Jersey District Court was a final order?

(4)    Did the Bankruptcy Court err in its choice of law analysis and application, resulting in the dismissal of certain of Prudential's claims on a statute of limitations basis?

(5)     Did the Bankruptcy Court err by reaching a decision that replaced Prudential's pre-bankruptcy state law rights with the less favorable state law rights of the bankruptcy forum chosen by W.R. Grace?

(6)     Did the Bankruptcy Court err by failing to follow Delaware choice of law doctrine as recently stated in <u>Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc.</u>, 866 A.2d 1 (Del. 2005), and by allowing W.R. Grace, who chose Delaware as the litigation forum, to misuse the forum-shopping prevention provisions of the Delaware "Borrowing Statute," 10 Del. C. § 8121, to bar Prudential's claims?

(7)     Did the Bankruptcy Court err in failing to consider the "resident exception" to Delaware's "Borrowing Statute," 10 Del. C. § 8121, in dismissing Prudential's claims?

(8)     Did the Bankruptcy Court err in dismissing Prudential's claims on a statute of limitations basis without the development of a proper factual record?

<u>**APPLICABLE STANDARD OF APPELLATE REVIEW**</u>

This Court sits as an appellate court for bankruptcy cases. <u>In re Top Grade Sausage, Inc.</u>, 227 F.3d 123, 125 (3d Cir. 2000). In an appeal from a bankruptcy court's ruling, district courts conduct a *de novo* review of a bankruptcy court's conclusions of law, apply a clearly erroneous standard to a bankruptcy court's findings of fact, and break down mixed questions of law and fact, applying the appropriate standard to each. <u>In re Sharon Steel Corp.</u>, 871 F.2d 1217, 1222 (3d Cir. 1989); <u>Safety Nat'l Casualty Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)</u>, 303 B.R. 299, 302 (D. Del. 2003).

In this appeal, mixed questions of law and fact are presented.

<u>**STATEMENT OF FACTS**</u>

**A.     The New Jersey District Court Litigation.**

On October 20, 1987, Prudential filed a complaint against W.R. Grace and other asbestos manufacturers[18] in the New Jersey District Court, captioned <u>The Prudential Insurance Company of America, et al. v. United States Gypsum, et al.</u>, Civil Action Nos. 87-4227, 87-

---

[18] These asbestos manufacturers other than W.R. Grace are not debtors in this bankruptcy case.

4238.  Through this New Jersey District Court Litigation, Prudential asserted several causes of action against W.R. Grace.  Among those causes of action were state law common law causes of action for product liability, negligence, breach of express and implied warranties and fraud (the "State Law Claims"), as well as federal claims for violations of the RICO statute.  After Prudential instituted the New Jersey District Court Litigation, the parties engaged in a lengthy period of intense discovery, which included the production of tens of thousands of documents, the exchange of hundreds of interrogatories and the taking of numerous depositions.

Commencing in or about 1991, W.R. Grace filed a series of pre-trial summary judgment motions in the New Jersey District Court Litigation, wherein, *inter alia*, W.R. Grace sought to dismiss Prudential's State Law Claims as time-barred under applicable state statute of limitations.  In support of their respective positions, W.R. Grace and Prudential submitted a number of briefs and memoranda of law respecting the issue of which state's statute of limitations the New Jersey District Court should apply in determining whether Prudential's State Law Claims were time-barred.[19]  In connection therewith, W.R. Grace argued that the statute of limitations of the state where a building was located should control, *i.e.,* that the statute of limitations of the state of Georgia should apply to bar Prudential's Century Center Claims.[20]

**1.     The New Jersey District Court's Ruling on the Statute of Limitations Issue.**

After reviewing the lengthy briefs submitted by the parties, by a comprehensive fifty-three (53) page written opinion (the "Opinion") and accompanying order dated June 9, 1994 (the "June 9, 1994 Order"), the New Jersey District Court denied W.R. Grace's summary judgment motions, specifically ruling that regardless of the location of each Prudential-owned

---

[19] See Statement of Issues at 5 n.2.
[20] See R-21 at 10.

building, the statute of limitations of the state of New Jersey applied to Prudential's claims.

Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Civ. Act. No. 87-4238 (D.N.J. June

9, 1994) (the "New Jersey District Court Decision").[21]

In determining that the statute of limitations of New Jersey, and not the statute of

limitations of Georgia or any other state, applied to Prudential's claims, including the Century

Center Claims, the New Jersey District Court stated as follows:

> The threshold inquiry is into what state's law should govern.
> . . .
> The defendants contend that the applicable statute of limitations is the statute of the state in which each affected building is located. Thus, for example, Prudential's claim regarding a building in Wisconsin is governed by Wisconsin law. And so on. In defendants' view, these statutes mandate that all of Prudential's claims be dismissed. Prudential responds by arguing that New Jersey's fairly lengthy statute of limitations applies to all of its state law claims.
> . . .
> [T]here is essentially a presumption [under New Jersey law] that [New Jersey's] statute of limitations applies, which is based on New Jersey's substantial interest in compensating its domiciliaries. . . . At any rate, this is not a case where the plaintiff's only connection to New Jersey is the fact that it is domiciled in New Jersey. . . . [T]he defendants have some contacts with New Jersey [and] many of the corporate financial decisions for which Prudential seeks compensation took place in New Jersey.
> . . .
> Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is in New Jersey, the New Jersey Supreme Court would be persuaded by its interest in compensating its domiciliary to apply its own statute of limitations in this case.[22]

---

[21] R-21.

[22] Id. at 10-16 (emphasis added).

     **2.**    **W.R. Grace's Attempts to Overturn the New Jersey District Court Decision.**

In response to this adverse New Jersey District Court Decision, W.R. Grace filed a motion seeking to certify for interlocutory appellate review the question of what state's statute of limitations should apply to Prudential's claims. Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Civ. Act. No. 87-4238 (D.N.J.), Docket No. 337. That motion by W.R. Grace was denied. Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Civ. Act. No. 87-4227 (D.N.J.).[23] Thereafter, in November 1994, W.R. Grace made a further attempt to overturn the New Jersey District Court Decision by filing a petition for a writ of mandamus seeking Third Circuit review of the New Jersey District Court Decision. That petition filed by W.R. Grace was similarly denied. Prudential Ins. Co. of Am., et al. v. U.S. Gypsum Co., et al., Case No. 04-5690 (3d Cir. Dec. 28, 1994).[24]

     **B.**    **W.R. Grace's Bankruptcy Filing.**

After W.R. Grace's unsuccessful attempts to overturn the New Jersey District Court Decision, the New Jersey District Court Litigation progressed toward trial, remaining active as against W.R. Grace on the New Jersey District Court's docket through April 3, 2001, when W.R. Grace filed its voluntary Chapter 11 bankruptcy petition with the Bankruptcy Court. W.R. Grace's bankruptcy filing resulted in the automatic stay of the New Jersey District Court Litigation, pursuant to 11 U.S.C. § 362(a).[25]

---

[23] R-22.

[24] R-23.

