# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:  )
W. R. GRACE & CO., *et al.*,  )    Civil Action No. 06-745 RLB
      *Debtors.*  )    Hon. Ronald L. Buckwalter
  )    United States District Judge
  )    (by special designation)
  )
  )
PRUDENTIAL INSURANCE  )
COMPANY OF AMERICA,  )
      *Appellant,*  )
    v.  )
  )    Bankruptcy Case No. 01-01139
W. R. GRACE & CO., *et al.*  )    AP 06-70
      *Appellees.*  )
  )

On Appeal from the United States Bankruptcy Court
for the District of Delaware (Fitzgerald, J.)

## APPELLEES' BRIEF

David M. Bernick, P.C.
Janet S. Baer
Lisa Esayian
Samuel Blatnick
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL   60601
(312) 861-2000

Christopher Landau, P.C.
Gregory L. Skidmore
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
(202) 879-5000

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
PACHULSKI STANG ZIEHL YOUNG
    JONES & WEINTRAUB LLP
919 North Market Street, 17th Floor
Wilmington, DE   19801
(302) 652-4100

February 14, 2007

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................. 1

STATEMENT OF THE ISSUES .............................................. 3

STATEMENT OF JURISDICTION ......................................... 3

STANDARD OF REVIEW .................................................... 3

STATEMENT OF THE CASE AND THE FACTS ..................... 4

    A.    The New Jersey Litigation ...................................... 4

    B.    The Delaware Litigation......................................... 9

SUMMARY OF ARGUMENT ............................................... 11

ARGUMENT ..................................................................... 13

I.    The Bankruptcy Court Correctly Held That The 1994 New Jersey Choice-Of-Law Decision Was Not Entitled To Preclusive Effect. ....................................................... 13

    A.    The Issue Before The Bankruptcy Court Was Not "The Same" Issue Presented In New Jersey................................... 14

    B.    The Issue Before The Bankruptcy Court Was Neither "Actually Litigated" In New Jersey Nor "Essential" To The New Jersey Court's 1994 Decision. ................................ 23

    C.    The New Jersey Court's 1994 Decision Was Not Final And Appealable. ................................................. 24

II.    The Bankruptcy Court Correctly Applied Delaware's Choice-Of-Law Analysis In Dismissing Prudential's Claims As Untimely Under Either Georgia Or Delaware Law. ..................... 30

CONCLUSION ................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Atherton v. FDIC,*
    519 U.S. 213 (1997) .......................................................................16

*B. Lewis Prods., Inc. v. Bean,*
    No. 02-93-KAJ, 2005 WL 273298 (D. Del. Jan. 28, 2005) .............34

*Building Erection Servs., Inc. v. JLG, Inc.,*
    376 F.3d 800 (8th Cir. 2004) ..........................................................34

*Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co.,*
    63 F.3d 1227 (3d Cir. 1995)..................................................14, 26, 29

*Calhoun v. Yamaha Motor Corp.,*
    216 F.3d 338 (3d Cir. 2000)............................................................34

*Corporation of Mercer Univ. v. National Gypsum Co.,*
    368 S.E.2d 732 (Ga. 1988)..............................................................33

*Davis v. Norris,*
    34 F. App'x 658 (10th Cir. 2002).....................................................18

*Dici v. Pennsylvania,*
    91 F.3d 542 (3d Cir. 1996)..............................................................20

*Erie R.R. v. Tompkins,*
    304 U.S. 64 (1938) ...................................................................15, 17

*Evanston Ins. Co. v. Affiliated FM Ins. Co.,*
    556 F. Supp. 135 (D. Conn. 1983)...................................................20

*Feniello v. University of Pa. Hosp.,*
    558 F. Supp. 1365 (D.N.J. 1983)....................................................20

*Greenleaf v. Garlock, Inc.,*
    174 F.3d 352 (3d Cir. 1999)............................................................25

*Grella v. Salem Five Cent Sav. Bank,*
    42 F.3d 26 (1st Cir. 1994)...............................................................24

ii

*Grogan v. Garner,*
    498 U.S. 279 (1991) .......................................................................... 13

*Guild Trust v. Union Pacific Land Res. Corp.,*
    682 F.2d 208 (10th Cir. 1982) ....................................................... 20

*Health Cost Controls of Ill., Inc. v. Washington,*
    187 F.3d 703 (7th Cir. 1999) .......................................................... 28

*In re Asbestos School Litig.,*
    No. 83-0268, 1991 WL 3890 (E.D. Pa. Jan. 9, 1991)...................... 35

*In re Brown,*
    951 F.2d 564 (3d Cir. 1991)................................................. 13, 26, 29

*In re Continental Airlines,*
    177 B.R. 475 (D. Del. 1993)............................................................... 4

*In re Docteroff,*
    133 F.3d 210 (3d Cir. 1997)............................... 14, 21, 23, 24, 25, 29

*In re Gaston & Snow,*
    243 F.3d 599 (2d Cir. 2001)...................................................... 16, 18

*In re G-I Holdings, Inc.,*
    No. 02-CV-3082 (WGB), 2003 WL 22273256 (D.N.J. Aug. 8,
    2003)................................................................................................ 19, 29

*In re Kane,*
    254 F.3d 325 (1st Cir. 2001).......................................................... 27

*In re Lindsay,*
    59 F.3d 942 (9th Cir. 1995) ........................................................... 17

*In re Merritt Dredging Co.,*
    839 F.2d 203 (4th Cir. 1988) ...................................................... 16, 18

*In re Payless Cashways,*
    203 F.3d 1081 (8th Cir. 2000) ......................................................... 16

*In re PHP Healthcare Corp.,*
    128 F. App'x 839 (3d Cir. 2005) (per curiam)............... 15, 16, 17, 18

*In re Prof'l Investors Insurance Group, Inc.*, 232 B.R. 870 (Bankr.
    N.D. Tex. 1999).................................................................................19

*In re Segre's Iron Works, Inc.*,
    258 B.R. 547 (Bankr. D. Conn. 2001) ...................................17, 18, 19

*In re SMEC Inc.*,
    161 B.R. 86 (M.D. Tenn. 1993)..............................................17, 18, 19

*In re Udell*,
    454 F.3d 180 (3d Cir. 2006)...................................................................4

*J.R. Clearwater Inc. v. Ashland Chem. Co.*,
    93 F.3d 176 (5th Cir. 1996) .................................................................25

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .....................................................1, 6, 15, 17, 23

*LeJeune v. Bliss-Salem, Inc.*,
    85 F.3d 1069 (3d Cir. 1996).................................................................34

*Miller Brewing Co. v. Jos. Schiltz Brewing Co.*,
    605 F.2d 990 (7th Cir. 1979) ..............................................................28

*Nutter v. Monongahela Power Co.*,
    4 F.3d 319 (4th Cir. 1993) ..................................................................27

