**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**


In re:

W.R. GRACE & CO., <u>et al.</u>

---

| | |
|---|---|
| PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>       Appellant,<br><br>v.<br><br>W.R. GRACE & CO., <u>et al.</u>,<br><br>       Appellee. | Civil Action No. 06-745 RLB<br><br><br>Bankruptcy Case No. 01-01139<br><br>Appeal No. 06-70 |


<u>**BRIEF OF APPELLANT IN REPLY TO APPELLEE'S BRIEF**</u>


Laurie S. Polleck (#4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

- and -

RIKER, DANZIG, SCHERER, HYLAND
 & PERRETTI LLP
Joseph L. Schwartz, Esq.
Curtis M. Plaza, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 538-0800

Attorneys for Appellant,
The Prudential Insurance Company of America

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

SUMMARY OF REPLY ...............................................................................................1

LEGAL ARGUMENT.....................................................................................................3

I.     THE DOCTRINE OF ISSUE PRECLUSION BARRED W.R. GRACE FROM
     RELITIGATING THE STATUTE OF LIMITATIONS CHOICE-OF-LAW
     ISSUE. ..................................................................................................................3

          A.     The Issue Litigated by W.R. Grace Before the Bankruptcy
                  Court was the Very Same Issue as the Issue Litigated by
                  W.R. Grace Before the New Jersey District Court. ..................................3

          B.     "Finality" for Purposes of Issue Preclusion. ...........................................5

          C.     Issue was Essential and Actually Litigated.............................................9

II.    THE ERIE DOCTRINE REQUIRED THAT THE BANKRUPTCY COURT
     RESPECT THE CHOICE OF LAW DETERMINATION MADE BY THE NEW
     JERSEY DISTRICT COURT...............................................................................9

III.   THE BANKRUPTCY COURT IMPROPERLY GRANTED AN APPEAL OF
     THE DISTRICT COURT DECISION.................................................................14

IV.   THE BANKRUPTCY COURT IMPROPERLY MADE FACT-BASED
     STATUTE OF LIMITATIONS DETERMINATIONS WITHOUT
     DEVELOPMENT OF AN APPROPRIATE FACTUAL RECORD. ..............................15

V.    THE BANKRUPTCY COURT ERRED IN ITS APPLICATION OF
     DELAWARE CHOICE OF LAW STANDARDS............................................................17

          A.     The Delaware Supreme Court's Holding in Saudi Basic
                  Should Be Applied. ...............................................................................17

          B.     Prudential's Cause of Action Arose in New Jersey..............................18

          C.     Even Applying Delaware's Statute of Limitations,
                  Prudential's Century Center Claims are Timely. ..................................21

CONCLUSION...............................................................................................................23

## **TABLE OF AUTHORITIES**

### **CASES**

In re Allegheny Int'l, Inc.,
     954 F.2d 167 (3d Cir. 1992)...........................................................................22

In re Asbestos School Litigation,
     1991 WL. 3890 (E.D. Pa. 1991) ...............................................................20

Autrey v. Chemtrust Inds. Corp.,
     362 F. Supp. 1085 (D. Del. 1973)............................................................19

B. Lewis Productions, Inc. v. Bean,
     2005 WL. 273298 (D. Del. 2005) ...............................................................20

Becker v. Hamada, Inc.,
     455 A.2d 353 (Del. 1982) ....................................................................21, 22

In re Brown,
     82 F.3d 801 (8th Cir. 1996) ..........................................................................22

In re Brown,
     951 F.2d 564 (3d Cir. 1991)............................................................................3

Building Erection Servs., Inc. v. JLG, Inc,
     376 F.3d 800 (8th Cir. 2004) ....................................................................20

Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.,
     63 F.3d 1227 (3d Cir. 1995)...........................................................................8

Butner v. United States,
     440 U.S. 48 (1979)......................................................................................14

Calhoun v. Yamaha Motor Corp.,
     216 F.3d 338 (3d Cir. 2000)........................................................................20

Child, Inc. v. Rodgers,
     377 A.2d 374 (Del. Super. Ct. 1977) .............................................................21

In re Combustion Eng'g, Inc.,
     391 F.3d 190 (3d Cir. 2005)....................................................................13, 14

Davis v. Norris,
     34 Fed. Appx. 658 (10th Cir. 2002)..............................................................12

In re District Court Litigation West Trial Group,
      622 A.2d 1090 (Del. Super. Ct. 1992) ............................................................21

In re Docteroff,
      133 F.3d 210 (3d Cir. 1997)...........................................................................4, 6

Erie R.R. Co. v. Tompkins,
      304 U.S. 64 (1938)...................................................................................9, 10, 11

Ferens v. John Deere Co.,
      494 U.S. 516 (1990) .........................................................................................12

Gasperini v. Ctr. for Humanities, Inc.,
      518 U.S. 415 (1996)..........................................................................................10

In re Gaston & Snow,
      243 F.3d 599 (2d Cir. 2001).......................................................................10, 11

In re G-I Holding, Inc.,
      02-CV-3082 (WGB), 2003 WL 22273256 (D.N.J. 2003) .................................8

In re Grynberg,
      986 F.2d 367 (10th Cir. 1993) cert. denied, 510 U.S. 812 (1993) ..................13

Guaranty Trust Co. v. York,
      326 U.S. 99 (1945)...........................................................................................10

In re Hanlin Group, Inc.,
      185 B.R. 703 (Bankr. D.N.J. 1995) .................................................................13

Health Cost Controls of Ill., Inc. v. Washington,
      187 F.3d 703 (7th Cir. 1999) .............................................................................6

Hill v. Equitable Trust Co.,
      562 F. Supp. 1324 (D. Del. 1983) ...................................................................19

Hodges v. Smith,
      517 A.2d 299 (Del. Super. Ct. 1986) ...............................................................21

Kaufman v. C.L. McCabe,
      603 A.2d 831 (Del. 1992) ..........................................................................20, 21

Klaxon Co. v. Stentor Electric Mfg. Co.,
      313 U.S. 487 (1941)....................................................................................10, 11

LeJeune v. Bliss-Salem, Inc.,
    85 F.3d 1069 (3d Cir. 1996)........................................................................20


In re Lindsay,
    59 F.3d 942 (9th Cir. 1995) .......................................................................10

McNasby v. Crown Cork & Seal Co.,
    888 F.2d 270 (3d Cir. 1989).........................................................................6

In re Merritt Dredging Co., Inc.,
    839 F.2d 203 (4th Cir. 1988) ................................................................10, 11

Nardo v. Guido DeAscanis & Sons, Inc.,
    254 A.2d 254 (Del Super. Ct. 1969) ......................................................20, 21

In re Ovetsky,
    100 B. R. 115 (Bankr. N.D. Ga. 1989) ........................................................14

Pacific Union Conf. of Seventh-Day Adventists v. Marshall,
    434 U.S. 1305 (1977)....................................................................................8

In re PHP Healthcare Corp.,
    128 Fed. Appx. 839 (3d Cir. 2005)........................................................10, 11

In re Professional Investors Ins. Group, Inc.,
    232 B.R. 870 (Bankr. N.D. Tex. 1999).................................................12, 14

Raleigh v. Ill. Dep't of Revenue,
    530 U.S. 15 (2000)......................................................................................14

Rudginski v. Pullella,
    378 A.2d 646 (Del. Super. Ct. 1977) ..........................................................21

In re SMEC, Inc.,
    161 B.R. 953 (M.D. Tenn. 1993)................................................................14

Sack v. Low,
    478 F.2d 360 (2d Cir. 1973).......................................................................20

Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc.,
    866 A.2d 1 (Del. 2005) .................................................................1, 17, 18, 21

Schor v. Abbott Laboratories,
    457 F.3d 608 (7th Cir. 2006) ...................................................................8, 9

In re Segre's Iron Works, Inc.,
    258 B.R. 547 (Bankr. D. Conn. 2004) .......................................................12, 14

Travelers Indem. Co. v. Lake,
    594 A.2d 38 (Del. 1991) ..................................................................................19

Ubiquitel Inc. v. Sprint Corp.,
    No. 1489-N, 2005 WL 3533697 (Del. Ch. Dec. 19, 2005)............................19

Van Dusen v. Barrack,
    376 U.S. 612 (1964)..................................................................................11, 12

Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co.,
    642 F.2d 744 (5th Cir. 1981) .........................................................................10

## STATUTES

11 U.S.C. § 502 ...............................................................................................13

28 U.S.C. § 1291 ...............................................................................................8

## MISCELLANEOUS

3rd Cir. LAR, Internal Operating Procedure 5.3 ......................................................11

Fed. R. Bankr. P. 3001(a) ......................................................................................13

Restatement (Second) of Conflict of Laws §145 ......................................................19

## SUMMARY OF REPLY

In Prudential's[1] Brief of Appellant filed on January 16, 2007 ("Prudential's Appeal Brief"), Prudential set forth various reasons why the Bankruptcy Court's decision to expunge Prudential's Century Center Claims as time-barred was legally improper and why the Order entered by the Bankruptcy Court on October 24, 2006 should be reversed. Specifically, as Prudential explained, the Order should be reversed due to, *inter alia*, the following reasons:

1.  The doctrine of issue preclusion barred W.R. Grace from relitigating the statute of limitations choice-of-law issue previously decided by the New Jersey District Court;

2.  The Bankruptcy Court erred in its choice-of-law analysis by: (i) disregarding the reasoning of the Erie doctrine, which requires federal courts to adopt the law of the federal forum where a case was initially brought, and (ii) improperly altering Prudential's pre-existing state law rights, in contravention of well-established authority that bankruptcy courts merely administer, and cannot alter, the non-bankruptcy law rights of claimants;

3.  The Bankruptcy Court improperly acted as an appellate court in reversing and allowing W.R. Grace to collaterally attack the June 9, 1994 Order of the New Jersey District Court, stating that it would not follow the reasoning of the New Jersey District Court because that court was "wrong;"

4.  The Bankruptcy Court improperly transformed W.R. Grace's legal objections to Prudential's Century Center Claims to a summary judgment hearing and improperly made fact-based determinations without developing an appropriate factual record; and

5.  The Bankruptcy Court erred in its application of Delaware choice-of-law standards and statute of limitations law in that it (i) failed to conduct a proper an analysis under Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc., 866 A.2d 1 (Del. 2005), (ii) failed to properly determine where the cause of action arose, and (iii) failed to perform a factual analysis to determine whether Prudential's claims were timely under Delaware law.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed in Prudential's Appeal Brief (defined above).