[25] The New Jersey District Court Litigation between Prudential and the other nondebtor defendants was not automatically stayed by W.R. Grace's bankruptcy filing. One of the W.R. Grace's arguments before the Bankruptcy Court was that the New Jersey District Court Litigation was dismissed. (See, e.g., Debtors' Supplemental Brief, R-15 at 9.) This is not correct. In 2001, after W.R. Grace had filed its bankruptcy petition, the New Jersey District Court dismissed the New Jersey District Court Litigation as against defendants other than W.R. Grace after these other defendants successfully argued that **(footnote continued...)**

C.    **The New Jersey District Court's RICO Opinion.**

A few months after W.R. Grace had filed its Chapter 11 bankruptcy petition, on June 20, 2001, in response to motions filed by *nondebtor defendants other than W.R. Grace*, the New Jersey District Court determined that Prudential's federal RICO claim, *as against nondebtor defendants other that W.R. Grace*, was time-barred under federal law.[26]  This ruling was subsequently affirmed by the Third Circuit Court of Appeals.[27]  Both the written opinions issued by the New Jersey District Court dismissing Prudential's RICO claim and the Third Circuit Court of Appeals affirming the New Jersey District Court's dismissal of Prudential's RICO claim expressly state that the dismissal of Prudential's RICO claim *did not apply to W.R. Grace*.[28]  Moreover, both the New Jersey District Court  and the Third Circuit Court of Appeals' decisions addressing the dismissal of Prudential's RICO claim specifically state that they *did not apply to the merits of Prudential's State Law Claims*.[29]

---

Prudential's federal RICO claim was time-barred.  <u>Prudential Ins. Co. of America v. U.S. Gypsum Co.</u>, 359 F.3d 226, 232, 238 (3d Cir. 2004).  As a result of the New Jersey District Court's determination that Prudential's RICO claim was time-barred as against defendants other than W.R. Grace, the New Jersey District Court dismissed the New Jersey District Court Litigation *as against these nondebtor defendants only* because there was no longer any basis for federal jurisdiction.  <u>See</u> R-24 at 51-52.  The decision of the New Jersey District Court, however, would have allowed Prudential to continue to pursue the State Law Claims as against these nondebtor defendants in state court.  <u>See</u> <u>id.</u> at 52.  As a result, contrary to the arguments advanced by W.R. Grace before the Bankruptcy Court, the New Jersey District Court litigation was <u>not</u> dismissed as against W.R. Grace, but automatically stayed.  Even if it had been dismissed, which it was not, Prudential would have continued to have viable State Law Claims against W.R. Grace actionable in state court.  As set forth herein, any state law claims in state court would have been entitled to issue preclusion as to issues already decided by the New Jersey District Court.

[26] R-24.  Given the fact that there was no longer any basis for federal jurisdiction against these nondebtor defendants after the dismissal of Prudential's RICO claim, the New Jersey District Court dismissed the New Jersey District Court Litigation against the nondebtor defendants.  <u>See</u> <u>id.</u> at 52.  The New Jersey District Court did not dismiss the New Jersey District Court Litigation as against W.R. Grace.  <u>See</u> <u>id.</u>

[27] R-25 (reported at 359 F.3d 226).

[28] <u>See</u> R-24 at 4; R-25 at 5 n.2 (reported at 359 F.3d at 232 n.2).

[29] <u>See</u> R-24 at 53-54; R-25 at 5 (reported at 359 F.3d at 232).

D.      **The Property Damage Bar Date Order.**

During W.R. Grace's bankruptcy case, on April 22, 2002, upon motion by the Debtors, the Bankruptcy Court entered an Order as to All Non-Asbestos Claims, Asbestos Property Damage Claims, and Medical Monitoring Claims: (I) Establishing Bar Date, (II) Approving Proof of Claim Forms, and (III) Approving Notice Program (the "Property Damage Bar Date Order"), which order required all property damage asbestos claimants to file a proof of claim in the Debtors' bankruptcy cases by March 31, 2003.

E.      **Prudential's Proofs of Claim.**

On March 24, 2003, in accordance with the Bankruptcy Court's Property Damage Bar Date Order, Prudential timely filed (8) separate proofs of claim in W.R. Grace's bankruptcy case, aggregating approximately $21,057,000, and representing the asbestos property damage causes of action asserted by Prudential against W.R. Grace in the New Jersey District Court Litigation.[30]  These eight separate proofs of claim included the two (2) Century Center Claims.[31]

F.      **W.R. Grace's Objections to Prudential's Proofs of Claim.**

On September 1, 2005, the Debtors filed the Omnibus Objection, wherein the Debtors sought to expunge on various grounds most, if not all, of the property damage claims that had been filed against the Debtors' estates.  Included among the claims objected to by the Debtors in the Omnibus Objection were all eight (8) of Prudential's proofs of claim, which the Debtors objected to on a number of bases, including that the claims were allegedly timed-barred by the applicable statute of limitations.  This objection on statute of limitations grounds was the identical objection that W.R. Grace had asserted in its summary judgment motions in the New

---

[30] See R-2 through R-11.
[31] See R-3 through R-4.

Jersey District Court Litigation, which the New Jersey District Court addressed in the Opinion and the June 9, 1994 Order.

G.     **The Bankruptcy Court's Order Expunging Prudential's Century Center Claims.**

After considering the briefs submitted by the Debtors and Prudential and the oral arguments advanced by the Debtors' and Prudential's counsel in connection with the Debtors' objections to the Century Center Claims, at a hearing conducted on September 25, 2006, the Bankruptcy Court determined that the Century Center Claims were time-barred on statute of limitations grounds and should be expunged. In so holding, the Bankruptcy Court (i) relied upon certain of the oral representations made by the Debtors' counsel at the September 25, 2006 hearing concerning alleged facts that were not contained anywhere in the record before the Bankruptcy Court,[32] and (ii) essentially acted as an appeals court for the New Jersey District Court, having previously improperly declared that the New Jersey District Court was "wrong."[33] The Bankruptcy Court thereafter entered the Order memorializing its September 25, 2006 ruling on October 24, 2006.[34] It is from this Order that Prudential now appeals.

---

[32] See R-18 at 47-48.
[33] See R-14 at 39-40.
[34] R-20.

**LEGAL ARGUMENT**

I.    **THE DOCTRINE OF ISSUE PRECLUSION BARRED W.R. GRACE FROM RELITIGATING THE STATUTE OF LIMITATIONS CHOICE OF LAW ISSUES.**

In its fifty-three (53) page, detailed and well-reasoned Opinion, the New Jersey District Court determined that the New Jersey statute of limitations applied with respect to the adjudication of Prudential's claims against W.R. Grace. After W.R. Grace failed in its attempts to overturn the New Jersey District Court Decision, W.R. Grace chose to improperly use its bankruptcy case to re-litigate this previously-litigated issue before the Bankruptcy Court. The Bankruptcy Court, in sustaining W.R. Grace's statute of limitations objections to the Century Center Claims, erred by failing to apply the doctrine of issue preclusion to prevent W.R. Grace from re-litigating this previously-litigated issue.

A.    **The Doctrine Of Issue Preclusion.**

The doctrine of issue preclusion, or collateral estoppel,[35] prohibits a party from relitigating issues that have been adjudicated in prior litigation. Grogan v. Garner, 498 U.S. 279, 284-85 n.11 (1991); In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997); In re Brown, 951 F.2d 564, 569 (3d Cir. 1991); see also Montana v. United States, 440 U.S. 147, 153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits . . . ."). The doctrine derives from the simple principle that later courts should honor the first actual decision of an issue that has been previously litigated. Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd., 63 F.3d 1227, 1231 (3d Cir. 1995). The purpose of the doctrine is to protect litigants from the burden of

---

[35] While the terms "issue preclusion" and "collateral estoppel" may be used interchangeably, the Third Circuit has instructed courts to use the term "issue preclusion" to avoid confusion. See Gregory v. Chehi, 843 F.2d 111 (3d Cir. 1988).

relitigating an issue with the same party and to promote judicial economy by preventing needless litigation. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). Use of the doctrine of issue preclusion "relieve[s] parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 467 (1982) (citing Allen v. McCurry, 449 U.S. 90 (1980)).