*O'Keeffe v. Snyder*,
    416 A.2d 862 (N.J. 1980)....................................................................21

*Pacific Union Conf. of Seventh-Day Adventists v. Marshall*,
    434 U.S. 1305 (1977) ..........................................................................26

*Pack v. Beech Aircraft Corp.*,
    132 A.2d 54 (Del. 1957) ......................................................................38

*Polk v. Yellow Freight Sys., Inc.*,
    801 F.2d 190 (6th Cir. 1986) ..............................................................24

*Prudential Ins. Co. of Am. v. United States Gypsum Co.*,
    146 F. Supp. 2d 643 (D.N.J. 2001)........................................................8

*Prudential Ins. Co. of Am. v. United States Gypsum Co.,*
   359 F.3d 226 (3d Cir. 2004)................................................................9

*Raleigh v. Illinois Dep't of Revenue,*
   530 U.S. 15 (2000) ..........................................................................16

*Raytech Corp. v. White,*
   54 F.3d 187 (3d Cir. 1995)..........................................................20, 21

*Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.,*
   866 A.2d 1 (Del. 2005) .........................................................37, 38, 39

*Schor v. Abbott Labs.,*
   457 F.3d 608 (7th Cir. 2006) ..........................................................25

*Standefer v. United States,*
   447 U.S. 10 (1980) ..........................................................................27

*Suppan v. Dadonna,*
   203 F.3d 228 (3d Cir. 2000).......................................................13, 20

*Travelers Indem. Co. v. Lake,*
   594 A.2d 38 (Del. 1991) ..................................................................31

*Van Dusen v. Barrack,*
   376 U.S. 612 (1964) ........................................................................17

*Vanston Bondholders Protective Comm. v. Green,*
   329 U.S. 156 (1946) ........................................................................16

**Statutes**

10 Del. C. § 8106 ........................................................................30, 35

10 Del. C. § 8121 .................................................................10, 21, 31

11 U.S.C. § 362(a) ............................................................................8

18 U.S.C. § 1961................................................................................5

28 U.S.C. § 1291................................................................................7

28 U.S.C. § 1404..............................................................................17

28 U.S.C. § 158(a) ....................................................................... 3

Fed. R. Bankr. P. 7056 ............................................................. 36

Fed. R. Bankr. P. 8013 ............................................................... 4

Fed. R. Civ. P. 54(b) ............................................................ 7, 26

Fed. R. Civ. P. 56 ..................................................................... 36

Ga. Code Ann. § 9-3-30(a) ....................................................... 30

N.J. Stat. Ann. § 2A:14-1 .................................................. 30, 35

## Other Authorities

Charles A. Wright & Arthur R. Miller,
  *Federal Practice & Procedure* (2006) .............................. 25

*Restatement (Second) of Conflict of Laws* (1971) .................... 31

*Restatement (Second) of Judgments* (1982) ........................... 28

## INTRODUCTION

Prudential's position in this appeal rests on a factual and legal fallacy: that the choice-of-law issue presented by its state-law claims against Grace in federal bankruptcy court in Delaware is "the same" as the choice-of-law issue previously presented by its state-law claims against Grace in federal district court in New Jersey. For more than half a century, it has been settled that federal courts adjudicating state-law claims apply the choice-of-law provisions of the forum State. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, the federal court in New Jersey was presented with a choice-of-law issue under New Jersey law, whereas the bankruptcy court below was presented with a choice-of-law issue under Delaware law. Needless to say, the question of what law governs Prudential's claims against Grace *under New Jersey choice-of-law rules* is not "the same" as the question of what law governs Prudential's claims against Grace *under Delaware choice-of-law rules*. And in any event, Prudential does not satisfy the other requirements for

the application of collateral estoppel to the New Jersey court's 1994 decision denying Grace's motion for summary judgment.

It is no surprise that Prudential argues so vehemently that New Jersey's choice-of-law rules (and New Jersey's statute of limitations) applies here, because Prudential plainly loses under Delaware's choice-of-law rules, which require the application of either Georgia's or Delaware's (but certainly not New Jersey's) statute of limitations. Although Prudential makes a half-hearted argument that Delaware's choice-of-law rules require the application of New Jersey's statute of limitations, that argument is manifestly incorrect. These claims involve a Delaware corporation's liability for having installed fireproofing containing asbestos in buildings located in Georgia. As the bankruptcy court explained, under no circumstances would Delaware's choice-of-law rules either require or permit the application of New Jersey's statute of limitations to these claims. Accordingly, the bankruptcy court correctly dismissed Prudential's claims against Grace as untimely.

## STATEMENT OF THE ISSUES

It is unclear exactly what issues Prudential believes it is raising in this appeal: its "Statement of Issues Presented on Appeal" identifies eight distinct issues, but those do not correspond to the five argument headings in the "Argument" section of its brief. However enumerated, all of Prudential's arguments essentially flow from two fundamental questions:

1.    Whether the bankruptcy court below was bound by a New Jersey district court's prior ruling that, under New Jersey choice-of-law rules, New Jersey's statute of limitations governed Prudential's claims against Grace.

2.    Whether the bankruptcy court below correctly held, under Delaware choice-of-law rules, that Prudential's claims against Grace were untimely.

## STATEMENT OF JURISDICTION

Grace does not contest Prudential's statement of appellate jurisdiction.

## STANDARD OF REVIEW

This Court sits as an appellate court for the purpose of reviewing final orders in bankruptcy cases, 28 U.S.C. § 158(a), and

uses the same standards of review as a court of appeals would use, *see In re Udell*, 454 F.3d 180, 183 (3d Cir. 2006). The standard of review to be applied turns on the nature of the issues presented on appeal. *See In re Continental Airlines,* 177 B.R. 475, 478 (D. Del. 1993); *see also* Fed. R. Bankr. P. 8013. The bankruptcy court's factual findings are accorded great deference, and are not disturbed unless clearly erroneous. *Id.* Legal conclusions, however, are reviewed *de novo. Udell,* 454 F.3d at 183.

## STATEMENT OF THE CASE AND THE FACTS

This appeal represents Prudential's latest attempt to recover damages from Grace based on the installation of fireproof insulation containing asbestos in two buildings owned by Prudential in Atlanta, Georgia (Century Center I and Century Center IV). The installation was carried out between 1970 and 1972, and Prudential purchased both buildings in 1973.

### A.    The New Jersey Litigation

In October 1987 (fourteen years after purchasing the two Atlanta buildings), Prudential filed suit against Grace and several other defendants in the U.S. District Court for the District of New Jersey. The complaint alleged property damage resulting from

asbestos in those buildings as well as several other buildings around the country. The suit included claims under the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, as well as a number of state-law claims, including property damage, products liability, negligence, and breach of warranty. After extensive discovery, Grace and the other defendants filed a motion for summary judgment, claiming that both the RICO and the state-law claims were time-barred. With respect to the buildings located in Georgia, defendants argued that New Jersey choice-of-law principles required the application of Georgia's four-year statute of limitations to the state-law claims. Prudential countered that New Jersey choice-of-law principles required the application of New Jersey's six-year statute of limitations to the state-law claims.