In the forty (40)-page Appellees' Brief filed by W.R. Grace on February 14, 2007 ("W.R. Grace's Appeal Brief"), W.R. Grace makes a number of legal arguments. Notwithstanding the apparent length of W.R. Grace's arguments, W.R. Grace's arguments revolve around the following primary contention -- that the issue considered by the Bankruptcy Court in determining whether Prudential's Century Center Claims were time-barred was purportedly different than the issue considered by the New Jersey District Court. In support of this contention, W.R. Grace argues that the Bankruptcy Court's decision to apply Delaware's choice-of-law analysis as compared to the New Jersey District Court's decision to apply New Jersey's choice-of-law analysis, constitute two different issues, thereby making collateral estoppel inapplicable.

W.R. Grace is wrong. The Bankruptcy Court's decision to apply Delaware's choice-of-law analysis resulted from the very same issue that W.R. Grace previously presented to the New Jersey District Court, i.e. which state's statute of limitations should be applied with respect to Prudential's Century Center Claims.

For this and other reasons stated in Prudential's Appeal Brief and stated herein, Prudential respectfully requests that this Court reverse the Bankruptcy Court's Order expunging Prudential's Century Center Claims as time-barred.

**LEGAL ARGUMENT**

I.    **THE DOCTRINE OF ISSUE PRECLUSION BARRED W.R. GRACE FROM RELITIGATING THE STATUTE OF LIMITATIONS CHOICE-OF-LAW ISSUE.**

A.    **The Issue Litigated by W.R. Grace Before the Bankruptcy Court was the Very Same Issue as the Issue Litigated by W.R. Grace Before the New Jersey District Court.**

For the reasons set forth in Prudential's Appeal Brief, the doctrine of issue preclusion should have barred W.R. Grace from relitigating an issue previously briefed, argued, and decided in the New Jersey District Court.[2]  W.R. Grace's primary argument against the application of the doctrine of issue preclusion is that the New Jersey District Court was presented with a choice-of-law issue under New Jersey law, whereas the Bankruptcy Court was presented with a choice-of-law issue under Delaware law, which purportedly were different issues. Notwithstanding W.R. Grace's arguments, the Third Circuit Court of Appeals has clearly and consistently held that issue preclusion serves to bar relitigation of an issue where the same (or substantially similar issue) has been previously decided by another court.  See, e.g., In re Brown, 951 F.2d 564, 569 (3d Cir. 1991).

During its bankruptcy case, W.R. Grace unquestionably litigated before the Bankruptcy Court the identical issue that it raised (and lost) in the New Jersey District Court -- that the statute of limitations of Georgia, rather than the statute of limitations of New Jersey, should apply to bar Prudential's claims.  Notwithstanding the fact that these issues were exactly the same, W.R. Grace attempts to confuse matters by arguing that the choice-of-law issues considered by the New Jersey District Court and the Bankruptcy Court were different.

---

[2] See Prudential's Appeal Brief at 14-23.

Despite W.R. Grace's arguments, the Third Circuit Court of Appeals has specifically held that where an issue arising in a bankruptcy case bears semblance to the issue litigated prior to the bankruptcy case, differences solely arising as a result of the new bankruptcy venue <u>do not prevent issue preclusion from being applied</u>, reasoning:

> Taking [the debtor's] argument to its logical conclusion, collateral estoppel would never apply in bankruptcy because the precise bankruptcy issue would never have been litigated in a court action prior to the filing of the petition in bankruptcy. Such a conclusion defies common sense and reason and is at odds with the Supreme Court's [previous rulings].

<u>In re Docteroff</u>, 133 F.3d 210, 215 (3d Cir. 1997).

Indeed, the New Jersey District Court could not have been more clear in its pronouncement of the issue, which was *which state's statute of limitations law should govern*:

> <u>The threshold inquiry is into what state's law should govern.</u>
> . . .
> The defendants contend that the applicable statute of limitations is the statute of the state in which each affected building is located. Thus, for example, Prudential's claim regarding a building in Wisconsin is governed by Wisconsin law. And so on. In defendants' view, these statutes mandate that all of Prudential's claims be dismissed. Prudential responds by arguing that New Jersey's fairly lengthy statute of limitations applies to all of its state law claims.
> . . .
> [T]here is essentially a presumption [under New Jersey law] that [New Jersey's] statute of limitations applies, which is based on New Jersey's substantial interest in compensating its domiciliaries. . . . At any rate, this is not a case where the plaintiff's only connection to New Jersey is the fact that it is domiciled in New Jersey. . . . [T]he defendants have some contacts with New Jersey [and] many of the corporate financial decisions for which Prudential seeks compensation took place in New Jersey.
> . . .
> Thus, I conclude that because plaintiff Prudential is a New Jersey domiciliary whose primary place of business is in New Jersey, the New Jersey Supreme Court would be persuaded by its interest in

compensating its domiciliary to apply its own statute of limitations in this case.[3]

In the New Jersey District Court Litigation, W.R. Grace specifically argued that Georgia's statute of limitations law should have been applied to bar Prudential's Century Center Claims. As a result of the June 19, 1994 Order, W.R. Grace lost that argument. After having lost that argument, W.R. Grace again presented and argued before the Bankruptcy Court, as it had previously presented and argued before the New Jersey District Court, that Georgia's statute of limitations law should have been applied to bar Prudential's Century Center Claims. Without question, W.R. Grace presented the Bankruptcy Court with exactly the same issue that W.R. Grace had presented to the New Jersey District Court.

If W.R. Grace's current argument that issue preclusion is inapplicable was accepted, many parties to a pre-petition litigation that receive an adverse ruling could potentially file for bankruptcy in a different state and relitigate the adverse ruling under the guise that the issues were different. No greater encouragement of improper forum shopping could be envisioned by this result, which would render the doctrine of issue preclusion in bankruptcy cases a virtual nullity.

B.    "Finality" for Purposes of Issue Preclusion.

As was set forth at length in Prudential's Appeal Brief, the Third Circuit Court of Appeals has ruled on a number of occasions that "finality," for purposes of issue preclusion, is a "pliant" concept and does not need to reach the maturity of being appealable.[4] W.R. Grace nevertheless contends, *inter alia*, that issue preclusion did not apply because "Grace had no

---

[3] R-21 at 10-16 (emphasis added).
[4] <u>See</u> Prudential's Appeal Brief at 18.

5

opportunity to appeal the 1994 decision."[5]    In complete disregard of binding Third Circuit jurisprudence, the Bankruptcy Court improperly accepted W.R. Grace's argument on this issue:

> THE BANKRUPTCY COURT:        Well, somebody has the right to appeal . . . or else the ruling can't have collateral estoppel consequences because there's no right to appeal.[6]

Prudential submits that this was clear error by the Bankruptcy Court.

Perhaps recognizing that its inability to appeal the June 9, 1994 Order did not render issue preclusion inapplicable, W.R. Grace also argues that the June 9, 1994 Order was not "final" for purposes of issue preclusion simply because it would purportedly be "highly unfair."[7] Even if this were true, Third Circuit precedent should have compelled the Bankruptcy Court to have concluded that the June 9, 1994 Order was "final" for purposes of issue preclusion. Further, the Third Circuit has stated that a debtor like W.R. Grace is prohibited from arguing that a pre-petition order lacks "finality" where the debtor's bankruptcy filing prevented conclusion of the prior litigation.  In re Docteroff, 133 F.3d at 216.   Consequently, fair or unfair, the Bankruptcy Court should have determined that the June 9, 1994 Order was "final" for purposes of issue preclusion.

W.R. Grace also argues that the June 9, 1994 Order was not "final" for purposes of issue preclusion because "[a]n unappealable ruling is not res judicata."[8]  However, despite this argument, res judicata is an entirely different legal concept than issue preclusion/collateral estoppel.  See, e.g., McNasby v. Crown Cork & Seal Co., 888 F.2d 270, 276 n.7 (3d Cir. 1989). As a result, this argument by W.R. Grace also has no merit.

---

[5] See W.R. Grace's Appeal Brief at 26.

[6] R-14 at 32.

[7] See W.R. Grace's Appeal Brief at 27.

[8] See W.R. Grace's Brief at 28 (citing Health Cost Controls of Ill., Inc. v. Washington, 187 F.3d 703, 708 (7th Cir. 1999)).

W.R. Grace further argues that the June 9, 1994 Order not "final" for purposes of issue preclusion because the New Jersey District Court dismissed all claims against defendants other than W.R. Grace after W.R. Grace had filed for bankruptcy.[9]  This argument is misleading. As a result of the New Jersey District Court's determination that Prudential's RICO claim was time-barred as against defendants other than W.R. Grace, the New Jersey District Court dismissed the New Jersey District Court Litigation as against these nondebtor defendants, but not as against W.R. Grace, because there was no longer any basis for federal jurisdiction.[10]  The decision of the New Jersey District Court, however, would have allowed Prudential to continue to pursue the State Law Claims as against these nondebtor defendants in state court.[11]  Prudential submits that a state court would thereafter have been bound by the New Jersey District Court's ruling on which state's statute of limitations should apply, like the Bankruptcy Court should have been bound here.

Further, even if W.R. Grace had not filed for bankruptcy, and the New Jersey District Court, or a state court, had later ruled in favor of W.R. Grace and against Prudential, that court would have done so based upon the facts, not based upon choice-of-law principles, which had already been determined by the New Jersey District Court and which determination was binding.