**B.    The Doctrine of Issue Preclusion Should Have Barred W.R. Grace from Relitigating Issues Previously Decided by the New Jersey District Court.**

The doctrine of issue preclusion should have barred W.R. Grace from relitigating the statute of limitations choice of law issue in the Bankruptcy Court. The doctrine of issue preclusion applies equally in bankruptcy proceedings as in other courts. See Grogan, 498 U.S. at 284-85 n.11; In re Docteroff, 133 F.3d at 214; In re Brown, 951 F.2d at 565-66 (requiring bankruptcy court to afford preclusive effect to issues decided in prior litigation). Moreover, bankruptcy courts are required to apply the doctrine of issue preclusion where an issue has previously been litigated in another forum:

> The bankruptcy court's otherwise broad powers do not include the power to reject a party's invocation of collateral estoppel on an issue fully and fairly litigated in another court.

In re Bugna, 33 F.3d 1054, 1058 (9th Cir. 1994).

The Third Circuit Court of Appeals has adopted a rather expanded view regarding the application of issue preclusion. Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1181 (3d Cir. 1972). The Third Circuit has determined that issue preclusion will apply when: (1) the issue sought to be precluded is the same as the one involved in the prior litigation, (2) the issue was actually litigated, (3) the issue was determined by a valid and final judgment; and (4) the determination of the issue was essential to the prior judgment. See

<u>Burlington N. R.R.</u>, 63 F.3d at 1231-32; <u>In re Docteroff</u>, 133 F.3d at 214 (citing <u>In re Ross</u>, 602 F.2d 604, 608 (3d Cir. 1979)).

As set forth herein, here, each of these elements were met. As a result, W.R. Grace should have been barred from relitigating the statute of limitations choice of law issue in the Bankruptcy Court.

### 1. The Issue Before the Bankruptcy Court Was the Same Issue Ruled Upon by the New Jersey District Court.

The first prerequisite for issue preclusion, that the issue to be precluded is the same as the one involved in the prior litigation, was clearly met here. The issue before the New Jersey District Court that was decided in June 1994 was which state's statute of limitations should apply to Prudential's claims. In its detailed Opinion, the New Jersey District Court ruled that the New Jersey statute of limitations, and not the statute of limitations of Georgia or any other state, would apply to Prudential's claims. <u>See</u> <u>Prudential Ins. Co. of Am., et al. v. U.S.Gypsum Co., et al.</u>, Civ. Act. No. 87-4238 (D.N.J. June 9, 1994) at 10-16.[36] The issue raised by W.R. Grace in its objection to Prudential's Century Center Claims before the Bankruptcy Court was which state's statute of limitations should apply to Prudential's Century Center Claims. This issue was <u>identical</u> to the issue raised before the New Jersey District Court.

Despite the clarity of the foregoing, the Debtors attempted to confuse the matter before the Bankruptcy Court by arguing that the issue before the Bankruptcy Court was different than the issue before the New Jersey District Court because the Bankruptcy Court was a different venue than the New Jersey District Court. This argument had no merit. In fact, the Third Circuit has squarely ruled upon such an argument, determining that where an issue arising in bankruptcy

---

[36] <u>See</u> R-21.

court bears semblance to the issue previously litigated, the differences arising due to the new bankruptcy venue do not prevent issue preclusion from being applied:

> Taking [the debtor's] argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise bankruptcy issue would never have been litigated in a court action prior to the filing of the petition in bankruptcy. Such a conclusion defies common sense and reason and is at odds with the Supreme Court's holding in Grogan.

In re Docteroff, 133 F.3d at 215 (citing Grogan v. Garner, 498 U.S. 279 (1991)).

Based on the foregoing, the issue presented to the Bankruptcy Court, the statute of limitations choice of law issue with respect to Prudential's Century Center Claims, was the very same issue as the issue previously considered and decided by the New Jersey District Court.

### 2. The Issue Was Actually Litigated in the New Jersey District Court.

The second prerequisite for issue preclusion, that the issue was actually litigated in the prior litigation, was also clearly met. The parties to the New Jersey District Court Litigation, which included W.R. Grace and Prudential, submitted numerous exhaustive briefs and memoranda of law to the New Jersey District Court in connection with the statute of limitations issues involving Prudential's claims. W.R. Grace cannot argue that it did not have the opportunity to actually litigate this issue in the New Jersey District Court Litigation. Cf. Docteroff, 133 F.3d at 215 (finding that the "actually litigated" requirement was satisfied even where debtor had some minimal participation in district court litigation). As a result, this prerequisite for issue preclusion is clearly met.

### 3. The New Jersey District Court Order Was Final.

The third prerequisite for issue preclusion was whether the June 9, 1994 Order of the New Jersey District Court was sufficiently "final," as such term has been defined in the

context of issue preclusion. Prudential submits that the June 9, 1994 Order clearly met the definition of "final" under Third Circuit jurisprudence.

"Finality" of a prior decision for purposes of issue preclusion is determined by evaluating whether the parties were fully heard and whether a reasoned opinion was filed. In re Brown, 951 F. 2d at 570. "Finality" is a more "pliant" concept for purposes of issue preclusion than it is in other legal contexts. Id. at 569 (quoting Dyundul v. Dyundul, 620 F.2d 409, 412 (3d Cir. 1980)). Among other things, a "final" decision for purposes of issue preclusion need not reach the maturity of being appealable. See In re Brown, 951 F.2d at 569 ("In this case, the order of the state court . . . was not final for the purposes of appeal, but that does not deny it preclusive effect in the bankruptcy court."); In re Docteroff, 63 F.3d at 1233 ("[T]he concept of finality for purposes of 'collateral estoppel does not require the entry of a judgment final in the sense of being appealable.'") (quoting In re Brown, 951 F.2d 564); Burlington N. R.R., 63 F.3d at 1233 (holding that the fact that the prior decision was not appealable is of little consequence and concluding that the denial of summary judgment in the prior case and issues determined therewith were sufficiently final to be given issue preclusive effect); In re Pennsylvania Truck Lines, Inc., Bankr. No. 92-12370DAS, 1994 WL 247348, at *1 (Bankr. E.D. Pa. June 1, 1994) (stating that the pending status of an appeal from a federal court judgment does not affect the finality of the judgment for preclusion purposes, particularly in the area of bankruptcy claim litigation). Rather, "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." In re Brown 951 F.2d at 569 (emphasis added) (quoting Restatement (Second) of Judgments §13 (1982)).

As a result of the foregoing, courts have determined interlocutory orders to be final for purposes of issue preclusion and have given preclusive effect to interlocutory orders, including orders denying summary judgment. See, e.g., Burlington N. R.R., 63 F.3d at 1233 n.8 (determining that an interlocutory order denying summary judgment precludes relitigation in a subsequent litigation as to issues decided in the order); In re G-I Holding, Inc., 02-CV-3082(WGB), 2003 WL 22273256 (D.N.J. Aug. 8, 2003) (holding that the United States Tax Court's prior determinations as to statute of limitations precludes re-litigation of issue in bankruptcy); see also 18 Fed. Prac. & Proc. Juris. 2d § 4418 ("A wide variety of interlocutory or other orders also may qualify for direct estoppel.").