The New Jersey district court (Ackerman, J.) denied the defendants' motion for summary judgment. *See* June 9, 1994 Opinion and Order Denying Defs.' Mot. for Summary Judgment,

5

R21.[1] In particular, the court held that it was bound to "apply the conflicts of law rules of the forum state [New Jersey]," *id.* at 10 (citing *Klaxon*, 313 U.S. 487), and that the New Jersey Supreme Court "would be persuaded ... to apply" the New Jersey statute of limitations to Prudential's state-law claims, *id.* at 16. In so holding, the court applied the "general common-law rule" that "irrespective of the substantive law that governed the claim, the forum state's statute of limitations applied." *Id.* at 10-11. The court found no reason to depart from that general rule because New Jersey had a "substantial interest" in the litigation by virtue of the fact that Prudential had its primary place of business in the State. *Id.* at 15-16 (noting "New Jersey's strong policy in favor of compensating its domiciliaries").

After deciding (under New Jersey choice-of-law rules) to apply the New Jersey statute of limitations to Prudential's state-law claims, the New Jersey court then addressed whether

---

[1] This brief follows the citation conventions adopted in Prudential's brief. Thus, citations beginning in "R" refer to the docket entries listed in Prudential's Designation of Items to be Included in the Record on Appeal. *See* Prudential Br. 3 n.2.

Prudential's claims were timely under New Jersey law. *Id.* at 20-21. As the question arose in the context of defendants' motion for summary judgment, Prudential needed only to show a factual dispute as to the question of whether it knew, or should have known, of the need to protect its rights more than six years prior to the filing of the lawsuit. The court held that disputes did exist on a number of material factual questions and thus denied the motion. *Id.* at 21-29.

In addition, the New Jersey court denied the defendants' motion for summary judgment on the federal RICO claims. *Id.* at 5-9. Once again, the court held that material fact disputes prevented the summary adjudication of those claims. *See id.* at 9.

Because the New Jersey court's denial of the defendants' motion for summary judgment was not a "final" appealable judgment within the meaning of 28 U.S.C. § 1291, Grace and the other defendants moved to certify the ruling for immediate interlocutory appeal under Fed. R. Civ. P. 54(b). The district court denied the motion. R22. Defendants then petitioned for a writ of

mandamus from the U.S. Court of Appeals for the Third Circuit, but the appellate court denied that extraordinary writ. R23.

In April 2001, while the New Jersey action remained pending, Grace filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware. At that point, pursuant to 11 U.S.C. § 362(a), the New Jersey action was automatically stayed with respect to Grace. The stay, however, did not apply to the other defendants.

After the New Jersey action was stayed as to Grace, the New Jersey court issued a new ruling on the statute of limitations question. *See* R22, *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 146 F. Supp. 2d 643 (D.N.J. 2001). In that ruling, the New Jersey court explained that it "should not have reserved the issue of what Prudential should have known for trial." *Id.* at 664. Rather, the question was "whether Prudential could provide evidence sufficient to *refute* the claim that it should have known of its injuries." *Id.* (emphasis in original). Because Prudential failed to identify any genuine issue of material fact on this score, the

8

court held that Prudential's RICO claims were untimely as a matter of law and granted the defendants summary judgment on those claims. *See id.* at 673-74. And, having dismissed Prudential's only federal claim, the court declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed the entire action. *Id.* at 674-75. Prudential appealed that ruling to the Third Circuit, and the appellate court affirmed. *Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 359 F.3d 226 (3d Cir. 2004).

Given that the New Jersey action has been stayed with respect to Grace since before the 2001 decision, Prudential's claims against Grace remain pending in the New Jersey district court.

## B.    The Delaware Litigation

Notwithstanding the pendency of its claims in New Jersey, Prudential filed claims against Grace in the federal bankruptcy court in Delaware raising the same allegations as the claims in New Jersey. Specifically, Prudential filed eight proofs of claim for property damage, including claims for damage at the Century

9

Center I and Century Center IV buildings in Atlanta. *See* R17, Exh. A. In its Fifteenth Omnibus Objection, Grace objected to the Century Center claims on statute of limitations grounds. R1.

After conducting two hearings on the matter, R14, R18, the bankruptcy court entered an order disallowing and expunging Prudential's Century Center claims as time-barred, R19. In reaching that decision, the court explained that it was not bound by the New Jersey federal court's 1994 decision denying Grace's motion for summary judgment because that ruling was reached under New Jersey choice-of-law rules that did not apply to a federal court sitting in Delaware, and in any event was neither final nor subject to appeal. R18 at 32-33. The bankruptcy court instead applied Delaware's "borrowing statute," which requires application of the limitations period of the State in which the claim arose, unless Delaware's limitation period is shorter. 10 Del. C. § 8121 . Applying that statute, the bankruptcy court ruled that the New Jersey limitations period did not apply, and that Prudential's claims would be untimely under *either* the Georgia or the Delaware statute of limitations. R18 at 46-47. Accordingly,

the bankruptcy court sustained Grace's objections to Prudential's claims, and both disallowed and expunged those claims.  R19.

Prudential now appeals the bankruptcy court's ruling.

### SUMMARY OF ARGUMENT

The bankruptcy court's ruling dismissing Prudential's claims against Grace as untimely should be affirmed for two basic reasons.

*First*, the court below was neither required nor permitted to accord preclusive effect to the New Jersey court's choice-of-law analysis in its 1994 ruling denying defendants' motion for summary judgment.  As a threshold matter, the choice-of-law issue presented in New Jersey was governed by New Jersey law, whereas the choice-of-law issue presented below was governed by Delaware law.  Given the substantial difference between New Jersey's choice-of-law rules and Delaware's choice-of-law rules, the bankruptcy court correctly recognized that the choice-of-law issue litigated in New Jersey was not "the same" as the choice-of-law issue presented in this case.  In any event, as the bankruptcy court recognized, the 1994 New Jersey decision was not final and

11

appealable, so it would have been unfair and inappropriate to hold that decision binding on Grace. Accordingly, the doctrine of collateral estoppel provides no basis for holding that Prudential's claims against Grace are governed by New Jersey's statute of limitations.

*Second*, the court below correctly determined that, under Delaware's borrowing statute, Prudential's claims against Grace are governed by the *shorter* of the statute of limitations of Delaware or the State in which the cause of action arose. Applying Delaware's "most significant interests" test, the bankruptcy court correctly held that Georgia had the most significant interest in the application of its substantive law to property damage claims arising out of the installation of fireproofing containing asbestos in buildings in Georgia. Because Georgia applies a four-year statute of limitations triggered by the substantial completion of the work, which took place in the early 1970s, there is no question (and Prudential does not dispute) that the claims are untimely under Georgia law. And in no event would the application of Delaware's borrowing statute result in

12

the application of New Jersey's six-year statute of limitations, which is *longer* than Delaware's three-year statute of limitations.