Finally, W.R. Grace argues that the June 9, 1994 Order was not "final" for purposes of issue preclusion because determinations made in orders denying summary judgment are not "final" for issue preclusion purposes as a matter of law.[12]  This argument plainly ignores

---

[9] See W.R. Grace Appeal Brief at 28.
[10] See R-24 at 51-52.
[11] See id. at 52.
[12] See W.R. Grace's Appeal Brief at 25-26.

the vast majority of the caselaw that has considered the issue, including decisions from the Third

Circuit Court of Appeals.  See, e.g., Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.,

63 F.3d 1227, 1233 n.8 (3d Cir. 1995) (determining that an interlocutory order denying summary

judgment precludes relitigation in a subsequent litigation as to issues decided in the order); see

also In re G-I Holding, Inc., 02-CV-3082 (WGB), 2003 WL 22273256 (D.N.J. 2003) (holding

that the prior statute of limitations determinations contained in an order denying summary

judgment precludes re-litigation of the issue in bankruptcy).

        Not surprisingly, the caselaw that W.R. Grace relies upon to support its contention

that determinations made in summary judgment orders are not "final" do not even support W.R.

Grace's arguments.  For example, in support of its bold statement that "a decision denying a

motion for summary judgment is not final as a matter of law,"[13] W.R. Grace cites Pacific Union

Conf. of Seventh-Day Adventists v. Marshall, 434 U.S. 1305, 1306 (1977).  However, contrary

to W. R. Grace's representations, the Pacific Union decision merely stands for the proposition

that a denial of summary judgment is not final for purposes of appealability pursuant to 28

U.S.C. § 1291, not issue preclusion.  See, generally, Pacific Union, 434 U.S. 1305.  As a result,

the Pacific Union decision does not support W.R. Grace's position.

        Further, Schor v. Abbott Laboratories, 457 F.3d 608 (7th Cir. 2006), another case

upon which W.R. Grace relies, merely provides that when an order denying summary judgment

does not resolve any issues of law, it is not final for collateral estoppel purposes.  See Schor, 457

F.3d at 614-15.  Importantly, the Schor decision also states that if an order denying summary

judgment did conclusively resolve a legal issue, issue preclusion might bar relitigation of that

---

[13] See W.R. Grace Appeal Brief at 26 (emphasis in added).

issue.  Id. at 615.  As a result, this decision relied upon by W.R. Grace also does not support W.R. Grace's position.

For all these reasons, W.R. Grace's arguments on the issue of "finality" lack merit and, because the Bankruptcy Court accepted them, the Bankruptcy Court erred as a matter of law.

### C.    Issue Was Essential and Actually Litigated.

W.R. Grace also argues that the choice-of-law issue presented to the Bankruptcy Court was neither "actually litigated" in the New Jersey District Court Litigation nor "essential" to the New Jersey District Court's determination.  In support of its arguments, W.R. Grace merely reiterates the same arguments that it makes in support of its contention that the issue presented was different.  For the same reasons discussed earlier, Prudential submits that the statute of limitations choice-of-law issue presented to the Bankruptcy Court was both "actually litigated" in the New Jersey District Court Litigation and "essential" to the New Jersey District Court's determination.

### II.    THE ERIE DOCTRINE REQUIRED THAT THE BANKRUPTCY COURT RESPECT THE CHOICE OF LAW DETERMINATION MADE BY THE NEW JERSEY DISTRICT COURT.

Although Prudential and W.R. Grace disagree on many issues, both Prudential and W.R. Grace agree that the Erie line of cases applies to the issues in this case.  Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  In fact, in W.R. Grace's Appeal Brief, W.R. Grace states that "[t]his point is really Civil Procedure 101…"[14]  W.R. Grace's Brief, however, incorrectly applies the Erie doctrine.

---

[14] See W.R. Grace's Appeal Brief at 15.

A central proposition of the <u>Erie</u> line of cases is that forum shopping is an ill to be prevented. <u>See, e.g.</u>, <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 428 (1996) (discussing "the twin aims of the <u>Erie</u> rule: discouragement of forum shopping and avoidance of inequitable administration of the laws"). <u>Erie</u> and its progeny sought to minimize the possibility that a party could achieve varying results depending upon the court in which the litigation was pursued. <u>See, e.g.</u>, <u>id.</u> In particular, the <u>Erie</u> line of cases sought to minimize a party's forum shopping between a state court and a nearby federal court. <u>See</u> <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 109 (1945). In order to prevent such forum shopping, <u>Erie</u> announced that a federal court should apply the law of the state in which it sits. <u>See generally</u> <u>Erie</u>, 304 U.S. 64. The <u>Erie</u> line of cases further stated that statute of limitations determinations should be performed under the substantive law of the state in which the litigation was first brought. <u>See generally</u> <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941).[15]

Courts have disagreed about whether the <u>Klaxon</u> decision applies in bankruptcy cases. Some courts have held that when a litigation is first brought in a bankruptcy case, the bankruptcy court may use <u>Klaxon</u> to determine the applicable choice-of-law standards. <u>See, e.g.</u>, <u>In re Gaston & Snow</u>, 243 F.3d 599, 605-07 (2d Cir. 2001); <u>In re Merritt Dredging Co., Inc.</u>, 839 F.2d 203, 205-06 (4th Cir. 1988). Other courts, however, have held that <u>Klaxon</u> is completely inapplicable in bankruptcy cases. <u>See, e.g.</u>, <u>In re Lindsay</u>, 59 F.3d 942, 948 (9th Cir. 1995); <u>Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co.</u>, 642 F.2d 744, 747-49 (5th Cir. 1981).[16]

---

[15] <u>See also</u> Prudential's Appeal Brief at 26-27.

[16] W.R. Grace insists that Third Circuit precedent has included a determination that <u>Klaxon</u> applies in bankruptcy cases, citing to <u>In re PHP Healthcare Corp.</u>, 128 Fed. Appx. 839 (3d Cir. 2005). <u>See</u> W.R. Grace's Appeal Brief at 15-16. However, the Third Circuit has clearly indicated that the <u>PHP Healthcare</u>
**(footnote continued...)**

Regardless of whether <u>Klaxon</u> applies in bankruptcy cases, because Prudential first asserted its claims against W.R. Grace in the New Jersey District Court, which case remains pending, and where the New Jersey District Court already made a thorough <u>Klaxon</u>-based determination, the Bankruptcy Court should not have performed its own <u>Klaxon</u> analysis to overrule the New Jersey District Court's prior <u>Klaxon</u> determination.

In any event, certain of the cases following <u>Erie</u> have expressed concern that if a defendant moved to transfer a case from one federal district court to a federal district court in a different state, the defendant could potentially seek to avail itself of defenses not otherwise available in the original federal district court.  <u>See, e.g.</u>, <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964).  In such a case, a new problem of forum shopping would arise -- a defendant could move litigation to a new forum to avail itself of more favorable rules.  <u>Id.</u>  In order to limit such possibility, the Supreme Court ruled in <u>Van Dusen</u> that when a federal case is transferred from one federal district court to a federal district court in a different state, the law of the original jurisdiction, including the applicable statute of limitations, travels with the case.  <u>Id.</u> at 638-39.  Thus, <u>Van Dusen</u> clarified <u>Klaxon</u> to ensure that a federal district court will apply the statute of limitations choice-of-law doctrine of the state in which the original litigation arose.  <u>Id.</u>; <u>see also</u> <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 523-28 (1990); <u>Gaston & Snow</u>, 243 F.3d at 607; <u>Merritt Dredging Co.</u>, 839 F.2d at 206.

---

decision is not available for precedential use.  <u>See</u> <u>In re PHP Healthcare Corp.</u>, 128 Fed. Appx. 839, annexed to this brief as "Attachment A," (including the clear label "NOT PRECEDENTIAL" at the top of the first page of the opinion).  <u>See</u> 3rd Cir. LAR, Internal Operating Procedure 5.3.  Further, even if <u>PHP Healthcare</u> were precedential, that decision does not even stand for the proposition for which W.R. Grace relies.  Contrary to W.R. Grace's arguments, <u>PHP Healthcare</u> does <u>not</u> stand for the proposition that a bankruptcy court should disregard a valid <u>Klaxon</u>-based determination of a federal district court in a prior litigation.

Van Dusen is clearly on point and should have been applied by the Bankruptcy Court. W.R. Grace attempts to distinguish Van Dusen and argue its inapplicability by asserting that it addressed the *transfer* of a case from one federal district court to another federal district court. While Van Dusen did deal with the transfer of a case, the reasoning of Van Dusen certainly applies to this case. Indeed, here, the Bankruptcy Court had less justification to apply Delaware choice-of-law principles than the transferee court in Van Dusen. This is because the New Jersey District Court Litigation was never even transferred to the Bankruptcy Court, but remains pending before the New Jersey District Court, albeit automatically stayed by W.R. Grace's bankruptcy filing.

Prudential cited to other caselaw in Prudential's Appeal Brief that follow and support the Van Dusen ruling. See, e.g., G-I Holdings, Inc., 02-CV-3082 (WGB), 2003 W.L. 22273256 (D.N.J. 2003). In re Professional Investors Ins. Group, Inc., 232 B.R. 870 (Bankr. N.D. Tex. 1999); Davis v. Norris, 34 Fed. Appx. 658 (10th Cir. 2002); In re Segre's Iron Works, Inc., 258 B.R. 547 (Bankr. D. Conn. 2004). Like its attempt to distinguish Van Dusen, W.R. Grace's attempts to distinguish these other cases are unavailing.

After attempting to distinguish this supporting caselaw cited by Prudential, W.R. Grace summarily concludes that Prudential "has not cited a single case to support its assertion that a bankruptcy court adjudicating claims that previously were brought elsewhere . . . is bound by the choice-of-law rules of the other forum.[17] However, despite W.R. Grace's rhetoric, in reality, it is W.R. Grace, not Prudential, that has failed to cite any supporting legal authority for its position.

---

[17] See W.R. Grace's Appeal Brief at 19.