Moreover, "finality" for purposes of issue preclusion does not require that the prior litigation be complete. See In re Docteroff, 133 F.3d at 216. The Third Circuit follows the Restatement (Second) of Judgments in advising that an issue decided should be granted preclusive effect in a subsequent litigation even while the prior action remains pending:

> [I]nsistence on a final and fully appealed judgment can involve needless duplication and expenses to decide the same issue . . . in a second action while the first action is brought to a complete finish. '[T]he wisest course is to regard the prior decision as final for the purpose of issue preclusion without awaiting the end judgment.'

In re Brown, 951 F.2d at 569 (quoting Restatement (Second) of Judgments § 13 (1982)).

Further, a debtor, in particular, is prohibited from arguing that a pre-petition order lacks "finality" where debtor's bankruptcy filing prevented conclusion of the prior litigation:

> [Debtor], himself—and no one else—prevented the judgment from becoming final. By filing a Chapter 11 bankruptcy petition and invoking the automatic stay, he prevented the district court from holding a trial [to liquidate the amount of the claim] and entering final judgment. Permitting him to relitigate the issue in light of his original rejection of a full and fair opportunity to litigate would implicitly endorse his abuse of judicial process.

19

In re Docteroff, 133 F.3d at 216; see also In re 2435 Plainfield Ave., 223 B.R. 440 (Bankr. D.N.J. 1998) (affording preclusive effect to issues decided in prior litigation, where debtor's bankruptcy filing stayed consideration of appeal); In re G-I Holdings, 2003 WL 22273256 at *6. As a result of the foregoing, "finality," for purposes of issue preclusion, is a fairly lenient standard.

The June 9, 1994 Order clearly met the requirement of "finality" for purposes of issue preclusion. The New Jersey District Court considered all of the relevant issues, including the voluminous submissions and arguments advanced by W.R. Grace. Cf. In re Brown, 951 F.2d at 570 (finding of "finality" for purposes of issue preclusion where prior court opinion reflected an appreciation of the relevant facts and familiarity with applicable law). The New Jersey District Court issued a thorough and thoughtful fifty-three (53) page Opinion in which the New Jersey District Court carefully analyzed the issue of which state's statute of limitations should apply to Prudential's claims. Cf. In re Docteroff, 133 F.3d at 216 (considering an issue "finally" decided where prior court wrote a thorough and thoughtful opinion on the issue). Nowhere does the text of the New Jersey District Court Decision state that the Opinion was not final.[37] Moreover, W.R. Grace, recognizing that the New Jersey District Court intended the June 9, 1994 Order to conclusively bind the parties with respect to the statute of limitations issue, made several unsuccessful attempts to have the June 9, 1994 Order overturned, including filing an unsuccessful motion to certify the choice of law issues for interlocutory appellate review,[38] and an unsuccessful petition for a writ of mandamus seeking Third Circuit review.[39]   After W.R. Grace's unsuccessful attempts to have the New Jersey District Court Decision overturned, the

---

[37] See Generally R-21.
[38] See R-22.
[39] See R-23.

parties abided by the statute of limitations choice of law determination throughout the next seven (7) years of the New Jersey District Court Litigation until W.R. Grace filed its bankruptcy petition.

W.R. Grace's bankruptcy filing does not relieve application of the doctrine of issue preclusion. See In re Docteroff, 133 F.3d at 216. Indeed, a New Jersey court facing very similar facts as those here has ruled in a bankruptcy case that issue preclusion bars debtors from relitigating a previously-decided issue. See In re G-I Holdings, Inc., 02-CV-3082(WGB), 2003 WL 22273256 (D.N.J. 2003).[40]  In that case, the debtors, having filed for bankruptcy protection as a result of mounting asbestos liabilities, sought to relitigate statute of limitations issues previously decided as part of a detailed, prepetition federal court opinion denying a summary judgment motion brought by the debtors. See id. at *1. The court determined that the prior federal court decision was final, barring the debtors from relitigating a statute of limitations issue, even though (i) the prior determinations on the statute of limitations issues were contained in an opinion denying summary judgment, (ii) the debtors were unable to obtain substantive interlocutory review of the prior opinion, and (iii) the prior litigation, which was still actively proceeding as of the debtors' bankruptcy filing date, was automatically stayed and dismissed by operation of law upon the filing of the debtors' bankruptcy. See id. The court utilized the Third Circuit's "expanded view" regarding the application of issue preclusion, Lynne Carol Fashions, Inc., 453 F.2d at 1181, as well as the "pliant" concept of finality, In re Brown, 951 F.2d at 569. See In re G-I Holdings, Inc., 2003 WL 22273256 at *3-4.  As a result, the court ruled that the debtors were barred by issue preclusion from relitigating the statute of limitations issues. See id. at *7.

---

[40] A copy of the G-I Holdings opinion is Exhibit B to R-16.

Notwithstanding all of the foregoing, here, the Bankruptcy Court determined that the June 9, 1994 Order was not "final" for purposes of issue preclusion simply because <u>the June 9, 1994 Order was not appealable</u>.[41]    However, this determination by the Bankruptcy Court plainly ignores and contradicts established Third Circuit caselaw, which holds that "the concept of finality for purposes of 'collateral estoppel does not require the entry of a judgment final in the sense of being appealable,'" <u>In re Docteroff</u>, 63 F.3d at 1233 (<u>quoting</u> <u>In re Brown</u>, 951 F.2d 564).

For these reasons, Prudential submits that the June 9, 1994 Order on the issue of statute of limitations choice of law meets the "finality" requirement for purposes of issue preclusion as defined by the Third Circuit.

### 4.    The Statute of Limitations Choice of Law Determination Was an Essential Element of the New Jersey District Court Decision.

The fourth element of issue preclusion, that the determination of the issue in the prior litigation was essential to the prior decision, was also clearly met.  The New Jersey District Court Decision itself refers to the determination of the statute of limitations choice of law issue as the "threshold inquiry," which "analysis is necessary" to the New Jersey District Court Decision.[42]  Moreover, where, as here, the prior consideration of the issue was raised by the party now seeking to relitigate, such party cannot contend that the issue was not essential to the prior case.  <u>See</u> <u>In re G-I Holdings, Inc.</u>, 2003 WL 22273256 at *3 ("Having requested the [prior court] to grant summary judgment on the statute of limitations issues, Debtors could hardly argue that they did not recognize them as important.").

---

[41] <u>See</u>, <u>e.g.</u>, R-14 at 32 ("Well, somebody has the right to appeal . . . or else the ruling can't have collateral estoppel consequences because there's no right to appeal.")

[42] R-21 at 10.

Given the fact that the New Jersey District Court and W.R. Grace itself deemed the statute of limitations choice of law issues essential, the fourth element for issue preclusion is unquestionably met here.

C.    **Conclusion: The Bankruptcy Court Should Have Applied the Doctrine of Issue Preclusion to Bar W.R. Grace from Relitigating the Statute of Limitation Choice of Law Issue.**

In summary, because the four elements necessary for issue preclusion have been met, and because the Third Circuit requires that bankruptcy courts apply issue preclusion where such elements are met, see In re Brown, 951 F.2d 565-66, the Bankruptcy Court was required to apply the doctrine of issue preclusion to bar W.R. Grace from relitigating the statute of limitations choice of law issue previously decided by the New Jersey District Court. In light of the fact that the Bankruptcy Court did not do so, the Bankruptcy Court erred as a matter of law.