## ARGUMENT

### I.    The Bankruptcy Court Correctly Held That The 1994 New Jersey Choice-Of-Law Decision Was Not Entitled To Preclusive Effect.

Prudential argues, first and foremost, that the 1994 New Jersey decision, applying New Jersey choice-of-law rules to hold that New Jersey's statute of limitations governed Prudential's claims against Grace, should govern here under the doctrine of issue preclusion. *See* Prudential Br. 14-33. As the party seeking to assert preclusion, Prudential has the burden of showing that the doctrine applies in this case. *See, e.g., Suppan v. Dadonna,* 203 F.3d 228, 233 (3d Cir. 2000). Prudential cannot remotely carry that burden.

The doctrine of issue preclusion (also known as collateral estoppel), prohibits a party from relitigating an issue if that issue has been decided in another litigation. *See, e.g., Grogan v. Garner,* 498 U.S. 279, 284-85 n.11 (1991) (holding that issue preclusion applies in the bankruptcy context); *In re Brown,* 951 F.2d 564, 568 (3d Cir. 1991) (same). For issue preclusion to apply, however, "the

13

following elements must be present: (1) the issue sought to be precluded must be *the same* as the one involved in the prior action; (2) the issue must have been *actually litigated*; (3) the issue must have been determined by a *valid and final judgment*; and (4) the determination must have been *essential* to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997) (emphasis added); *see also Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995); Prudential Br. 15-16. As explained below, Prudential has not shown (and cannot show) that *any* (much less *all*) of these factors are present here.

## A. The Issue Before The Bankruptcy Court Was Not "The Same" Issue Presented In New Jersey.

The threshold requirement for issue preclusion is that the issue sought to be precluded must be "the same" issue previously presented to another court. *Docteroff*, 133 F.3d at 214. Prudential has not shown, and cannot show, that this requirement is met here for the simple reason that the bankruptcy court examined a *different* issue than did the New Jersey court. Prudential attempts to hide this difference by characterizing the disputed "issue" as "which state's statute of limitations should apply to

Prudential's Century Center Claims." Prudential Br. 16; *see also id.* at 15 ("The doctrine of issue preclusion should have barred W.R. Grace from relitigating *the statute of limitations choice of law issue* in the Bankruptcy Court.") (emphasis added). But that characterization conflates two distinct issues: (1) the choice-of-law issue in the New Jersey action, and (2) the choice-of-law issue in this Delaware action. Whereas the New Jersey court decided the choice-of-law issue under a *New Jersey* choice-of-law analysis, this case presents the choice-of-law issue under a *Delaware* choice-of-law analysis. Given the significant differences in the governing legal standards, the two issues are not "the same" and preclusion does not apply.

This point is really Civil Procedure 101: under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court adjudicating state-law claims follows the choice-of-law rules of the forum State, *see Klaxon*, 313 U.S. at 496. That rule governs in bankruptcy court just as in federal district court. *See, e.g., In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3d Cir. 2005) (per curiam); *In re Gaston & Snow*, 243 F.3d 599, 605-07 (2d Cir.

2001); *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000); *In re Merritt Dredging Co.,* 839 F.2d 203, 205-06 (4th Cir. 1988). And that rule makes sense: as the Supreme Court has explained, state law should govern non-federal claims litigated in federal court unless a significant conflict exists between state law and a compelling federal interest. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *see also Gaston & Snow*, 243 F.3d at 606 (citing *Atherton v. FDIC*, 519 U.S. 213, 218 (1997)); *cf. Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161-62 (1946) (declining to apply state law to decide a key bankruptcy issue). As the Third Circuit has recognized, "there is no 'significant conflict between some federal policy or interest and the use of state law'" in the context of choice-of-law issues in bankruptcy cases, and thus the forum law dictates the choice-of-law analysis. *PHP Healthcare*, 128 F. App'x at 843 (citation omitted)).[2]

---

[2] There is a minority view in the federal courts outside the Third Circuit that a federal bankruptcy court must resolve choice-of-law issues by reference to federal common law, not the law of

(Continued...)

Prudential thus errs by asserting that the Delaware court was bound to apply New Jersey choice-of-law rules in adjudicating claims filed in Delaware. *See* Prudential Br. 26-27. According to Prudential, "[u]nder the *Erie* line of cases, including *Klaxon*, regardless of which federal court ultimately decides the issue in a case, that court must analyze the issues consistent with the law of the state in which the federal case was first filed." *Id.* at 27 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 638-39 (1964)). That assertion is misleading at best. *Van Dusen* is a case about *transfer*, and stands only for the proposition that when an action is transferred from one federal court to another under 28 U.S.C. § 1404, the choice of law rules of the original forum state travel

---

the forum State. *See, e.g., In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995); *In re Segre's Iron Works, Inc.*, 258 B.R. 547, 551 (Bankr. D. Conn. 2001); *In re SMEC, Inc.*, 161 B.R. 86, 89-91 (M.D. Tenn. 1993). Those courts, as the Third Circuit recognized in *PHP Healthcare*, erroneously posit a "significant conflict between some federal policy or interest and the use of state law" in this context. 128 F. App'x at 843 (internal quotation omitted). Not surprisingly, thus, Prudential does not advocate the use of federal common law to decide the choice-of-law issue in this case; rather, Prudential simply advocates the use of New Jersey state law rather than Georgia or Delaware state law.

17

with the case. *See* 376 U.S. at 635-39; *see also Davis v. Norris*, 34 F. App'x 658, 665 (10th Cir. 2002) (same).    Here, as the bankruptcy court explained, the claims filed by Prudential in New Jersey were not transferred to Delaware.    *See* R18 at 33 ("You haven't transferred the claims here—transferred the causes of action here."); *see also id.* at 40 (Prudential's counsel admitting that "there's a pending claim in Federal Court that has been stayed under the automatic provision, ... [a]nd that remains the fact.").    Rather, Prudential simply filed new claims in Delaware, and its original claims against Grace remain pending in New Jersey.