In an attempt to further confuse this issue, W.R. Grace baldly states that Prudential's proofs of claim filed in W.R. Grace's bankruptcy assert "new claims," which W.R. Grace intimates are different from the "original claims" that are pending before the New Jersey District Court.[18] This is untrue for a number of reasons.  First, during W.R. Grace's bankruptcy case, on April 22, 2002, upon motion by the Debtors, the Bankruptcy Court entered the Property Damage Bar Date Order, which required all asbestos property damage claimants to file proofs of claim in the Debtors' bankruptcy cases by March 31, 2003, or those claims would be barred.  See In re Grynberg, 986 F.2d 367, 970 (10th Cir. 1993) cert. denied, 510 U.S. 812 (1993) (failure to file proof of claim before bar ate generally precludes a creditor from receiving a distribution from debtor's estate).  Prudential timely complied with the Property Damage Bar Date Order and filed proofs of claim against W.R. Grace in order to prevent its claims form being barred.

These proofs of claim filed by Prudential were not "new claims," as W.R. Grace suggests, but instead were simply required written statements apprising W.R. Grace of the existence of the claims that Prudential asserted in the New Jersey District Court as of the Petition Date.  See Fed. R. Bankr. P. 3001(a); In re Hanlin Group, Inc., 185 B.R. 703, 707 (Bankr. D.N.J. 1995) (stating that the purpose of a proof of claim is to apprise the debtor of existing claims against the estate); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2005) (stating that the effect of § 502 of the Bankruptcy Code as to the allowance of claims or interests "is to provide a bankruptcy trustee with the same rights and defenses to claims as held by the debtor prior to bankruptcy.").

Moreover, black letter bankruptcy law confirms that the institution of a bankruptcy case cannot change a claimant's underlying state law rights as such rights existed at

---

[18] See W.R. Grace's Appeal Brief at 18.

the time of the bankruptcy filing.  See Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000). ("[T]here is no reason why [the state law] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (quoting Butner v. United States, 440 U.S. 48, 55 (1979)); Combustion Eng'g, 391 F.3d at 245 (same).  Indeed, where a claimant has filed litigation against a debtor prior to the debtor's bankruptcy filing, the prepetition litigation will define the non-bankruptcy law rights of the claimant.  See, e.g., Professional Investors Ins. Group, 232 B.R. at 883-85; Segre's, 258 B.R. at 551-52.  As a result, W.R. Grace could not, as a matter of law, alter Prudential's non-bankruptcy law rights simply because W.R. Grace chose to file its bankruptcy case in a different jurisdiction.  See In re SMEC, Inc., 161 B.R. 953, 956 (M.D. Tenn. 1993) ("A claim which was valid prior to bankruptcy should not be disallowed solely because the state law of the state in which the debtor has chosen to reside and filed bankruptcy . . . would not allow recovery.") (quoting In re Ovetsky, 100 B. R. 115, 118 (Bankr. N.D. Ga. 1989)); Segre's, 258 B.R. at 552 ("It is fundamentally unfair, and subversive of uniformity, for a debtor to be permitted to defeat a creditor's claim – which was timely prosecuted in, and under the law of, the state with the greatest interest in the dispute – through the simple maneuver of filing a bankruptcy case in a different state where a less generous statute of limitation arguably controls.").

For these reasons, the Bankruptcy Court should have deferred to the New Jersey District Court and applied New Jersey statute of limitations law with respect to Prudential's Century Center Claims.

## III.    THE BANKRUPTCY COURT IMPROPERLY GRANTED AN APPEAL OF THE DISTRICT COURT DECISION.

W.R. Grace argues in a footnote that the Bankruptcy Court did not improperly act as an appeals court and allow W.R. Grace to collaterally attack the June 9, 1994 Order, stating

that the Bankruptcy Court "simply decided a new issue that had never been decided by any other court."[19]  However, for the reasons previously discussed, the Bankruptcy Court did not decide a new issue, and its cursory dismissal of the New Jersey District Court's ruling as "wrong" was certainly improper.[20]

In reviewing this same issue, the Bankruptcy Court should have come to the same conclusion as the New Jersey District Court for the same reasons as those articulated by the New Jersey District Court, and should not have overruled the New Jersey District Court and declared its decision simply to be "wrong."[21]

## IV.    THE BANKRUPTCY COURT IMPROPERLY MADE FACT-BASED STATUTE OF LIMITATIONS DETERMINATIONS WITHOUT DEVELOPMENT OF AN APPROPRIATE FACTUAL RECORD.

W.R. Grace argues, albeit again in a footnote, that Prudential had the burden to identify genuine issues of material fact to preclude dismissal of the Century Center Claims because W.R. Grace had supposedly filed a "summary judgment motion" objecting to those claims.[22]  This argument by W.R. Grace is disturbing due to W.R. Grace's blatant lack of candor to this Court.  In response to this argument, Prudential respectfully submits that the Court should be aware of the following:

1.    Nowhere in any of W.R. Grace's pleadings before the Bankruptcy Court did W.R. Grace refer to the proceedings as a "summary judgment motion";[23]

2.    To the contrary, W.R. Grace's pleadings asserted that the objections to the Century Center Claims, among other claims, involved legal issues "which require little or no evidentiary record development for adjudication;"[24]

---

[19] See W.R. Grace's Appeal Brief at 24 n.3.

[20] R-14 at 40.

[21] Id.

[22] See W.R. Grace's Appeal Brief at 36 n.4.

[23] See R-1, R-12, R-15 and R-17.

3.    Moreover, W.R. Grace's counsel represented to the Bankruptcy Court at the first oral argument that the issues to be entertained were legal only – "I don't believe there's any factual issues";[25]

4.    In addition, summary judgment motions as to asbestos property damage claims determinations are not even due to be heard by the Bankruptcy Court until April 19, 2007, pursuant to the Bankruptcy Court's Amended Order Setting Various Deadlines Regarding Objections to Asbestos Property Damage Claims;[26] and

5.    Subsequent to the entry of the Order, on November 17, 2006, W. R. Grace did, in fact, file a motion for summary judgment against Prudential's other asbestos property damage claims, styled: Motion for an Order Pursuant to F.R.B.P. 7056 Disallowing and Expunging Six (6) Time-Barred Asbestos Property Damage Claims Filed by Prudential Insurance Company of America,[27] which motion is scheduled to be heard by the Bankruptcy Court on April 19, 2007.[28]

In summary of the foregoing, not only did W.R. Grace not call its objection to the Century Center Claims a "summary judgment motion," it did not treat it as one -- until possibly the day of oral argument on its objection to the Century Center Claims, when W.R. Grace improperly raised factual issues for the first time.  This was addressed at length in Prudential's Appeal Brief, at 28-31.

The Bankruptcy Court erred as a matter of law by considering the "facts" asserted by W.R. Grace without permitting Prudential to submit facts and establish a factual record.  For this additional reason, the Order should be reversed.

---

[24] R-12 at 1.

[25] See R-14 at 44.

[26] See Docket No. 13406 in W.R. Grace's bankruptcy case.

[27] See Docket No. 13700 in W.R. Grace's bankruptcy case.

[28] See Docket No. 13406 in W.R. Grace's bankruptcy case.

## V.    THE BANKRUPTCY COURT ERRED IN ITS APPLICATION OF DELAWARE CHOICE OF LAW STANDARDS.

### A.    The Delaware Supreme Court's Holding in <u>Saudi Basic</u> Should Be Applied.

For the reasons set forth in Prudential's Appeal Brief, the Delaware Supreme Court's holding in <u>Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.</u>, 866 A.2d 1 (Del. 2005), prevents W.R. Grace's offensive use of the Delaware Borrowing Statute.[29]

W.R. Grace contends that <u>Saudi Basic</u> is inapplicable because W.R. Grace chose Delaware for a "legitimate" reason, and just happened to be fortunate so as to obtain a windfall from the Delaware Borrowing Statute.[30]   W.R. Grace further contends that W.R. Grace incorrectly asserts that Prudential must show that W.R. Grace actually had an intent to forum shop in order for the <u>Saudi Basic</u> decision to apply.[31]   However, the <u>Saudi Basic</u> holding is not limited only to those parties who utilize Delaware courts solely for the purpose of using the Delaware Borrowing Statute.  Instead, <u>Saudi Basic</u> is intended to prevent all parties, regardless of the legitimacy of their reasons for choosing Delaware as a forum, from filing actions in Delaware and then utilizing the Delaware Borrowing Statute to invoke a shorter statute of limitations than would otherwise be available.  <u>Saudi Basic</u>, 866 A.2d at 17-18.  It could not be clearer from <u>Saudi Basic</u> that the Delaware Supreme Court intended to keep parties, such as W.R. Grace, from "subvert[ing] the [borrowing] statute's purpose, by enabling [them] to prevail on a limitations defense that would never have been available to [them] in the jurisdiction where the cause of action arose."  <u>Id.</u>

---

[29] <u>See</u> Prudential's Appeal Brief at 34-36.

[30] <u>See</u> W.R. Grace's Appeal Brief at 39.

[31] <u>See</u> <u>id.</u> at 38.

In any event, Prudential submits that W.R. Grace has unquestionably conducted forum shopping with respect to its decisions to relitigate issues as to certain claims.  For example, W.R. Grace has sought to apply the results of certain of its pre-bankruptcy litigations to bind certain claimants where W.R. Grace achieved favorable results prior to its bankruptcy filing.[32]  In contrast, where W.R. Grace received unfavorable results prior to the bankruptcy filing, such as with Prudential's claims in the New Jersey District Court Litigation, W.R. Grace has chosen to relitigate those issues in the Bankruptcy Court forum.  Thus, despite its contention, W.R. Grace is actively shopping between forums as to which forum will provide a more favorable result to W.R. Grace.

For these reasons, and for the reasons set forth in Prudential's Appeal Brief, because (i) pursuant to Saudi Basic, the New Jersey statute of limitations applies with respect to Prudential's Century Center Claims, and (ii) the Bankruptcy Court neglected to even consider Saudi Basic, the Bankruptcy Court erred as a matter of law.

### B.     Prudential's Cause of Action Arose in New Jersey.

W.R. Grace further argues that Georgia has the "most significant relationship" with Prudential's Century Center Claims.[33]  Once again, W.R. Grace is wrong.  Given the fact that the Bankruptcy Court accepted W.R. Grace's arguments, the Bankruptcy Court erred.