II.    **THE BANKRUPTCY COURT IMPROPERLY ACTED AS AN APPELLATE COURT IN ALLOWING W.R. GRACE TO COLLATERALLY ATTACK THE VALID, BINDING NEW JERSEY DISTRICT COURT DECISION**

Disregarding (i) the extensive prepetition litigation between Prudential and W.R. Grace with respect to statute of limitations issues, (ii) the comprehensive and binding New Jersey District Court Decision disposing of statute of limitations choice of law issues with respect to Prudential's claims, and (iii) W.R. Grace's failed efforts to overturn the New Jersey District Court Decision, W.R. Grace improperly sought to use the bankruptcy forum to relitigate, collaterally attack and appeal the prior New Jersey District Court Decision.

Contrary to W.R. Grace's efforts to overturn the New Jersey District Court Decision, the Third Circuit Court of Appeals has clearly stated that bankruptcy courts may not serve as courts of appeal:

> The Bankruptcy Code was not intended to give litigants a second chance to challenge a [prior] judgment, nor did it intend for the Bankruptcy Court to serve as an appellate court . . . .

In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997).  Further, "[a] collateral attack on a final judgment is not a permissible substitute for appealing that judgment."  Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000).  "A lawsuit constitutes a collateral attack on a previously-entered judicial decree if it attempts to avoid, defeat, or evade, or otherwise attempts to deny the prior decree's force and effect; thus, a subsequent lawsuit attempts a collateral attack if it seeks in some manner to overrule a previous judgment."  Official Committee of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP), 237 B.R. 275, 289 (Bank. E.D. Pa. 1999).

Notwithstanding the foregoing, the Bankruptcy Court improperly permitted W.R. Grace to collaterally attack and effectively appeal the New Jersey District Court Decision.  For example, after declining to bar W.R. Grace from relitigating the previously-litigated statute of limitations choice of law issue, the Bankruptcy Court improperly acceded to W.R. Grace's request and proceeded to overrule as erroneous the New Jersey District Court's analysis of the choice of law issue:

> MR. GILSON [Prudential's counsel]:        All right, so now you're left with the same question that was in front of the [New Jersey] district court.  And what you're saying is it's not a final order.  But why would you disregard [the New Jersey District Court's] analysis and thinking --
>
> THE COURT:        **Because it's wrong.**[43]

The Bankruptcy Court added:

> THE COURT:        . . . if I have to re-look at this issue and I think a district court sitting in New Jersey that is not binding on me as a Delaware bankruptcy judge is wrong, I'm not going to apply it.[44]

---

[43] R-14 at 39-40 (emphasis added).

[44] Id. at 40.

For these reasons, the Bankruptcy Court erred as a matter of law in allowing W.R. Grace to improperly collaterally attack and effectively appeal the New Jersey District Court Decision. Consequently, the Bankruptcy Court's ruling should be reversed.

A.    **The New Jersey District Court was Particularly Well Suited to Rule as to the Statute of Limitations Issues Governing Prudential's Century Center Claims.**

In addition to the reasons previously noted, the Bankruptcy Court should not have substituted its own analysis for the New Jersey District Court's sound reasoning. A bankruptcy court is required to give substantial deference to another court's prior ruling where the facts and circumstances are similar. See In re Turner, 326 B.R. 563, 572 (Bankr. W.D. Pa. 2005) (citing In re Brown, 244 B.R. 62, 64 (Bankr. D.N.J. 2000)). This is particularly true here where W.R. Grace did not present any evidence to the Bankruptcy Court.

The New Jersey District Court was particularly well-positioned to rule on the statute of limitations issue, given the volumes of evidence, briefing and argument on the issue provided to the New Jersey District Court by the parties, and the New Jersey District Court's particular knowledge of the law of its forum state. This is especially important in light of the fact that the New Jersey District Court, after considering the lengthy briefing and arguments submitted by the parties, determined to apply the law of the forum state.[45] See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941); see also Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 31 (3d Cir. 1975) (holding that New Jersey choice of law doctrine governs the choice of law in the district of New Jersey).

In determining choice of law questions relating to statute of limitations, New Jersey courts apply the statute of limitations of New Jersey where the plaintiff is a domiciliary of

---

[45] See R-21 at 10 (stating that the New Jersey choice of law doctrine governs).

New Jersey.  See, e.g., Draper v. Airco, Inc., 580 F.2d 91 (3d Cir. 1978); Warner v. Auberge

Gray Rocks, Inn, 827 F.2d 938, 941 (3d Cir. 1987); In re Reach, McClinton & Co., Inc., 102

B.R. 392, 399 (D.N.J. 1989).[46]  For purposes of determining where a corporation is domiciled,

New Jersey courts look to the state of incorporation.  See State v. Garford Trucking, 72 A.2d

851, 854 (N.J. 1950); In re Reach, 102 B.R. at 399.

 In this case, Prudential was and is a domiciliary of New Jersey as it was

incorporated in New Jersey and had its principal place of business in Newark, New Jersey.  As a

result, pursuant to Klaxon, supra, at 313 U.S. 487, the New Jersey District Court properly ruled

that the statute of limitations of New Jersey applied to Prudential's state law claims asserted in

federal court, stating:

> Thus, I conclude that because plaintiff Prudential is a New Jersey
> domiciliary whose primary place of business is in New Jersey, the
> New Jersey Supreme Court would be persuaded by its interest in
> compensating its domiciliary to apply its own statute of limitations
> in this case.[47]

 In reviewing this same issue, the Bankruptcy Court should have come to the same

conclusion as the New Jersey District Court for the same reasons as those articulated by the New

Jersey District Court, and should not have overruled the New Jersey District Court and declared

its decision to simply be "wrong."

### B. W.R. Grace's Arguments Seeking to Overrule the New Jersey District Court Decision Violated the Erie Line of Cases.

 The result achieved by W.R. Grace before the Bankruptcy Court also violated the

doctrine emanating from the Erie line of cases.  Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

---

[46] See also R-21 at 12-15.

[47] Id. at 16.  W.R. Grace made numerous arguments to the New Jersey District Court as to why the New Jersey statute of limitations should not apply to Prudential's claims.  The New Jersey District Court gave due consideration to each of W.R. Grace's arguments, but rejected all of them.  See id. at 9-16.

Under the <u>Erie</u> line of cases, including <u>Klaxon</u>, regardless of which federal court ultimately decides the issues in a case, that court must analyze the issues consistent with the law of the state in which the federal case was first filed.  <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 638-39 (1964); <u>see also</u> <u>In re Gaston & Snow</u>, 243 F.3d 599, 607 (2d Cir. 2001) ("It would be anomalous to have the same property interest governed by the laws of one state in federal diversity proceedings and by the laws of another state where a federal court is sitting in bankruptcy.") (<u>quoting</u> <u>In re Merritt Dredging Co.</u>, 839 F.2d 203, 206 (4th Cir. 1988)).  Otherwise, defendants and debtors might seek to have the issues adjudicated in a different, more favorable forum, violating the plaintiff's privilege in choice of litigation venue and encouraging the ill of forum-shopping, both of which consequences run contrary to the <u>Erie</u> doctrine.  <u>See</u> <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 523-28 (1990); <u>Van Dusen</u>, 376 U.S. at 638-639; <u>In re SMEC, Inc.</u>, 161 B.R. 953, 956 (M.D. Tenn. 1993).