The other cases cited by Prudential are even more remote. *Gaston & Snow* and *Merritt Dredging* stand only for the unremarkable proposition (noted above) that federal courts sitting in bankruptcy must apply the choice-of-law rules of the forum State. *See Gaston & Snow*, 243 F.3d at 607; *Merritt Dredging*, 839 F.2d at 206. *Segre's Iron Works* and *SMEC* take the minority view on that issue, holding (contrary to the Third Circuit's ruling in *PHP Healthcare*) that federal common law governs the choice-of-

law inquiry in bankruptcy court. *See Segre's Iron Works*, 258 B.R. at 550-51; *SMEC*, 161 B.R. at 955-56. The *G-I Holdings* court accorded preclusive effect on a matter of *federal* law to a previous *federal* court choice-of-law determination. *In re G-I Holdings, Inc.*, No. 02-CV-3082 (WGB), 2003 WL 22273256, at *1-7 (D.N.J. Aug. 8, 2003). And the bankruptcy court in *In re Prof'l Investors Insurance Group, Inc.* "appl[ied] [the] choice of law doctrine of the forum of the prepetition litigation," Prudential Br. 27, only because that forum (Texas) was the *same* as the bankruptcy forum. 232 B.R. 870, 883 (Bankr. N.D. Tex. 1999)). Prudential, in other words, has not cited a single case to support its assertion that a bankruptcy court adjudicating claims that previously were brought elsewhere (but not transferred) is bound by the choice-of-law rules of the other forum.

Given that the New Jersey court applied New Jersey choice-of-law rules, and the bankruptcy court below applied Delaware choice-of-rules, Prudential's collateral estoppel argument fails on its own terms: the choice-of-law issue decided below is not "the same" as the choice-of-law issue decided in New Jersey. Issue

preclusion simply does not apply when the second court applies a different legal standard from the first. *See, e.g., Suppan*, 203 F.3d at 233-34; *Dici v. Pennsylvania*, 91 F.3d 542, 549-50 (3d Cir. 1996); *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995). It is not enough for the factual underpinning of the issue to be the same: if the governing law differs substantially, the issue is not "the same" for the purposes of issue preclusion. *See Suppan*, 203 F.3d at 233-24; *Dici*, 91 F.3d at 549-50; *Raytech*, 54 F.3d at 191; *see also Guild Trust v. Union Pacific Land Res. Corp.*, 682 F.2d 208, 211 (10th Cir. 1982) (holding that an issue is not "the same" for issue-preclusion purposes if it must be decided under different law); *Feniello v. University of Pa. Hosp.*, 558 F. Supp. 1365, 1367 (D.N.J. 1983) (same); *Evanston Ins. Co. v. Affiliated FM Ins. Co.*, 556 F. Supp. 135, 137 (D. Conn. 1983) (same).

Here, there is no question that Delaware choice-of-law rules differ substantially from New Jersey choice-of-law rules. As the 1994 New Jersey decision emphasizes, New Jersey's choice-of-law rules presume that New Jersey law will supply the statute of limitations, especially when one of the parties is a New Jersey

domiciliary.  *See* R21 at 11-13 (citing, *inter alia*, *O'Keeffe v. Snyder*, 416 A.2d 862 (N.J. 1980)).  Needless to say, Delaware's choice-of-law rules do not start from the same presumption that New Jersey law will supply the statute of limitations.  Rather, Delaware applies the statute of limitations of the State in which the cause of action arose, unless doing so would be detrimental to one of its residents.  10 Del. C. § 8121.  The two laws could not be more substantially different.  Under the law of this circuit, this substantial difference means that the issues are not "the same" for purposes of preclusion.  *Cf. Raytech*, 54 F.3d at 191-92 (applying issue preclusion because the law to be applied by both courts was substantively the same).

Prudential's reliance on *In re Docteroff* is thus misplaced.  That case stands only for the unremarkable proposition that *facts* established by a previous judgment may be given preclusive effect, even when applied to an issue (such as dischargeability) that arises only in bankruptcy.  133 F.3d at 214-15.  The *Docteroff* court rejected the argument that issue preclusion did not apply because the dischargeability issue *per se* had not been decided by

21

the prior court. *Id.* at 215 ("Taking [his] argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise *bankruptcy issue* would never have been litigated in a court action prior to the filing of the petition in bankruptcy.") (emphasis added). That ruling has no bearing here for the simple reason that the choice-of-law determination is not a fact. Indeed, by definition the 1994 New Jersey decision (which denied the defendants' motion for summary judgment) did not find any facts.

At bottom, Prudential simply fails to recognize the limited nature of the 1994 New Jersey decision. It is incomplete, at best, for Prudential to declare that "[t]he issue before the New Jersey District Court that was decided in June 1994 was which state's statute of limitations should apply to Prudential's claims." Prudential Br. 16. Rather, the issue before the New Jersey District Court that was decided in June 1994 was which State's statute of limitations should apply to Prudential's claims *under New Jersey's choice-of-law rules.* Once that sentence is completed,

Prudential's issue-preclusion argument collapses of its own weight.

### B. The Issue Before The Bankruptcy Court Was Neither "Actually Litigated" In New Jersey Nor "Essential" To The New Jersey Court's 1994 Decision.

For the same reason that Prudential has not shown (and cannot show) that the choice-of-law issue presented here is "the same" as the choice-of-law issue litigated in New Jersey, Prudential has not shown (and cannot show) that the choice-of-law issue presented in this case was "actually litigated" in New Jersey, or "essential" to the New Jersey court's decision. *Docteroff*, 133 F.3d at 214. The parties in New Jersey obviously did not litigate the choice-of-law issue under *Delaware* law; rather they litigated the choice-of-law issue under *New Jersey* law. R22 at 10; *see also Klaxon*, 313 U.S. at 496. Indeed, as a federal court sitting in diversity, the New Jersey court did not have authority to issue a decision based on Delaware choice-of-law rules. *See id.* An issue cannot have been "actually litigated" by a court that had no authority to address it, and therefore cannot have been "essential" to that court's judgment. *See, e.g., Grella v. Salem Five Cent Sav.*

23

*Bank,* 42 F.3d 26, 30-31 (1st Cir. 1994); *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 193-95 (6th Cir. 1986). Thus, Prudential has not met its burden of showing that the issue was "actually litigated" in New Jersey, and "essential" to the New Jersey court's 1994 decision.[3]

### C.   The New Jersey Court's 1994 Decision Was Not Final And Appealable.

In addition, Prudential has not shown (and cannot show) that the 1994 New Jersey decision was sufficiently "valid and final" to bind the bankruptcy court below. *Docteroff,* 133 F.3d at 214. Prudential insists that finality is not invariably *necessary* for the application of collateral estoppel. *See* Prudential Br. 17-22. That may be true, but it does not follow that finality is *irrelevant* to the application of collateral estoppel. To the contrary, a

---

[3] The fact that the bankruptcy court below addressed a different issue that had not been actually litigated or decided in New Jersey also answers Prudential's argument that the bankruptcy court "improperly acted as an appellate court" and permitted a "collateral attack" on the 1994 ruling. Prudential Br. 23-25; *see also id.* at 5 ("[T]he Bankruptcy Court essentially acted as an appeals court for the New Jersey District Court."). The bankruptcy court obviously did no such thing. It simply decided a new issue that had never been decided by any other court.