First, as noted above, the Delaware Borrowing Statute is inapplicable here.  Also, for the reasons noted, the Bankruptcy Court should have deferred to the New Jersey District Court, which had already made the determination of which state law applies.  Even if, however, the Bankruptcy Court had the authority to conduct its own independent analysis of which state

---

[32] See R-1 at 18-20.
[33] See W.R. Grace's Appeal Brief at 31-36.

statute of limitations applied to Prudential's Century Center Claims, the Bankruptcy Court should have concluded that New Jersey's statute of limitations applied.  As was set forth in Prudential's Appeal Brief, the Delaware Supreme Court has adopted the "most significant relationship" test as set forth in the <u>Restatement (Second) of Conflict of Laws</u> §145 (the "<u>Restatement</u>") to determine choice of law.[34]  W.R. Grace argues, as it had argued before the New Jersey District Court, that Prudential's long-standing relationship with New Jersey and the fact that Prudential's injury occurred in New Jersey are irrelevant.[35]  Instead, W.R. Grace concludes, like it had done in the New Jersey District Court Litigation, that simply because the Century Center buildings are located in Georgia, the Bankruptcy Court should apply Georgia law.  However, the New Jersey District Court considered, and rejected, these very same arguments by W.R. Grace.[36]  Further, not only has W.R. Grace re-argued what it had previously argued in the New Jersey District Court Litigation, but W.R. Grace's arguments are contrary to controlling Delaware law.

Under Delaware law, in the case of a negligence tort, the place where the injury occurred, not the place where the wrong occurred, is the place where the wrong caused the economic injury or loss.  <u>Autrey v. Chemtrust Inds. Corp.</u>, 362 F. Supp. 1085, 1090 (D. Del. 1973) ("Since the business losses suffered by all the plaintiffs substantially occurred in Florida, Florida is the place of the alleged tortious wrongs."); <u>Hill v. Equitable Trust Co.</u>, 562 F. Supp. 1324, 1334 (D. Del. 1983) (in a negligence action "the cause of action arises where the economic impact is felt, normally where the plaintiff resides"); <u>Ubiquitel Inc. v. Sprint Corp.</u>, No. 1489-N, 2005 WL 3533697, at *5 (Del. Ch. Dec. 19, 2005) (plaintiff's "principal place of business is in

---

[34] <u>See</u> Prudential's Appeal Brief at 36-37 (citing <u>Travelers Indem. Co. v. Lake</u>, 594 A.2d 38 (Del. 1991).

[35] <u>See</u> W.R. Grace's Appeal Brief at 33-35.

[36] <u>See</u> New Jersey District Court Decision at 9-16.

Pennsylvania and it will, in a financial and economic sense, be injured in Pennsylvania"); see also Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973) (holding that cause of action arises where economic impact is felt, normally where the plaintiff resides). The basis for this rule is the recognition that the injury is the last element necessary for a cause of action to accrue. See Kaufman v. C.L. McCabe, 603 A.2d 831, 834 (Del. 1992); Nardo v. Guido DeAscanis & Sons, Inc., 254 A.2d 254 (Del Super. Ct. 1969).

W.R. Grace essentially argues that the location of Prudential's economic injury was irrelevant to the Bankruptcy Court's choice of law analysis.[37] Not surprisingly, W.R. Grace fails to cite any applicable Delaware legal authority to support its assertions. Instead, W.R. Grace cites to, *inter alia*, a case that applied the federal choice of law rules in the admiralty context. Calhoun v. Yamaha Motor Corp., 216 F.3d 338, 345 (3d Cir. 2000). W.R. Grace also cites to cases that did not apply Delaware law at all, but instead applied Pennsylvania or Missouri choice-of-law rules. See LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996) (applying Pennsylvania rules); In re Asbestos School Litigation, 1991 WL 3890, at *1 (E.D. Pa. 1991) (same); Building Erection Servs., Inc. v. JLG, Inc, 376 F.3d 800, 802-03 (8th Cir. 2004) (applying Missouri law). Finally, W.R. Grace cites to B. Lewis Productions, Inc. v. Bean, 2005 WL 273298 (D. Del. 2005), which at least involved Delaware law, but which decision involved an action on a breach of contract -- not a negligence action. Id. at *3. The economic injury rule, which is at issue herein and which applies to negligence torts, did not apply in the B. Lewis Productions case. Id.

For these reasons, even under Delaware law, Prudential's injury occurred where it suffered its business and economic losses, in New Jersey.

---

[37] See W.R. Grace's Appeal Brief at 33-35.

Against this backdrop, when considering the Delaware Borrowing Statute and the Saudi Basic doctrine, it becomes perfectly clear that the Bankruptcy Court's refusal to consider New Jersey as the jurisdiction where Prudential's cause of action arose for statute of limitations purposes was legally improper.

**C.    Even Applying Delaware's Statute of Limitations, Prudential's Century Center Claims are Timely.**

Notwithstanding the fact that the New Jersey statute of limitations should apply to the Century Center Claims, W.R. Grace further asserts that Prudential "does not even argue that its claims are timely under the Delaware limitations period."[38]  This is untrue.  Throughout this litigation, Prudential has argued that even if the Delaware statute of limitations applies to the Century Center Claims, Prudential's claims were timely.[39]

Under Delaware law, a tort cause of action does not accrue prior to the time that plaintiff is injured.  See, e.g., Kaufman v. C.L. McCabe, 603 A.2d 831, 834 (Del. 1992);  Nardo v. Guido DeAscanis & Sons, 254 A.2d 254 (Del Super. Ct. 1969).  For purposes of injury, Delaware recognizes a "discovery rule" for determining the accrual of a cause of action. Kaufman, 603 A.2d at 835.[40]  Under Delaware's discovery rule, the statute of limitations begins to run only when the plaintiff knows facts "constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry

---

[38] W.R. Grace's Appeal Brief at 36.

[39] See, e.g., R-16 at 32-33.

[40] Although initially held applicable in medical malpractice cases, Delaware courts have applied the discovery rule in a wide range of cases, including asbestos personal injury claims, In re District Court Litigation West Trial Group, 622 A.2d 1090, 1093 (Del. Super. Ct. 1992) (cause of action for asbestos related injuries accrues when plaintiff is chargeable with knowledge of injury) and construction-related defects, Becker v. Hamada, Inc., 455 A.2d 353, 356 (Del. 1982); Rudginski v. Pullella, 378 A.2d 646, 649 (Del. Super. Ct. 1977) (negligent installation of a septic tank); see also Hodges v. Smith, 517 A.2d 299, 301 (Del. Super. Ct. 1986);  Child, Inc. v. Rodgers, 377 A. 2d 374, 377 (Del. Super. Ct. 1977).

which, if pursued, would lead to the discovery" of such facts.  <u>Becker v. Hamada, Inc.</u>, 455 A.2d 353, 356 (Del. 1982).

As Prudential set forth in its Century Center proofs of claim, Prudential first became aware of the presence of asbestos-containing fireproofing at the Century Center buildings in April 1986.[41]  This fact was never disputed by W.R. Grace in its objections to the Bankruptcy Court, and therefore, must be accepted as *prima facie* valid.[42]  <u>See</u> <u>In re Brown</u>, 82 F.3d 801 (8th Cir. 1996); <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992).  As a result, for purposes of W.R. Grace's objections to the Century Center Claims, the Bankruptcy Court should have determined that it was undisputed that Prudential did not discover the property damage at the Century Center buildings until April 1986, at which time Delaware's three-year statute of limitations was triggered.  The Bankruptcy Court should have also determined that it was undisputed that Prudential filed the New Jersey District Court Litigation on October 20, 1987.  Therefore, Prudential brought its Century Center Claims well within Delaware's three-year statute of limitations.

It is very telling that in expunging the Century Center Claims, the Bankruptcy Court readily admitted that it was not familiar with applicable law: "I have not paid much attention to the discovery rule that may lengthen Delaware's statute."[43]  For this additional reason, the Bankruptcy Court erred as a matter of law.

---

[41] <u>See</u> R-3 and R-4 (Prudential's responses to Question Nos. 18, 19, 20 and 21).

[42] Nor has Grace presented any law either to the Bankruptcy Court or this Court -- presumably because none exists -- to demonstrate that the discovery rule is not applicable herein.

[43] R-18 at 52.

## CONCLUSION

For all of the foregoing reasons, Prudential respectfully requests that the Court (i) reverse the Bankruptcy Court's Order expunging Prudential's Century Center Claims, (ii) direct the Bankruptcy Court to apply the statute of limitations law of New Jersey to Prudential's claims, (iii) remand the matter to the Bankruptcy Court for development of an appropriate factual record with detailed factual findings as to its determinations of the statute of limitations issues, (iv) determine that W.R. Grace is barred from relitigating the statute of limitations choice of law issues in the Bankruptcy Court with respect to Prudential's claims, and (v) grant Prudential such other and further relief the Court deems just and appropriate.