Here, the Bankruptcy Court should have applied the same substantive law that the New Jersey District Court applied.  <u>In re Professional Investors Ins. Group, Inc.</u>, 232 B.R. 870, 883 (Bankr. N.D. Texas 1999) (applying choice of law doctrine of the forum of the prepetition litigation); <u>Van Dusen</u>, 376 U.S. at 639 (requiring federal courts to apply the law of the original forum state); <u>Davis v. Norris</u>, 34 Fed. Appx. 658, 665 (10th Cir. 2002) ("[W]e must look to the choice of law rules of that State in which the suit was originally filed . . . ."); <u>In re Segre's Iron Works, Inc.</u>, 258 B.R. 547, 550-52 (Bankr. D. Conn. 2001) (applying the substantive law of the forum of the prepetition litigation).

Based upon the foregoing, the Bankruptcy Court's Order also violated the doctrine set forth in the <u>Erie</u> line of cases, which was legally improper.

## III.   THE BANKRUPTCY COURT IMPROPERLY MADE STATUTE OF LIMITATIONS DETERMINATIONS WITHOUT DEVELOPMENT OF AN APPROPRIATE FACTUAL RECORD.

As determined by the New Jersey District Court prior to W.R. Grace's bankruptcy filing, W.R. Grace's statute of limitations defenses with respect to Prudential's State Law Claims would require careful factual analysis at trial.[48] The Bankruptcy Court, however, made its statute of limitations determinations with respect to Prudential's Century Center Claims without the development of _any_ factual record.

In rendering a decision and final order, a bankruptcy court must make factual findings.  See, e.g., In re Cornelison, 901 F.2d 1073, 1075 (11th Cir. 1990) ("An appellate court will not overturn a district court's approval of a bankruptcy court's factual findings unless the findings are clearly erroneous.  The bankruptcy court, however, must make factual findings.") (citations omitted); In re Thompson, 262 B.R. 407, 411-14 (B.A.P. 6th Cir. 2001) ("The bankruptcy court must make factual findings . . . in order for its findings to be sufficient for purposes of review.").  Consequently, the findings of the Bankruptcy Court must have been based upon a developed factual record, with each side having had the opportunity to provide submissions.

Here, in the Debtors' Initial Brief, W.R. Grace identified only one challenge to the Century Center Claims -- specifically, that such claims should be barred pursuant to the statute of limitations of the state of Georgia.  W.R. Grace did not submit any evidence in support of its Initial Brief, but rather merely asserted legal arguments in support of its position that

---

[48] See, e.g., R-21 at 21-30 (repeatedly stating that there were significant issues of material fact that had to be resolved prior to determining whether application of the statute of limitations would bar Prudential's claims).

Prudential's claims were allegedly time-barred under Georgia law.[49]  In response to W.R.

Grace's legal arguments, Prudential submitted briefing and argued, *inter alia*, that the New

Jersey District Court had previously ruled that New Jersey statute of limitations law applied, and

that W.R. Grace was barred from relitigating the issue of which state's statute of limitations

would apply, pursuant to the doctrine of issue preclusion.

At the hearing conducted by the Bankruptcy Court on January 24, 2006, the

Bankruptcy Court entertained oral argument from W.R. Grace and Prudential, but considered no

evidence.  At the end of oral argument, the Bankruptcy Court requested that the parties submit

further briefing on the following two specific legal issues: (i) the choice of law analysis that the

Bankruptcy Court should perform in determining which statute of limitations would apply to

Prudential's Century Center Claims and (ii) the preclusive effect of the New Jersey District

Court's prior determination on the statute of limitations issue.[50]  The Bankruptcy Court did not

request the development of an evidentiary record, and, in fact, W.R. Grace's counsel itself

confirmed that the discrete issues to be further heard and considered were legal, not factual:

> MS. BROWDY [W.R. Grace's counsel]:     . . . So, again, I think
> it's just a legal brief.  I don't believe there's any factual issues.[51]

Thereafter, at the September 25, 2006 hearing, despite its previous representation,

W.R. Grace unilaterally changed the focus of the legal argument from choice of law and issue

preclusion to a discussion of the facts related to the W.R. Grace's statute of limitations defense.[52]

Through these "facts," W.R. Grace's counsel urged the Bankruptcy Court to adopt certain facts

---

[49] See R-12 at 6-9.

[50] See R-14 at 45.

[51] R-14 at 44.

[52] See, e.g., R-18 at 16 (Debtors' counsel referring to "the dispositive facts . . . one set of facts . . . the second set of facts . . . the key fact . . . .")

discussed by the New Jersey District Court in its 2001 decision dismissing Prudential's RICO claim -- which decision related to defendants other than W.R. Grace -- and the subsequent 2004 decision of the Third Circuit Court of Appeals affirming the New Jersey District Court's dismissal of Prudential's RICO claim against defendants other than W.R. Grace.[53]

       Rather than admonishing W.R. Grace for raising factual issues in contradiction to its counsel's previous representations, and at a hearing specifically designated for legal issues only, the Bankruptcy Court surprisingly accepted W.R. Grace's factual assertions over the objections of Prudential's counsel:

> MR. GILSON: [Prudential's counsel]      No, Your Honor. In order for you to [make factual determinations], you'd have to have a record that, with all due respect, stacked up about five feet high with disputed issues of fact.
>
> THE COURT:      I don't think so. I need Judge Ackerman's opinion and the –
>
> MR. GILSON:      And -- and –
>
> THE COURT:      -- 3rd Circuit's affirmance.[54]

The Bankruptcy Court accepted W.R. Grace's factual assertions *despite the fact that Prudential did not have the opportunity to submit any facts to the Bankruptcy Court for determination.* In response to Prudential's protestations, the Bankruptcy Court simply stated that it believed that Prudential could have "no basis" to argue a separate set of facts.[55] The Bankruptcy Court then

---

[53] See, e.g., id. at 24 (discussing factual determinations made by the New Jersey District Court in the 2001 New Jersey District Court opinion dismissing Prudential RICO claim).

[54] See id. at 47-48.

[55] See id. at 35.

ruled that, based upon these alleged facts, it would enter an order expunging the Century Center Claims.[56]

In expunging Prudential's Century Center Claims, the Bankruptcy Court effectively granted W.R. Grace summary judgment -- without the development of a proper factual record and without providing Prudential any opportunity to submit factual evidence to support its position and/or rebut W.R. Grace's factual assertions.  Basic application of Fed. R. Bankr. P. 7056, which incorporates Fed. R. Civ. P. 56, provides that before a bankruptcy court may make a summary judgment determination, both parties must be afforded an opportunity to submit evidence to the bankruptcy court to determine whether there are any material issues of fact for trial.  See, e.g., Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  Moreover, all such evidence must be viewed in the light most favorable to the nonmovant.  Id.

Because the Bankruptcy Court did not permit Prudential to submit facts and establish a factual record, and instead assumed the truth and the applicability of the facts asserted by W.R. Grace, the Bankruptcy Court abused its discretion and/or erred as a matter of law.  See id.  For these reasons, at a minimum, the Order should be reversed and the matter remanded to the Bankruptcy Court for establishment and review of an appropriate factual record.