24

decision's finality is a key factor in the application of collateral estoppel. *See, e.g., Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 358 (3d Cir. 1999); *Docteroff,* 133 F.3d at 215-16; *see also J.R. Clearwater Inc. v. Ashland Chem. Co.,* 93 F.3d 176, 179 (5th Cir. 1996) ("Finality is an essential component of the concepts of both res judicata and collateral estoppel."). Here, the New Jersey court's 1994 decision is not sufficiently final to warrant preclusive effect for at least three reasons.

*First,* the 1994 decision was not final because it was a denial of a motion for summary judgment. Denials of summary judgment are rarely given preclusive effect, because they do not resolve substantive issues so much as decide that substantive issues cannot be summarily adjudicated before trial. *See, e.g., Schor v. Abbott Labs.,* 457 F.3d 608, 615 (7th Cir. 2006) (refusing to apply issue preclusion to a denial of summary judgment because "the ... decisions are not final," and "do not resolve any issue in plaintiffs' favor; they conclude only that more litigation is required."); *see also* 18A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4444 (2006) ("It hardly need be

added that preclusion will seldom be supported by denial of summary judgment ….”).  The 1994 New Jersey decision at issue here was merely a determination that defendants were not entitled to summary judgment; the court did not grant the plaintiffs any affirmative relief.    Thus, the 1994 New Jersey decision was necessarily tentative, and “subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.”  Fed. R. Civ. P. 54(b).  Prudential’s argument that “[n]owhere does the text of the New Jersey District Court Decision state that the Opinion was not final,” Prudential Br. 20, thus misses the point: a decision denying a motion for summary judgment is not final *as a matter of law*.  *See, e.g., Pacific Union Conf. of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1306 (1977).

**Second**, Grace had no opportunity to appeal the 1994 decision.    Although appealability of the prior ruling is not invariably required for the application of collateral estoppel, *see, e.g., Burlington Northern*, 63 F.3d at 1233, it is an important factor in the overall equation, *see, e.g., Brown*, 951 F.2d at 569

26

(holding that the second court should consider, *inter alia*, "whether th[e] decision could have been, or actually was, appealed"); *see also In re Kane*, 254 F.3d 325, 329 (1st Cir. 2001) ("[W]here an appeal on an issue is unavailable for reasons beyond the control of the losing party, preclusive effect may be denied.") (citing *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321-22 (4th Cir. 1993)). Grace's inability to appeal the 1994 decision stemmed from the interlocutory, and thus non-final, nature of the ruling. Following the decision, Grace filed a motion to certify the ruling for interlocutory appeal, which the New Jersey district court denied. R22. Grace then petitioned the Third Circuit for a writ of mandamus, which also was denied. R23. Grace, in other words, pursued every avenue within its power to seek immediate review of the New Jersey court's 1994 decision. Under the circumstances, as the bankruptcy court recognized, it would be highly unfair to hold that Grace was bound by that decision in subsequent litigation. *See, e.g., Standefer v. United States*, 447 U.S. 10, 23 (1980) ("Under contemporary principles of collateral estoppel," the unappealable nature of a decision "strongly militates *against*

giving [it] preclusive effect.") (emphasis added); *Restatement (Second) of Judgments* § 28(1), at 273 (1982) ("[R]elitigation of [an] issue in a subsequent action between the parties is not precluded [when] ... [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action."); *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 708 (7th Cir. 1999) ("An *unappealable* ruling ... is not *res judicata*.") (emphasis in original).

*Third*, the 1994 New Jersey decision cannot be considered a "valid and final" ruling because the New Jersey court subsequently reversed course and dismissed all claims against the defendants (except for Grace, against whom the New Jersey action was by then stayed) as a matter of law. It defies logic for Prudential to argue to this Court that a decision from another court on a different issue was binding on the bankruptcy court (and this Court), when the court that issued the decision was not even bound by it. *See also Miller Brewing Co. v. Jos. Schiltz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979) ("To be 'final' for purposes of collateral estoppel the [prior] decision need only be

immune, as a practical matter, to reversal or amendment."). Not only was the 1994 decision not "immune" from "reversal or amendment," the New Jersey court *actually* abandoned it and dismissed all claims against the non-Grace defendants.

The Third Circuit cases cited by Prudential are entirely consistent with this analysis. In *Brown*, for example, the court applied collateral estoppel to an earlier decision because "the court gave no indication that the summary judgment was tentative or likely to be changed." *Brown*, 951 F.2d at 570; *see also Burlington Northern*, 63 F.3d at 1233 n.8 (using this quote to describe the prior judgment). Similarly, the court noted in *Docteroff* that "there is nothing which would even suggest that th[e previous] court has any intention of revisiting the issue of liability [or] that its findings are unreliable ...." 133 F.3d at 216; *see also GI Holdings*, 2003 WL 22273256, at *4 (noting that the previous court "continues to rely on its holding"). As the 1994 New Jersey decision no longer stands even in the New Jersey action, it certainly cannot bind a later court.

II.    **The Bankruptcy Court Correctly Applied Delaware's Choice-Of-Law Analysis In Dismissing Prudential's Claims As Untimely Under Either Georgia Or Delaware Law.**

Because the 1994 New Jersey decision is not binding here, the only relevant question is whether the bankruptcy court properly applied Delaware choice-of-law principles to determine that Prudential's claims against Grace involving the two buildings in Georgia were time-barred.  Prudential does not challenge the bankruptcy court's determination that its claims were untimely under either the three-year *Delaware* statute of limitations, *see* 10 Del. C. § 8106, or the four-year *Georgia* statute of limitations, Ga. Code Ann. § 9-3-30(a).  Rather, in the final pages of its brief, Prudential makes a half-hearted alternative argument that Delaware choice-of-law principles compelled the application of the six-year *New Jersey* statute of limitations.  *See* Prudential Br. 33-39; N.J. Stat. Ann. § 2A:14-1.  Once again, Prudential is wrong.

For claims arising outside the State, Delaware uses a "borrowing statute" to determine the appropriate statute of limitations:

30

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is *shorter,* the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121 (emphasis added). A court applying Delaware choice-of-law rules to an out-of-state claim must therefore apply a two-step analysis. *First*, the court must determine which State's substantive law governs the claim under the "most significant relationships" test. *See, e.g., Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991); *see generally Restatement (Second) of Conflict of Laws* §§ 6(2), 145(1) (1971). *Second*, the court must apply the *shorter* of that State's statute of limitations or Delaware's statute of limitations.

Here, after an exhaustive inquiry involving seven briefs and two hearings, the bankruptcy court determined that Georgia had "the most significant relationship" to the claims at issue here:

> You have to look under the Delaware provisions to where the last act that gave rise to the injury was, and under 3rd Circuit tort law, too. And that, in this instance, was in Georgia. If Prudential didn't own this building and some entity from California owned this

31

building, the last act that would have happened to cause the injury was still in Georgia.