Wilmington, Delaware
Date: March 5, 2007

Respectfully submitted,

 /s/ Laurie S. Polleck
Laurie S. Polleck (#4300)
JASPAN SCHLESINGER HOFFMAN LLP
913 Market Street, 12th Floor
Wilmington, DE 19801
(302) 351-8000

- and -

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Joseph L. Schwartz, Esq.
Curtis M. Plaza, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 538-0800

ATTORNEYS FOR APPELLANT,
THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA

3738229.3

# ATTACHMENT "A"

128 Fed.Appx. 839                                                                                              Page 1
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

Briefs and Other Related Documents

In re PHP Healthcare Corp.C.A.3 (Del.),2005.This case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,Third Circuit.
In re:  PHP HEALTHCARE CORPORATION,
Debtor,
PHP Liquidating, LLC, Appellant,
v.
*Charles H. Robbins;  RJB Partners Profutures Fund Management, Inc.;  Strome Hedge Cap Ltd;  Strome Partners LP;  Strome Offshore Ltd;  Strome Suskind Hedge Cap LP;  Lakeshore International Ltd;  Kenneth L. Staub;  Lisa I. Grove-Samuelson Trust B;  Rachael K. Collins Trust B;  J.F. Grove III Trust A;  Earle E. Gales, Jr.;  Deere Park Capital Management, LLC;  Elara Ltd;  Canadian Imperial Holdings;  Sil Nominees Ltd;  Bear Stearns Securities Corp.;  Watt Family Property;  Fortune Fund Ltd;  Robert Charles Ketner;  Kirk Whillock;  Judy Willock;  Oh Sharma;  Bhagyawati Sharma;  Caldwell & Orkin Market Opportunity Fund # 1;  Jill Brooks Milberg;  Dennis Decret;  Tom Teters;  Mary K. Carpenter;  Robert F. Carpenter;  John P. Cole;  Linda D. Cole;  Ward T. Bell & Associates, Inc. Profit Sharing Plan;  William L. Todd;  Allen Mendler;  Paul Cole;  Paul Mandragona;  Carmella G. Mandragona;  Terry W. Hunt;  Randall A. Konsker;  Carol R. Bounds;  Mary Jerkins;  Berwin C. Jerkins;  R2 Investments;  Q Funding LP;  Harry Metherian, Jr.;  Jolana Metherian;  Metherian Family Living Trust;  Maria Calvert;  Ohio State Systems Small 384;  Big Capital Partners LP;  Executive Nurse Home Care, Inc.;  Walker Smith Capital LP;  Jeanne Marcari;  John Does 1-500;  ABC Corps 1-500;  Robert Konsker;  Profutures Special Equities Fund LP, *(Amended pursuant to Court's 07/28/04 Order).
**No. 03-3972.**

Argued Jan. 20, 2005.
Decided March 3, 2005.

**Background:**  As assignee of claims of Chapter 11 debtor-in-possession and unsecured creditors, liquidator of debtor's assets sued debtor's shareholders and former shareholders, seeking to recover consideration paid in series of stock redemption transactions authorized by debtor's board of directors. The United States District Court for the District of Delaware, Joseph J. Farnan, Jr., J., 291 B.R. 592 and 291 B.R. 603, granted former shareholders' motions to dismiss. Liquidator appealed.

**Holdings:**  The Court of Appeals held that:

(1) Delaware law governed liquidator's claims;

(2) liquidator lacked standing, as assignee of creditors' claims, to assert claim under state statute governing stock redemptions;

(3) absence of allegation that shareholders knew that debtor's capital was impaired when they redeemed stock precluded claims by liquidator, as debtor's assignee, under state statute governing stock redemptions; and

(4) liquidator failed to state fraudulent transfer claims.

Affirmed.
West Headnotes
**[1]** **Contracts 95        129(1)**

95 Contracts
    95I Requisites and Validity
        95I(F) Legality of Object and of Consideration
            95k129       Obstructing       or       Perverting Administration of Justice
                95k129(1) k. Agreements Relating to Actions and Other Proceedings in General. Most Cited Cases

**Corporations 101 🔑640**

101 Corporations
    101XVI Foreign Corporations
        101k640 k. Subjection to Same Requirements as Imposed by Home State. Most Cited Cases
Transactions involving redemption of Chapter 11 debtor's stock qualified as internal affairs of debtor for purposes of internal affairs doctrine, which required that laws of state of incorporation govern

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

Page 2

matters peculiar to relationships among or between corporation and its officers, directors, and shareholders, given allegations that debtor, a Delaware corporation, violated Delaware law because it had no surplus when it redeemed stock or because redemptions impaired debtor's capital, and therefore Delaware law governed claims in which debtor's assignee sought to recover consideration paid in redemption transactions, despite choice-of-law provision in stock purchase agreement indicating that Virginia law applied.   Restatement (Second) of Conflict of Laws § 302 comment.

**[2] Bankruptcy 51    2154.1**

51 Bankruptcy
    51II Courts;  Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf of Trustee or Debtor
                51k2154.1 k. In General. Most Cited Cases
To the extent that Delaware statute governing redemption of corporate stock created private right of action on creditor's behalf, it created general right of action seeking to redress injury common to all creditors, and therefore liquidator of Chapter 11 debtor-corporation's assets did not have standing, as assignee of creditors' claims, to assert claim under statute challenging debtor's stock redemption transactions; individual creditor could not assert general claim belonging to all creditors, and liquidator's standing as assignee extended only as far as creditor-assignor's standing.  8 Del.C. § 160(a)(1).

**[3] Bankruptcy 51    2154.1**

51 Bankruptcy
    51II Courts;  Proceedings in General
        51II(B) Actions and Proceedings in General
            51k2154 Rights of Action by or on Behalf of Trustee or Debtor
                51k2154.1 k. In General. Most Cited Cases
Even if Delaware statute gave debtors-in-possession (DIPs) or their assignees implied right to sue stockholders who received payments for unlawful stock redemptions, it did so only as to those stockholders who received payments with knowledge of facts indicating that redemptions were unlawful, and therefore absence of allegation that shareholders of Chapter 11 debtor-corporation knew that debtor's capital was impaired when shareholders redeemed their stock precluded claims under statute in which

debtor's assignee sought to recover from shareholders consideration paid in disputed redemption transactions.  8 Del.C. § 174(c).

**[4] Bankruptcy 51    2724**

51 Bankruptcy
    51V The Estate
        51V(H) Avoidance Rights
            51V(H)2 Proceedings
                51k2724 k. Pleading. Most Cited Cases
Liquidator of Chapter 11 debtor's assets failed to state claims for fraudulent transfer against debtor's founder and members of founder's family under Bankruptcy Code and Delaware law, given absence of allegation that debtor redeemed stock of founder and family members with actual intent to defraud creditors, or that debtor received less than reasonably equivalent value for redeemed stock.  Bankr.Code, 11 U.S.C.A. § 548(a)(1)(A, B); 6 Del.C. § 1301 et seq.

**[5] Bankruptcy 51    2650(2)**

51 Bankruptcy
    51V The Estate
        51V(F) Fraudulent Transfers
            51k2650 Consideration
                51k2650(2) k. "Reasonably Equivalent Value" in General. Most Cited Cases

**Corporations 101 🔗548(9)**

101 Corporations
    101XII Insolvency and Receivers
        101k548 Creditors' Suits
            101k548(9) k. Evidence. Most Cited Cases
Market price information for Chapter 11 debtor-corporation's stock at time of challenged stock redemption established that debtor received reasonably equivalent value for its stock, given that contemporaneous market price for debtor's stock exceeded consideration paid to debtor's shareholders, and therefore transactions did not support fraudulent transfer claims under Bankruptcy Code or Delaware law.  Bankr.Code, 11 U.S.C.A. § 548(a)(1)(B); 6 Del.C. § 1301 et seq.

**\*841** On Appeal from the United States District Court for the District of Delaware.  Dist. Court Civil Action No. 01-236.  District Judge: The Honorable Joseph J. Farnan, Jr.

Gerald H. Gline (Argued), Cole, Schotz, Meisel,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

Page 3

Forman & Leonard, P.A., Hackensack, New Jersey, Neal J. Levitsky, Fox Rothschild, Wilmington, Delaware, for Appellants.

Thomas J. Allingham II (Argued), Darryl A. Parson, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Michael Wooley (Argued), Potter Anderson & Corroon LLP, Wilmington, Delaware, Thomas G. Macauley (Argued), Zuckerman Spaeder LLP, Wilmington, Delaware, Laurie S. Silverstein, William A. Hazeltine, Potter, Anderson & Corroon, Wilmington, Delaware, Michael Woolley, *842 Mark D. Kotwick, Seward & Kissel, New York, New York, Andrew R. Lee, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Louisiana, William M. Kelleher, Ballard, Spahr, Andrews & Ingersoll, Wilmington, Delaware, Thomas C. Marconi, Wilmington, Delaware, for Appellees.

Before ALITO, MCKEE, and SMITH, Circuit Judges.

OPINION

PER CURIAM.

**\*1** The various Defendants in this action all moved to dismiss the Amended Complaint dated April 4, 2002 ("the Amended Complaint") for failure to state a claim upon which relief can be granted. The District Court granted those Motions in several Orders and dismissed the Amended Complaint with prejudice. For the reasons set forth below, we affirm those Orders.

I.

**\*1** PHP Healthcare Corporation ("PHP" or "the Debtor"), a Delaware corporation, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 19, 1998. Plaintiff-Appellant PHP Liquidating LLC ("the Liquidating Company") was established on October 12, 1999, pursuant to the Second Amended Plan of Liquidation ("the Plan"), to liquidate the assets of PHP for the benefit of the Liquidating Company's members, the creditors of PHP. With exceptions not relevant here, the Liquidating Company is the assignee of all rights, titles, interests and causes of action that PHP possesses as the debtor-in-possession. As such, the Liquidating Company has the express power to investigate, pursue, compromise or dismiss any and all such causes of action. Pursuant to the Plan, creditors were also given the option to assign and transfer to the Liquidating Company their claims and causes of action. Many of PHP's creditors assigned

their claims to the Liquidating Company.

**\*1** The Liquidating Company filed suit in federal district court in Delaware against certain stockholders and former stockholders of PHP, seeking to recover the consideration paid in a series of stock redemption transactions authorized by PHP's Board of Directors. Soon after the Liquidating Company filed its Amended Complaint, the Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court granted their various motions in three separate Orders and explained those Orders in two separate Opinions. The District Court did not say in so many words that it dismissed the Amended Complaint "with prejudice," but the import of the Opinions and Orders seem clear. Moreover, in the absence of a clear statement to the contrary, a dismissal pursuant to Rule 12(b)(6) should be presumed to be made with prejudice. *See United States ex rel. Karvelas v. Melrose Wakefield Hospital,* 360 F.2d 220, 241 (1st Cir.2004) (stating First Circuit rule that "in the absence of a clear statement to the contrary, a dismissal pursuant to Fed R. Civ. P. 12(b)(6)* is presumed to be with prejudice.") This appeal followed.

II.