## IV.    THE BANKRUPTCY COURT IMPROPERLY ALTERED THE PRE-BANKRUPTCY STATE LAW RIGHTS UNDERLYING PRUDENTIAL'S CLAIMS.

Through the New Jersey District Court Decision, the New Jersey District Court ruled that Prudential's claims against W.R. Grace were to be determined under New Jersey statute of limitations law.  As a result, immediately before W.R. Grace's bankruptcy filing, a judicial determination existed requiring Prudential's claims against W.R. Grace to be determined

---

[56] See id. at 52.

pursuant to New Jersey statute of limitations law.  Through the Order, the Bankruptcy Court modified Prudential's rights, as those rights existed immediately prior to W.R. Grace's bankruptcy filing, by determining that the Century Center Claims were to be determined under either Georgia or Delaware statute of limitations law.[57]

It is well-settled that claims asserted against a bankruptcy estate are to be determined by reference to the applicable non-bankruptcy law related to such claims that existed immediately prior to the date of a debtor's bankruptcy filing.  See Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000); In re Segre's, 258 B.R. at 550.  Where a claimant has filed litigation against a debtor prior to the debtor's bankruptcy filing, the prepetition litigation will define the non-bankruptcy law rights of the claimant.  See, e.g., In re Professional Investors, 232 B.R. at 883-85; In re Segre's, 258 B.R. at 551-52.

Here, the Bankruptcy Court should not have allowed W.R. Grace to alter Prudential's non-bankruptcy law rights as those rights existed immediately prior to W.R. Grace's bankruptcy filing.  Prudential's claims against W.R. Grace, including the Century Center Claims, were to have been determined under New Jersey statute of limitations law, as decided by the New Jersey District Court.  W.R. Grace could not, as a matter of law, alter Prudential's non-bankruptcy law rights simply because W.R. Grace chose to file its bankruptcy case in Delaware. See In re SMEC, 161 B.R. at 956 ("A claim which was valid prior to bankruptcy should not be disallowed solely because the state law of the state in which the debtor has chosen to reside and filed bankruptcy . . . would not allow recovery.") (quoting In re Ovetsky, 100 B. R. 115, 118 (Bankr. N.D. Ga. 1989)); In re Segre's, 258 B.R. at 552 ("It is fundamentally unfair, and subversive of uniformity, for a debtor to be permitted to defeat a creditor's claim – which was

---

[57] See id. at 51-52.

timely prosecuted in, and under the law of, the state with the greatest interest in the dispute – through the simple maneuver of filing a bankruptcy case in a different state where a less generous statute of limitation arguably controls.").

W.R. Grace was not entitled to new defenses merely because of its bankruptcy filing.  See Raleigh, 530 U.S. at 20 ("[T]here is no reason why [the state law] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (quoting Butner v. United States, 440 U.S. 48, 55 (1979)); In re Combustion Eng'g, Inc. 391 F.3d 190, 245 (3d Cir. 2005) ("Ultimately, the effect of § 502 [of the Bankruptcy Code] is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy.").

As a result of all of the foregoing, the Bankruptcy Court was obligated to apply the New Jersey statute of limitations law with respect to any determination involving Prudential's claims in W.R. Grace's bankruptcy case.  The Bankruptcy Court's alteration of Prudential's state law rights was improper as a matter of law.

## V.    THE BANKRUPTCY COURT ERRED IN ITS APPLICATION OF DELAWARE CHOICE OF LAW STANDARDS.

For the reasons previously stated, the Bankruptcy Court was legally obligated to apply the New Jersey statute of limitations law to Prudential's Century Center Claims. Assuming *arguendo* that the Bankruptcy Court's decision to apply Delaware choice of law principles in determining the applicable statute of limitations governing Prudential's claims was proper, the Bankruptcy Court nevertheless erred by failing to properly follow Delaware's choice of law principles.  In particular, the Bankruptcy Court erred in its application of Delaware choice of law principles because it failed to apply the doctrine announced in the Delaware Supreme Court's ruling in Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc., 866 A.2d

1, 16-18 (Del. 2005) and also failed to analyze properly where the Century Center Claims arose for purposes of determining applicable state law under Delaware choice of law principles.

**A.      The Delaware Borrowing Statute and the <u>Saudi Basic</u> Doctrine.**

W.R. Grace argued before the Bankruptcy Court that the Bankruptcy Court should apply the choice of law doctrine of the state of Delaware in determining Prudential's Century Center Claims because W.R. Grace had decided to file its bankruptcy petition in Delaware, which argument the Bankruptcy Court accepted.   Assuming *arguendo* that the Bankruptcy Court were correct, Delaware's choice of law doctrine references application of Delaware's "borrowing statute," 10 Del. C. § 8121, which governs choice of law issues with respect to statute of limitations:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State or the time limited by the law of the state or country where the cause of action arose for bringing an action upon such cause of action.  Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this state shall apply.

10 Del C. § 8121 (the "Delaware Borrowing Statute").  The Delaware Borrowing Statute, like those of most states, was enacted as a measure to prevent forum shopping.  <u>Saudi Basic</u>, 866 A.2d at 16-18.

The Delaware Supreme Court, however, has limited the application of the Delaware Borrowing Statute where a party seeks to use Delaware as its choice of forum to obtain a limitations defense that would not otherwise have been available to that party.  <u>Saudi Basic</u>, 866 A.2d at 16.  In particular, where the would-be defendant party has chosen the forum for the litigation, the Delaware Borrowing Statue does not apply; instead, Delaware courts will apply the law of the jurisdiction in which the cause of action arose.  <u>Saudi Basic</u>, 866 A.2d at 18.

Otherwise, application of the Delaware Borrowing Statute in such instances could promote, rather than discourage, forum shopping – a would-be defendant could choose Delaware as a forum for a declaratory action or a bankruptcy case, then use the Delaware Borrowing Statute to apply the <u>shorter</u> statute of limitations to bar the would-be plaintiff's claim.  <u>See</u> <u>id</u>.  As a threshold matter, therefore, a court applying the Delaware Borrowing Statute must decide whether the party having chosen the forum seeks to benefit from the shorter statute of limitations.  <u>Saudi Basic</u>, 866 A.2d at 16-18.  If so, the Court must then disregard the Delaware Borrowing Statute and instead apply the statute of limitations of the jurisdiction where the claim arose.  <u>See</u> <u>id.</u>  Federal courts applying Delaware choice of law rules have adhered to the principles set forth in <u>Saudi Basic</u>:

> [A] literal application of the statute cannot be countenanced when it would circumvent the purpose of the statute, as is the case when a plaintiff can be seen to be taking advantage of the shorter Delaware statue of limitations to deprive a defendant of claims he would otherwise have.

<u>B. Lewis Prods., Inc. v. Bean</u>, No. 02-93-KAJ, 2005 WL 273298, at *2 (D. Del. Jan. 28, 2005).

Here, W.R. Grace chose Delaware as the forum for its bankruptcy and then utilized the Delaware Borrowing Statute to invoke a shorter statute of limitations in defense to the Century Center Claims, which is precisely the practice prohibited by the Delaware Supreme Court in <u>Saudi Basic</u>.

Notwithstanding <u>Saudi Basic</u>, the Bankruptcy Court ignored the doctrine, choosing instead to blindly apply the Delaware Borrowing Statute.[58]  From the record, it appears that the Bankruptcy Court did not even understand the required application of the <u>Saudi Basic</u> doctrine, confusing it with the entirely separate question of issue preclusion:

---

[58] <u>See</u> R-18 at 45.