And, therefore, Prudential's fortuitous decisions to be in New Jersey for 100 years ... cannot be the decision by which, or the factor by which, a Court would determine where the loss and the harm has occurred.

You may have an economic injury at some point in time, but that's a secondary problem to where the damage occurred. We are looking for this analysis as to where the injury occurred, not where the damage is felt.

And the injury occurred in Georgia. Georgia's law. And Georgia—Georgia's substantive law is clearly the law that is most impacted by a parcel of real estate within its jurisdictional boundaries. Real property law, aside from tort law, would clearly point you to Georgia.

Tort law points you to Georgia. Delaware's choice of laws point you to Georgia.

There is no way that Prudential, under these circumstances, can rely on New Jersey law.

R18 at 46-47. That conclusion was entirely correct. This case, after all, involves claims for *property damage* resulting from the installation of asbestos in two buildings. *See* R17, Exh. A. Those two buildings are located in Georgia. Thus, the wrongdoing and the damage occurred in Georgia, and the bankruptcy court correctly concluded that Delaware would apply the Georgia statute of limitations to these claims.

32

Prudential cannot, and does not, argue that its claims are timely under Georgia's four-year statute of limitations, which is triggered by the "substantial completion" of the work (which here took place in the early 1970s). *Corporation of Mercer Univ. v. National Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988). Rather, Prudential argues that its claims against Grace arising from the installation of fireproofing containing asbestos in the two buildings in Georgia is governed by New Jersey law. *See* Prudential Br. 36-39. That is so, according to Prudential, because it is headquartered in New Jersey, all decisions it makes occur in New Jersey and the "economic injury" will be felt in New Jersey. *See id.*

The bankruptcy court correctly rejected that argument. As the court explained, "[t]his harm occurred in that building in Georgia. Because but for that building, you wouldn't be standing here. This has nothing to do with the investment decision as an investment decision. It has to do with the fact that ... you bought damaged goods." R14 at 38; *see also* R18 at 46. Indeed, Prudential did not even buy the buildings until *after* the

33

fireproofing containing asbestos was installed. The fortuity that Prudential is headquartered in New Jersey in no way changes the law governing Grace's alleged wrongful conduct in Georgia. If Prudential decided to move its headquarters to Alaska, that would not suddenly mean that Prudential's claims would now be governed by Alaska law: the substantive law governing any claims Prudential might file does not surround the company like a bubble. Not surprisingly, Prudential has not cited a single case to support the proposition that a cause of action arises in the State in which an "economic injury" is felt, even if the plaintiff's actual injury unquestionably occurred in another State. Indeed, the law is squarely to the contrary. *See, e.g., Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 347 (3d Cir. 2000); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996); *B. Lewis Prods., Inc. v. Bean*, No. 02-93-KAJ, 2005 WL 273298, at *3 (D. Del. Jan. 28, 2005) (looking to law of State where contract was to be performed, not law of State where contract was executed); *see also Building Erection Servs., Inc. v. JLG, Inc.*, 376 F.3d 800, 804-05 (8th Cir. 2004) ("[W]e believe a corporate injury accrues at the place where

the physical property is damaged, not at the place where the corporation feels the secondary economic effects of the injury."); *In re Asbestos School Litig.*, No. 83-0268, 1991 WL 3890, at *2 (E.D. Pa. Jan. 9, 1991) ("Any asbestos-containing materials present in Hawaii schools were installed in that state and any abatement or repair will take place there. These contacts are such that the laws of Hawaii, including its statutes of limitation and repose are properly applied by this court."). Under Delaware law, the State with the "most significant relationship" to the Century Center claims is Georgia, not New Jersey.

Moreover, even assuming *arguendo* that Prudential were correct that New Jersey, not Georgia, has the "the most significant relationship" with the claims, Prudential's claims still would fail. As noted above, Delaware's borrowing statute requires courts to apply the *shorter* statute of limitations as between Delaware and the State with the most significant relationship to the claims. As noted above, the Delaware limitations period for the Century Center claims is three years, 10 Del. C. § 8106, whereas the New Jersey limitations period is six years, N.J. Stat. Ann. § 2A:14-1.

35

As a result, a court applying the Delaware borrowing statute would apply the shorter Delaware limitations period, not the longer New Jersey limitations period. Prudential, however, does not even argue that its claims are timely under the Delaware limitations period; rather, Prudential's only argument is that its claims are timely under the New Jersey limitations period. The key point here is that, in light of Delaware's borrowing statute, Prudential simply has no way of obtaining New Jersey's limitations period in this case.[4]

---

[4] Prudential argues in passing that the bankruptcy court failed to develop "an appropriate factual record." Prudential Br. 28 (capitalization modified). That argument is disingenuous at best. It is a *litigant's* obligation, not a *court's* obligation, to develop an appropriate factual record. It was Prudential's burden, in response to Grace's motion for summary judgment, to identify genuine issues of material fact that precluded dismissal of its claims. *See* Fed. R. Bankr. P. 7056; *cf.* Fed. R. Civ. P. 56. Having failed to identify any such issues below, Prudential cannot now point an accusatory finger at the bankruptcy court. Indeed, even now, Prudential identifies no specific issues of material fact that it was precluded from litigating below; rather, it simply asserts at a high level of generality that the court failed to develop an appropriate factual record. Such generalized assertions, needless to say, provide no basis for reversal.

Not surprisingly, Prudential ultimately tries to evade the Delaware borrowing statute altogether, arguing that the statute does not apply here in light of *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del. 2005). The bankruptcy court correctly refused to extend the limited exception to the Delaware borrowing statute established in that case to essentially write the statute out of existence.

The plaintiff in *Saudi Basic* filed an action in Delaware court seeking a declaratory judgment that the plaintiff had not violated its contract. 866 A.2d at 10. The defendant asserted a number of counterclaims for damages. The plaintiff objected to the defendant's counterclaims, asserting that they were barred by Delaware's three-year statute of limitations. *Id.* at 10-11. Both parties agreed that the substantive law of Saudi Arabia applied to the dispute, and Saudi law provided no statute of limitations for the claims at issue. *Id.* at 11. Application of the Delaware borrowing statute thus would have led the court to use the Delaware limitations period, as it was shorter than the non-existent period under Saudi law. *Id.* The trial court declined to do

this, and the Delaware Supreme Court affirmed. *Id.* at 17-18. In doing so, the Supreme Court noted that the borrowing statute was intended to serve two purposes: (1) prevention of forum shopping; and (2) protection of Delaware residents. *Id.* at 15. Applying the borrowing statute in that case, the Supreme Court held, would run contrary to the these policies, because neither party was a resident of Delaware, and it was clear that the plaintiff filed suit in Delaware in order to take advantage of the state's shorter limitations period. *Id.* at 16; *see also Pack v. Beech Aircraft Corp.,* 132 A.2d 54, 58 (Del. 1957). To prevent such blatant forum-shopping, the Supreme Court carved out a narrow exception to the borrowing statute, and elected to apply Saudi law.