**\*1** [1] Defendant Robbins argues that Virginia law, not Delaware law, governs claims arising from his stock redemption transactions because the Stock Purchase Agreement between Robbins and PHP contains a Virginia choice of law provision. The Liquidating Company argues that Delaware law controls because the Stock Purchase Agreement is trumped by the "internal affairs" doctrine, which requires that the laws of the state of incorporation govern "matters peculiar to the relationships *843 among or between the corporation and its current officers, directors, and shareholders." *See Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

**\*2** When two states have a connection to a case and an issue arises on which the states' respective laws differ, a choice of law must be made. Because there is no "significant conflict between some federal policy or interest and the use of state law," we will not recognize a federal rule of decision. *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87-88, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (internal quotation marks and citation omitted); *see also Resolution Trust Corp. v. Forest Grove, Inc.,* 33 F.3d 284 (3d Cir.1994) (discussing *O'Melveny* ). Instead, we will

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))                                                    Page 4
**(Cite as: 128 Fed.Appx. 839)**

adopt the choice of law rule of Delaware-the state in which the Bankruptcy Court resides. *See In re Merritt Dredging Co.,* 839 F.2d 203, 206 (4th Cir.) (applying choice of law rules of state in which federal bankruptcy court resided), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988). Delaware recognizes the internal affairs doctrine. *McDermott Inc. v. Lewis,* 531 A.2d 206, 215 (Del.1987). Thus the question presented is whether the current dispute is an "internal affair."

**\*\*2** The Restatement (Second) of Conflict of Laws explains the doctrine by offering examples of internal affairs "which involve primarily a corporation's relationship to its shareholders":
**\*\*2** [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Matters which may also affect the interests of the corporation's creditors include the issuance of bonds, the declaration and payment of dividends, loans by the corporation to directors, officers and shareholders, and the purchase and *redemption by the corporation of outstanding shares of its own stock.*

**\*\*2** Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) (emphasis added). *See also Cohn v. Mishkoff-Costello Co.,* 256 N.Y. 102, 175 N.E. 529 (1931) (court refused to hear case against Indiana corporation where plaintiffs claimed corporation was under a duty to redeem their stock because such an issue was an internal affair of the corporation and thus ought be decided by the state of incorporation); *Miesse v. Seiberling Rubber Co.,* 264 A.D. 373, 35 N.Y.S.2d 504 (1942) (court refused to require a Delaware corporation, which was being reorganized in Delaware, to redeem preferred stock in accordance with its certificate of incorporation since such action involved internal affairs of corporation); *In re Integra Realty Resources, Inc.,* 198 B.R. 352 (Bankr.D.Colo.1996) ("[T]he question of unlawful dividends relates directly to the administration of corporate affairs."). Some courts have held that a stock redemption is not an internal affair where the redemption is subject to a definitive contract between the corporation and one of its shareholders. *See Borst v. East Coast Shipyards,* 105 N.Y.S.2d 228 (Sup.Ct.1951) (in action by preferred stockholder

against New Jersey corporation to recover redemption price of preferred stock together with accumulated dividends, court held such action did not involve matters pertaining to internal management of foreign corporation, and New York court would assume jurisdiction). Here, however, the contract at issue**\*844** and the result of this action may affect indirectly the rights of non-parties to the contract; it is alleged that PHP violated Delaware law either because PHP had no surplus when it redeemed its stock, or, in the alternative, because the redemption impaired PHP's capital. For this reason the redemptions at issue qualify as internal affairs of PHP. *See Lakeman Realty Corp. v. Sunny Isles Ocean Beach Co.,* 5 Misc.2d 471, 160 N.Y.S.2d 947 (Sup.Ct.1957) (suit for redemption of preferred stock and payment of accrued dividends to one stockholder might place Florida corporation under duty to all holders, which might impair capital or necessitate a change in the structure, which would involve the internal affairs of the corporation and thus should be regulated by the state of incorporation); *Prescott v. Plant Industries, Inc.,* 88 F.R.D. 257 (S.D.N.Y.1980) (citing *Lakeman* and discussing internal affairs doctrine in general).

**\*\*3** Because PHP is a Delaware corporation and the Liquidating Company's dispute with Robbins falls within the internal affairs doctrine, Delaware law controls.

### III.

**\*\*3** In deciding a motion to dismiss under Rule 12(b)(6), we exercise plenary review. *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 183 (3d Cir.2000). Our role is to assess the legal feasibility of the Amended Complaint, not to weigh the evidence offered in its support. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, we accept as true all facts alleged in the Amended Complaint and draw all reasonable inferences in the Liquidating Company's favor. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). We also may consider facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence, such as stock prices on the New York Stock Exchange. *In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1331 (3d Cir.2002) (judicial notice of stock price data compiled by Dow Jones News service); *Ieradi v. Mylan Labs., Inc.,* 230 F.3d 594, 600 n. 3 (3d Cir.2002) (judicial notice of stock prices reported by Quotron Chart Services). However, if it is clear that the Liquidating Company

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
(Cite as: 128 Fed.Appx. 839)

Page 5

will not be able to prove facts sufficient to support a valid legal claim, and thus further amendment would be futile, then the Amended Complaint may be dismissed. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Lake v. Arnold,* 232 F.3d 360, 373-374 (3d Cir.2000).

IV.

**\*\*3** [2] Count I of the Amended Complaint alleges that PHP violated Section 160(a)(1) of the Delaware General Corporation Law ("DGCL") either because PHP had no surplus when it redeemed its stock from the Defendants, or, in the alternative, because the redemption impaired PHP's capital.  The Liquidating Company seeks to recover from the Defendants, current and former shareholders of PHP, the proceeds of these allegedly illegal stock redemption transactions.  Because we are reviewing a motion to dismiss, we assume that the Liquidating Company's factual allegations are correct:  one way or the other, PHP violated Section 160 when it purchased Defendants' shares.  Thus the issue presented is whether the Liquidating Company may sue Defendants for PHP's violation of Section 160.  We conclude that the Liquidating Company cannot sue, regardless of whether it asserts its rights as the assignee of the creditors or as the assignee of the debtor-in-possession.

**\*\*3** As a creditor's assignee, the Liquidating Company's standing only extends as far as its creditor's standing, and an individual **\*845** creditor of a debtor may not assert a general claim belonging to all creditors.  *Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 169 (3d Cir.2002) ("[O]nce a company or individual files for bankruptcy, creditors lack standing to assert claims that are 'property of the estate.' ") (citation omitted);  *see also, e.g., St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir.1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.").

**\*\*4** If Section 160 creates a private right of action, it is a general right of action that seeks to redress an injury common to all creditors.  Section 160 in its entirety reads as follows:
**\*\*4** (a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares;  provided, however, that no corporation shall:
**\*\*4** (1) Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation, except that a corporation may purchase or redeem out of capital any of its own shares which are entitled upon any distribution of its assets, whether by dividend or in liquidation, to a preference over another class or series of its stock, or, if no shares entitled to such a preference are outstanding, any of its own shares, if such shares will be retired upon their acquisition and the capital of the corporation reduced in accordance with § § 243 and 244 of this title.  Nothing in this subsection shall invalidate or otherwise affect a note, debenture or other obligation of a corporation given by it as consideration for its acquisition by purchase, redemption or exchange of its shares of stock if at the time such note, debenture or obligation was delivered by the corporation its capital was not then impaired or did not thereby become impaired;
**\*\*4** (2) Purchase, for more than the price at which they may then be redeemed, any of its shares which are redeemable at the option of the corporation;  or
**\*\*4** (3) Redeem any of its shares unless their redemption is authorized by subsection (b) of § 151 of this title and then only in accordance with such section and the certificate of incorporation.
**\*\*4** (b) Nothing in this section limits or affects a corporation's right to resell any of its shares theretofore purchased or redeemed out of surplus and which have not been retired, for such consideration as shall be fixed by the board of directors.
**\*\*4** (c) Shares of its own capital stock belonging to the corporation or to another corporation, if a majority of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the corporation, shall neither be entitled to vote nor be counted for quorum purposes. Nothing in this section shall be construed as limiting the right of any corporation to vote stock, including but not limited to its own stock, held by it in a fiduciary capacity.
**\*\*4** (d) Shares which have been called for redemption shall not be deemed to be outstanding shares for the purpose of **\*846** voting or determining the total number of shares entitled to vote on any matter on and after the date on which written notice of redemption has been sent to holders thereof and a sum sufficient to redeem such shares has been irrevocably deposited or set aside to pay the redemption price to the holders of the shares upon

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

Page 6

surrender of certificates therefor.

**\*5** Even if we assume for the sake of argument that the statute implicitly creates a private right of action for creditors, it certainly does not distinguish between creditors, or even mention reliance or specific damages. Moreover, the previous versions of Section 160 and the various amendments to it (in 1967, 1970, 1973, 1974, and 1996) do not reveal pertinent ambiguities or shades of meaning that contradict the initial reading. *See* 8 Del. C.1953, § 160; 56 Del. Laws, c. 50 (1967); 57 Del. Laws, c. 649, § 1 (1970); 59 Del. Laws, c. 106, § 3 (1973); 59 Del. Laws, c. 437, § 9 (1974); 70 Del. Laws, c. 349, § 3 (1996). And at all events, the Liquidating Company does not allege reliance or specific harm; its claim is a general one which, if it can be brought, would be equally available to any creditor of the debtor. Thus, the Liquidating Company does not, as a creditor's assignee, have standing to assert its claim.

**\*5** [3] As the District Court observed, however, there is some indication that a debtor-in-possession or its assignee could sue certain stockholders under Section 174. Subsection (c) provides that a director "against whom a claim is successfully asserted under [subsection(a) ] is entitled" to bring suit against certain stockholders, and the way subsection (c) describes a director's right of action suggests that a corporation's assignee may bring suit against such stockholders too. Subsection (c) states:

**\*5** Any director against whom a claim is successfully asserted under this section shall be entitled, to the extent of the amount paid by such director as a result of such claim, to be subrogated to *the rights of the corporation against stockholders* who received the dividend on, or assets for the sale or redemption of, their stock with knowledge of facts indicating that such dividend, stock purchase or redemption was unlawful under this chapter, in proportion to the amounts received by such stockholders respectively.