MR. GILSON [Prudential's counsel]:    . . . So, the question then becomes, what [law] should you apply?  They want you to leap immediately to applying Georgia law.  I submit to you that there's a first stop in that, Your Honor.  That if you look at Delaware Supreme Court, and in particular the <u>Savvy Basic Industries Corporation</u> [sic] case, which is a Delaware Supreme Court [case], the Court there said, before you apply[] our Borrowing Statute, look at the purpose of the Borrowing Statute.  The purpose of the Borrowing Statute is to prevent forum shopping.  Okay?  You know you're out of time, you come to a court in order to get a better time frame.

Well, here, Prudential was in time.  It was litigat[ing] in New Jersey.  The Court there had not dismissed its claims and they were going forward.  And now Grace comes to Delaware and says, give us the benefit of the Borrowing Statute and give us a different result than what we got in New Jersey.  That's contrary to Delaware law.

And Delaware law says at that point, you don't apply the Borrowing Statute.

THE COURT:    No, I don't agree.  Delaware law would only say I don't apply the Borrowing Statute if this were a matter for issue preclusion, but it is not a matter for issue preclusion because Judge Ackerman has dismissed the Federal [RICO] claims.

. . .

My question is I'm sitting as a bankruptcy judge applying Delaware law.  Where do I look? . . . And my answer is I look to Delaware's Borrowing Statute.  And no matter how I use Delaware's Borrowing Statute, it doesn't get me to New Jersey.[59]

As a result, even if Delaware's choice of law doctrine were to apply, the Bankruptcy Court failed as a matter of law to conduct the analysis required pursuant to <u>Saudi Basic</u>, and instead simply improperly applied the Delaware Borrowing Statute to Prudential's Century Center Claims.

## B.    Prudential's Cause of Action Arose in New Jersey.

Even if the Bankruptcy Court had the authority to conduct its own independent analysis under the Delaware Borrowing Statute of what statute of limitations applied to

---

[59] <u>Id.</u> at 42-45.

Prudential's Century Center Claims, in analyzing where Prudential's claims arose, the Bankruptcy Court erred as a matter of law in ruling that in no event could the claims have arisen in New Jersey. To the contrary, application of Delaware law would have resulted in New Jersey being the jurisdiction where all of Prudential's claims arose.

In determining where a cause of action arose, the Delaware Supreme Court has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145 ("Restatement"). Travelers Indem. Co. v. Lake, 594 A.2d 38, 46-47 (Del. 1991). Under the Restatement test, the law of the state with the "most significant relationship to the occurrence and the parties" will be applied to determine the rights of the parties. Restatement § 145(1). The Restatement test directs that in actions with contacts relating to multiple states, the significance of the states' relationship to the tort is determined by evaluating the following policy considerations:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Id. § 6.

To properly evaluate these policy considerations, the following contacts should be considered:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Id. § 145.

This test is similar to the test used by the New Jersey District Court in the New Jersey District Court Litigation.[60]  Applying the Delaware Restatement test here, the Bankruptcy Court should have reached the same result as the New Jersey District Court, thereby finding that New Jersey had the most significant relationship to Prudential's claims.  Almost all of the important contacts in this case that are relevant to the significant relationships analysis are with New Jersey.  For example, New Jersey is where Prudential's economic injury was sustained. Prudential was organized under New Jersey law and has maintained its corporate headquarters in New Jersey since 1873.  New Jersey is where all of Prudential's investment decisions were made.  Moreover, the cost of abating and dealing with the asbestos (the essence of Prudential's injury in this case) has been and will be borne by Prudential in New Jersey, where its principal place of business is located and where all financial decisions are made.  Additionally, W.R. Grace has had significant contacts with New Jersey, as it previously had a manufacturing plant and substantial sales of asbestos products in New Jersey.  All of these contacts give New Jersey the most significant relationship to this case.

By contrast, Georgia's sole contact with this litigation is the physical location of Prudential's Century Center I and Century Center IV buildings.  As the New Jersey District Court determined in 1994, that single interest does not outweigh New Jersey's contacts.[61]  W.R. Grace asserted before the Bankruptcy Court that an Eighth Circuit Court of Appeals' decision which held that the law of the state where a building was located should control for statute of

---

[60] See R-21 at 9-16.

[61] See id.

limitations purposes.[62]   However, W.R. Grace's need to rely on Eighth Circuit caselaw was not

for lack of relevant authority in Delaware, where W.R. Grace chose to file its bankruptcy petition

and whose choice of law principles W.R. Grace argued the Bankruptcy Court should apply.

Rather, W.R. Grace's reliance upon Eighth Circuit caselaw, rather than Delaware caselaw, was

because Delaware jurisprudence was contrary to W.R. Grace's interests.   See Travelers Indem.

Co., 594 A.2d at 46-47.

   Against this backdrop, when considering the Delaware Borrowing Statute and the

Saudi Basic doctrine, it becomes abundantly apparent that the Bankruptcy Court should have

applied New Jersey statute of limitations law to Prudential's Century Center Claims.   The

Bankruptcy Court's refusal to consider New Jersey[63] as the jurisdiction where Prudential's cause

of action arose for statute of limitations purposes was legally improper.

---

[62] R-15 at 3-4.

[63] R-18 at 31 ("[T]he only [statute of limitations] I can't see applying is New Jersey."); id. at 47 ("There is no way that Prudential, under these circumstances, can rely on New Jersey law."); id. at 51 ("I cannot look to New Jersey law.").

## CONCLUSION

For all of the foregoing reasons, Prudential respectfully requests that the Court reverse the Bankruptcy Court's Order expunging Prudential's Century Center Claims, and grant Prudential such other and further relief as may be just and appropriate.

Wilmington, Delaware                    Respectfully submitted,
Date: January 16, 2007

                                        _____/s/ Laurie S. Polleck_____
                                        Laurie S. Polleck (#4300)
                                        JASPAN SCHLESINGER HOFFMAN LLP
                                        913 Market Street, 12th Floor
                                        Wilmington, DE 19801
                                        (302) 351-8000

                                        - and -

                                        RIKER, DANZIG, SCHERER, HYLAND
                                        & PERRETTI LLP
                                        Joseph L. Schwartz, Esq.
                                        Curtis M. Plaza, Esq.
                                        Kevin J. Larner, Esq.
                                        Headquarters Plaza
                                        One Speedwell Avenue
                                        Morristown, NJ 07962
                                        (973) 538-0800

                                        ATTORNEYS FOR APPELLANT,
                                        THE PRUDENTIAL INSURANCE COMPANY
                                        OF AMERICA

3715097.8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: W.R. Grace & Co., et al

_____

Prudential Insurance Company of
America,
                  Appellant.                        Civil Action No. 06-745 RLB
                  v.
W.R. Grace & Co., *et al*.
                  Appellee.

                                              Bankruptcy Case No. 01-01139
                                              AP-06-70

## <u>CERTIFICATE OF SERVICE</u>

     I, Laurie S. Polleck, hereby certify that on this 16th day of January 2007, I served one copy of the ***Brief of Appellant*** upon the parties listed below, in the manner indicated:

**First Class Mail**
Janet S. Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**Hand Delivery**
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

**Hand Delivery**
Frank J. Perch, III, Esquire
Office of the United States Trustee
844 King Street
Wilmington, DE 19801

**Hand Delivery**
Michael R. Lastowski, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

**First Class Mail**
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

                                   **JASPAN SCHLESINGER HOFFMAN LLP**

                                   <u>/s/ Laurie S. Polleck</u>
                                   Laurie S. Polleck (#4300)
                                   913 Market Street, 12th Floor
                                   Wilmington, DE 19801
                                   (302) 351-8005

18093.1