The ruling in *Saudi Basic* does not extend to this case. First, applying the borrowing statute in the present case in no way encourages forum-shopping. Prudential has not shown, nor can it, that Grace filed for bankruptcy in Delaware in order to benefit from the Delaware statute of limitations period. As noted above, Grace contends that the statute of limitations applicable in this case is that of Georgia, not Delaware. Moreover, this

38

argument completely overstates the importance of Prudential's claim in the greater context of the Grace bankruptcy. To put the matter in perspective, approximately *13,000* claims (including 4,000 claims for asbestos property damage) were filed against Grace by the first claims bar date. The idea that Grace chose the Delaware forum so that it could potentially avoid the statute of limitations in *two* of these claims simply does not pass the straight-face test. Rather, Grace chose to file for bankruptcy in Delaware for the most legitimate of reasons—it is incorporated in Delaware. Unlike the parties in *Saudi Basic*, who had no connection whatsoever with the State, Grace has been long been incorporated and doing business in Delaware. Delaware was obviously the most logical forum for Grace's Chapter 11 filing. For Prudential to suggest that Grace has engaged in forum-shopping is disingenuous at best.

After holding two hearings and reading seven briefs on the issue of whether Prudential's claims were time-barred, the bankruptcy court correctly concluded that the claims were untimely under either Delaware or Georgia law. The law and the

facts, as presented by the parties in the months of briefing, clearly support this conclusion, and this Court should affirm.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment.

February 14, 2007                Respectfully submitted,


                                 *James E O'Neill*

David M. Bernick, P.C.           Christopher Landau, P.C.
Janet S. Baer                    Gregory L. Skidmore
Lisa Esayian                     KIRKLAND & ELLIS LLP
Samuel Blatnick                  655 Fifteenth Street, N.W.
KIRKLAND & ELLIS LLP             Washington, DC   20005
200 East Randolph Drive          (202) 879-5000
Chicago, IL   60601
(312) 861-2000
                                 Laura Davis Jones (Bar No. 2436)
                                 James E. O'Neill (Bar No. 4042)
                                 PACHULSKI STANG ZIEHL YOUNG
                                     JONES & WEINTRAUB LLP
                                 919 North Market Street, 17th Floor
                                 Wilmington, DE   19801
                                 (302) 652-4100


           *Counsel for Appellees*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re:

W.R. GRACE & CO., *et al.*,

| | | |
|---|---|---|
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Appellant, | ) ) | Civil Action No. 06-745 |
| v. | ) ) | |
| W.R. GRACE & Co., *et al.* | ) ) | Bankruptcy Case No. 01-1139 Appeal No. 06-70 |
| Appellees. | ) | |

## CERTIFICATE OF SERVICE

I, James E. O'Neill, hereby certify that on the 14th day of February, 2007, I caused

a copy of the following document(s) to be served on the individuals on the attached service list(s)

in the manner indicated:

### APPELLEES' BRIEF

*James E. O'Neill*

James E. O'Neill (Bar No. 4042)

**W. R. Grace Prudential Insurance Co. of America**
**Service List**
Case No. 01-1139 (JKF)
Doc. No. 123001v2
01 - Hand Delivery
01 – Overnight Delivery

*Hand Delivery*
(Counsel to Prudential Insurance Company of America)
Laurie Polleck, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801

*Overnight Delivery*
(Counsel to Prudential Insurance Company of America)
Joseph L. Schwartz, Esquire
Curtis M. Plaza, Esquire
Kevin J. Larner, Esquire
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza, 1 Speedwell Avenue
Morristown, NJ  07962-1981

W. R. Grace Core Group Service List
Case No. 01-1139 (JKF)
Document Number: 27348
07 – Hand Delivery
11 – First Class Mail

(Counsel to Debtors and Debtors in
Possession)
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

(Copy Service)
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE 19801

*Hand Delivery*
(Counsel to Official Committee of
Unsecured Creditors)
Michael R. Lastowski, Esquire
Richard W. Riley, Esquire
Duane, Morris & Heckscher LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

*Hand Delivery*
(Local Counsel to DIP Lender)
Steven M. Yoder, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

*Hand Delivery*
(Local Counsel to Asbestos Claimants)
Marla Eskin, Esquire
Mark T. Hurford
Campbell & Levine
800 North King Street, Suite 300
Wilmington, DE 19801

*Hand Delivery*
(Counsel for The Chase Manhattan Bank)
Mark D. Collins, Esquire
Deborah E. Spivack, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*Hand Delivery*
(Counsel for Property Damage Claimants)
Michael B. Joseph, Esquire
Ferry & Joseph, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

*Hand Delivery*
(United States Trustee)
David Klauder, Esquire
Office of the United States Trustee
844 King Street, Room 2311
Wilmington, DE 19801

*Hand Delivery*
(Equity Committee Counsel)
Teresa K. D. Currier
Klett Rooney Lieber & Schorling
1000 West Street, Suite 1410
Wilmington, DE 19801

*First Class Mail*
(Counsel to Debtor)
David B. Bernick, P.C.
Janet Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

*First Class Mail*
(W. R. Grace & Co.)
Mark Shelniz
W.R. Grace and Co.
7500 Grace Drive
Columbia, MD 21044

*First Class Mail*
(Official Committee of Unsecured
Creditors)
Lewis Kruger, Esquire
Kenneth Pasquale, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

*First Class Mail*
(Official Committee of Personal Injury
Claimants)
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152

*First Class Mail*
(Official Committee of Property Damage
Claimants)
Scott L. Baena, Esquire
Member
Bilzin Sumberg Dunn Baena Price &
Axelrod LLP
First Union Financial Center
200 South Biscayne Blvd, Suite 2500
Miami, FL 33131

*First Class Mail*
(Equity Committee Counsel)
Philip Bentley, Esquire
Thomas M. Mayer, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

*First Class Mail*
Peter Van N. Lockwood, Esquire
Julie W. Davis, Esquire
Trevor W. Swett, III, Esquire
Nathan D. Finch, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

*First Class Mail*
(Counsel to Official Committee of
Unsecured Creditors)
William S. Katchen, Esquire
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, NJ 07102-3889

*First Class Mail*
(Counsel to DIP Lender)
J. Douglas Bacon, Esquire
Latham & Watkins
Sears Tower, Suite 5800
Chicago, IL 60606

*First Class Mail*
(Counsel to David T. Austern, Future
Claimant's Representative)
Roger Frankel
Richard H. Wyron
Matthew W. Cheney
Orrick Herrington & Sutcliffe LLP
3050 K Street, NW
Washington, DC 20007

*First Class Mail*
(Counsel to David T. Austern, Future
Claimant's Representative)
Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 North Broom Street
Wilmington, DE 19806