**\*5** 8 Del. C. § 174(c) (emphasis added). On its face, this text does not "provide that anyone, apart from the director, can assert the rights of the corporation." Barbara Black, *Corporate Dividends and Stock Repurchases* § 4.33 (2003). One court, however, has ruled that a corporate right of action exists under Delaware law against any shareholders who knowingly received an unlawful dividend. *See In re Integra Realty Resources, Inc.,* 198 B.R. 352, 365 (Bankr.D.Colo.1996). This interpretation of Section 174 makes sense; it would be strange if a

third-party who profited from an injury was liable to the victim, but only the person who inflicted that injury could vindicate the victim's rights.

**\*5** But if Section 174 creates or recognizes a right of debtors-in-possession to sue stockholders who receive payments for unlawful stock redemptions, it does so only against those stockholders "with knowledge of facts indicating that such [ ] redemption was unlawful."

**\*5** The Amended Complaint does not allege Defendants knew PHP's capital was impaired when they redeemed their stock, and at oral argument counsel for the Liquidating Company admitted that his client probably *could not* allege Defendants knew. Thus Counsel was unable to represent that such an allegation would be **\*847** made if further pleading were allowed. Accordingly, even if Section 174 does imply a right of action by debtors-in-possession or their assignees against shareholders who knowingly receive unlawful stock redemptions, Section 174 does not give *this* Plaintiff a cause of action against *these* Defendants. The Liquidating Company has indicated that it cannot allege its claim differently, and an implied remedy applicable to the present case as alleged would subvert the statutory scheme.

V.

**\*6** The only Defendants charged with Count II were ProFutures Special Equities Fund, L.P., ProFutures Fund Management, Inc., Charles H. Robbins ("Robbins"), the founder and former Chairman of PHP, and members of Robbins's family. After filing briefs in this appeal, the ProFutures entities settled with the Liquidating Company. Thus the only Defendants still in the action charged with Count II are Robbins and his family. Count II of the Amended Complaint asserts that the redemption transactions between PHP and the Robbins Family were fraudulent transfers of property under 11 U.S.C. § 548 and 6 Del. C. § 1301, *et seq.* We need not discuss the provisions of the Delaware Fraudulent Transfer Act, 6 Del. C. § 1301 et seq. (2002) because they are substantially the same as the relevant parts of the Bankruptcy Code. *Compare* 11 U.S.C. § 548 (2002) *with* 6 Del. C. § § 1302 -1306 (2002).

**\*6** [4] To properly plead a fraudulent transfer claim against the Robbins Family, the Liquidating Company would have had to allege either, pursuant to Section 548(a)(1)(A), that the debtor redeemed the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

Page 7

stock with actual intent to defraud creditors or, pursuant to Section 548(a)(1)(B), that (i) PHP received less than a reasonably equivalent value for the stock and (ii) that PHP was insolvent on the date of the redemptions or was rendered insolvent by the redemptions. The Liquidating Company does not meet the requirements of Section 548(a)(1)(A) because it does not plead actual intent; the Liquidating Company does not meet the requirements of Section 548(a)(1)(B)(ii) because it does not plead that PHP received less than a reasonably equivalent value for the stock. Count II is therefore facially deficient with respect to the Robbins family.

**\*\*6** [5] The Liquidating Company claimed for the first time that PHP received less than reasonably equivalent value from the Robbins Family only in its brief in response to the family's motion to dismiss. While counsel may "clarify" a pleading through subsequent briefing, a lawyer's statement in a response brief is no substitute for adequately pleaded facts in a complaint, and a memorandum cannot provide allegations that are wholly absent from the Amended Complaint. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 109 n. 9 (3d Cir.2002).

**\*\*6** The Liquidating Company offered no allegation of fact in its Amended Complaint as to the value of the shares received by PHP except the market price information. This information only supports Robbins's position, for it is undisputed that the contemporaneous price of PHP's stock on the NYSE exceeded the consideration paid to the Robbins Family. In this context the District Court was right to conclude that the Liquidating Company had not properly pleaded its fraudulent transfer claim.

**\*\*6** Admittedly, the District Court did not explain how its result complied with this Circuit's procedure for evaluating whether reasonably equivalent value is exchanged in a particular transaction. It would have been better if the District Court had done so. In **\*848***Mellon Bank v. The Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.),* 92 F.3d 139 (3d Cir.1996), we held that a court must "make an express factual determination as to whether the debtor received any value at all" from the challenged transaction, keeping in mind that "the price a debtor paid, in and of itself, reveals nothing about whether the debtor received something of actual 'value.'" *Id.* at 149. In that determination, "[t]he touchstone is whether the transaction conferred realizable commercial value on the debtor...." *Id.* (emphasis omitted), quoting *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 647 (3d

Cir.1991). Once that determination is made, if the court has concluded that the debtor did, in fact, receive something of actual value, then the court must then apply a "totality of the circumstances test" to evaluate whether the value received was reasonably equivalent to the value the debtor relinquished. *Id.* at 154. The "fair market value" of services rendered or goods purchased is part of the totality of the circumstances, but other things may be relevant as well, such as whether the debtor and the transferee had an arm's-length relationship at the time of the transaction and whether the transaction was conducted in good faith by the transferee. *See id.* at 149. The fair market value of services rendered or goods purchased is not, by itself, "conclusively determinative" of reasonably equivalent value. *See id.* at 150.

**\*\*7** However, although the District Court did not explain how its decision conformed to the two-part *RML* test, the record below supports a decision to dismiss with prejudice for at least two reasons. First, the Liquidating Company did not plead or even argue in its brief that the market was being manipulated at the time of the redemption, nor did it offer any other reason why the market price for PHP stock might have been inaccurate. Given that the Liquidating Company has already been granted leave to amend its complaint once, the Liquidating Company's failure suggests that it cannot prove facts sufficient to support a valid fraudulent conveyance claim. Second, counsel for the Liquidating Company admitted at oral argument that his client probably could not allege, in support of Count I of its complaint, that PHP's shareholders and former shareholders knew facts indicating their stock redemption was unlawful. Robbins and his family are charged with Count I, so this admission applies to them. An unlawful stock redemption is a redemption made while a company is insolvent, or a redemption that renders a company insolvent. If the Liquidating Company cannot allege that Robbins and his family knowingly received a redemption while PHP was insolvent, or a redemption that rendered PHP insolvent, it is hard to see how the Liquidating Company could allege that Robbins and his family entered into the redemption transactions in bad faith.

**\*\*7** In this context we conclude that the stock the debtor redeemed from Robbins and his family for $16.75 per share had realizable commercial value, and that the lowest market price on the day of the transaction-$17.50 per share-was a fair measure of that value. PHP stock traded on the New York Stock Exchange, one of the most efficient capital markets in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

128 Fed.Appx. 839                                                                          Page 8
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))
**(Cite as: 128 Fed.Appx. 839)**

the world.    In the absence of any evidence of
manipulation or bad faith we are comfortable
presuming that stock the New York Stock Exchange
values at $17.50 per share is not only of some actual
value, however small, but also of a value reasonably
equivalent to $17.50 per share, or, barring that, at
least $16.75 per share.

C.A.3 (Del.),2005.
In re PHP Healthcare Corp.
128 Fed.Appx. 839, 2005 WL 488785 (C.A.3 (Del.))

Briefs and Other Related Documents (Back to top)

• 2004 WL 4996751 (Appellate Brief) Reply Brief on
Behalf of Plaintiff/Appellant (May 27, 2004)
• 2004 WL 4996753 (Appellate Brief) Brief of
Appellees Profutures Fund Management Inc. and
Profutures Special Equities Fund L.P. (May 7, 2004)
• 2004 WL 4996755 (Appellate Brief) Brief of
Defendant/Appellee Charles H. Robbins (May 5,
2004)
• 2004 WL 4996757 (Appellate Brief) Brief on
Behalf of Defendant/Appellee Elara, Ltd. (May 5,
2004)
• 2004 WL 4996754 (Appellate Brief) Brief of
Defendants/Appellees Strome Hedgecap Limited,
Strome Partners, L.P., Strome Offshore Limited,
Strome Hedgecap Fund, L.P. (f/k/a Strome Suskind
Hedgecap Fund, L.P.), and Bear Stearns Securities
Corp. (May 4, 2004)
• 2004 WL 4996756 (Appellate Brief) Brief of
Defendant/Appellee Lakeshore International Ltd.
(Apr. 28, 2004)
• 2004 WL 4996758 (Appellate Brief) Brief for
Appellees Q Funding, L.P. and R2 Investments, LDC
(Apr. 28, 2004)
• 2004 WL 4996752 (Appellate Brief) Brief and
Appendix Volume I on Behalf of Plaintiff/Appellant
(Mar. 25, 2004)
• 03-3972 (Docket) (Oct. 08, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

In re:

W.R. GRACE & CO., et al.

---

| | |
|---|---|
| PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>                                     Appellant,<br><br>v.<br><br>W.R. GRACE & CO., et al.,<br><br>                                     Appellee. | Civil Action No. 06-745 RLB<br><br><br>Bankruptcy Case No. 01-01139<br><br>Appeal No. 06-70 |

## <u>CERTIFICATE OF SERVICE</u>

I, Laurie S. Polleck, hereby certify that on this 5th day of March 2007, I served one copy of the ***Brief of Appellant in Reply to Appellee's Brief*** upon the parties listed below, in the manner indicated:

**First Class Mail**
Janet S. Baer, Esquire
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

**Hand Delivery**
Laura Davis Jones, Esquire
James E. O'Neill, Esquire
Pachulski Stang Ziehl Young Jones &
Weintraub LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

**Hand Delivery**
Frank J. Perch, III, Esquire
Office of the United States Trustee
844 King Street
Wilmington, DE 19801

**Hand Delivery**
Michael R. Lastowski, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

18203.1

**First Class Mail**
Lewis Kruger, Esquire
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

                      **JASPAN SCHLESINGER HOFFMAN LLP**

                      /s/ Laurie S. Polleck
                      Laurie S. Polleck (#4300)
                      913 Market Street, 12th Floor
                      Wilmington, DE 19801
                      (302) 351-8005

18203.1